4659/MS042

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL AEROBATICS )
CLUB CHAPTER 1 and )
NICHOLAS SCHOLTES )
                         )
       Plaintiff, )
                         )
v. )   Case No. 13 cv 4272
                         )
CITY OF MORRIS, ILLINOIS, )
JEFFREY VOGEN and SID NELSON )   Honorable John J. Tharp, Jr.
                         )
       Defendants. )   **JURY DEMANDED**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT
## TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

NOW COME the Defendants, CITY OF MORRIS, JEFFREY VOGEN, and SID NELSON, by and through their attorney, Mark J. Mickiewicz, of PURCELL & WARDROPE, CHTD., and hereby move this Court to Dismiss the Plaintiffs' Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support thereof, Defendants state the following:

### BACKGROUND

On June 7, 2013, the Plaintiffs filed their Original Complaint seeking invalidation of the Rules and Regulations of the Morris Municipal Airport (the "Regulations") following two events: the alleged refusal of the City of Morris ("Morris") and its alleged agents to honor the "Aerobatic Practice Area" established above the Morris Municipal Airport by a waiver executed by the Federal Aviation Administration (the "FAA") and the subsequent charges brought against Plaintiff, Nicholas Scholtes, a member of Plaintiff

organization, International Aerobatics Club Chapter 1 ("IAC"), for operating an aircraft "in aerobatic flight" above "the Morris Municipal Airport Airspace." (See Plaintiffs' Original Complaint attached hereto as Exhibit 1 and Exhibit 2 thereto). Plaintiffs sought a declaration that the Regulations are unconstitutional in their entirety based solely on the argument that they are preempted by federal statutes. They also sought damages under Section 1983 for the Defendants' "threatened" enforcement of those regulations against IAC members who would otherwise fly freely in the Aerobatic Practice Area and for Morris' decision to bring charges against Scholtes.

On August 14, 2013, after the filing of the lawsuit, and pursuant to an agreement reached between IAC and Morris before the filing of the lawsuit, the Aerobatic Practice Area referenced in the Complaint was removed by the FAA (when it revoked its waiver), and the charges against Scholtes were voluntarily dismissed with prejudice by Morris. (See Affidavit of Scott Belt attached hereto as Exhibit 2). A new Aerobatic Practice Area was created further away from the Airport's runway in a location agreeable to the IAC and Morris. (Exhibit 2). On September 12, 2013, the Plaintiffs filed the instant Amended Complaint. (Exhibit 3). While the Amended Complaint acknowledges that the charges against Scholtes were dismissed (pointing out, for reasons that are unclear, that Scholtes did not "agree" to the dismissal of all charges against him) and that a new Aerobatic Practice Area was created after the filing of the Original Complaint, the remaining allegations of the Amended Complaint are essentially identical to those of the Original Complaint.

Where the two conditions which gave rise to the lawsuit, namely, the alleged refusal of Morris to respect the now defunct Aerobatic Practice Area and the related charges

2

against Scholtes, no longer exist, there is no active case or controversy and this Court thus lacks jurisdiction to hear the instant lawsuit. Accordingly, this case must be dismissed with prejudice pursuant to Rule 12(b)(1). Further, where applicable statutory and case law establishes that the Rules and Regulations of the Morris Municipal Airport are not preempted by Federal Law; the Plaintiffs have failed to allege the deprivation of any Constitutionally protected rights; the Plaintiffs have failed to establish that they are members of a Constitutionally protected class; and the individual named Defendants are entitled to qualified immunity, the Plaintiffs' Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

## STANDARD FOR DISMISSAL

In ruling on motions based on Rules 12(b)(1) or 12(b)(6), a court must accept as true all well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). Courts need not accept as true mere "legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002); *see also Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). A claim for relief must contain sufficient facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). Threadbare recitals of elements of a cause of action supported by conclusions do not make a claim plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Moreover, "[l]itigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." *Bennet v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998).

## ARGUMENT

3

**I.**     **The Entire Complaint Should be Dismissed Pursuant to Rule 12(b)(1) where, with the Removal of the Aerobatic Practice Area and the Dismissal of the Charges Against Scholtes, there is no Active Case or Controversy.**

In order to establish a case or controversy under Article III of the Constitution, the party invoking federal jurisdiction must demonstrate a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012). Even if constitutional standing is established, there are also prudential limitations on a federal court's exercise of jurisdiction, and a complaint may meet the standards for constitutional standing, yet fail to overcome the prudential standing hurdles. *Id.* Among the prudential limitations on the exercise of federal jurisdiction, are: (1) when the harm alleged in the complaint is a generalized one shared in substantially equal part by a large class of citizens, that harm alone normally will not warrant the exercise of federal jurisdiction; and (2) in general, the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties. *Id.*

The Amended Complaint details actions allegedly taken by agents of Morris related to Morris' alleged objection to the original Aerobatic Practice Area. Specifically, the Plaintiffs maintain that Morris' agents "yelled at," "physically intimidated," and "displayed animosity toward" members of the IAC while they attempted to fly in the original Aerobatic Practice Area. (Exhibit 3 at ¶¶ 87, 93, 96). Ultimately, Morris pressed charges against Scholtes. (Exhibit 3 at ¶ 6). Notably, all of these incidents are referenced in the Original Complaint which was filed before the FAA approved the new Aerobatic Practice Area and before the charges against Scholtes were dismissed. According to the

4

Plaintiffs, Morris never charged any individual other than Scholtes under the ordinances in question. (Exhibit 3 at ¶ 91). As they did in the Original Complaint, the Plaintiffs maintain that the actions and demeanor of the Morris agents caused IAC members to fear "fines," "prosecution," "arrests," future insurance implications, loss of membership in the IAC, and flying in general. (Exhibit 3 at ¶¶ 10, 102, 103, 104, 105).

As described in detail in the attached affidavit of Scott Belt and evidenced by the exhibits thereto, the Aerobatic Practice Area referenced in the Complaint no longer exists. By the Plaintiffs' own reasoning, now that the FAA waiver has been rescinded, they are prohibited from flying in the subject area by FAA regulations. (See Exhibit 1 at p.4). Any "injuries" they claim to have suffered by Morris' alleged refusal to honor the FAA's prior waiver and the legitimacy of the Aerobatic Practice Area could not possibly be redressed by this Court's invalidation of the Morris Regulations. Furthermore, a new FAA waiver has created a new Aerobatic Practice Area in a location further away from the Airport's runway and agreeable to the IAC and Morris. The IAC's pilots have obtained exactly that which they sought at the outset: the right to perform aerobatic flight maneuvers above the Morris Airport.

With respect to the "fear" referenced in the Original Complaint and the Amended Complaint, such generalized and speculative fear does not satisfy the case or controversy requirement. Fear is not sufficient. Rather, "a genuine threat" of arrest must be demonstrated if a case or controversy may be said to exist. *Ellis v. Dyson*, 421 U.S. 426, 434, 95 S.Ct. 1691 (1975) and cases cited therein. Further, "the credible threat must be shown to be alive at each stage of the litigation." *Id* at 435. The allegations in the Amended Complaint do not amount to a genuine, credible threat of an arrest.

5

Furthermore, even if any of the allegations, all of which were contained in the Original Complaint and therefore involve activity which took place before the original Aerobatic Practice Area was terminated and the new one was established, relate to actions which could be characterized as "threats," said threats related to the original practice area and were therefore extinguished when the practice area was moved. As stated, the Plaintiffs' allegations amount to nothing more than a general desire to strike down the Regulations for "fear" of the manner in which they might be applied in the future. In this position, the Plaintiffs are in the same posture as the general citizenry of the City of Morris. On their face, the Regulations apply equally to every citizen. Accordingly, the Plaintiffs lack prudential standing to bring these claims.

Likewise, Scholtes can no longer establish any personal injuries. All charges against him have been dismissed with prejudice, and he is no longer subject to any punishment related to those charges. Scholtes no longer has standing to bring the instant lawsuit. It should be noted that the Plaintiffs very briefly reference "malicious prosecution" in their prayer for relief (only) but do not appear to be pursuing a state law claim based on that doctrine. If they were, they would have to "allege facts showing . . . commencement or continuance of original criminal or civil judicial proceeding by defendant; termination of the proceeding in favor of plaintiff; absence of probable cause for such proceeding; presence of malice; and damages resulting to plaintiff." *Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238 (1996). The Plaintiffs have not pled any such facts. Indeed, voluntary dismissal of charges is not a "favorable result" for purposes of a malicious prosecution action unless the plaintiff proves that authorities decided to dismiss the charges because the Plaintiff was actually innocent. *Id.* at 512-515.

6

Moreover, an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480, 110 S.Ct. 1249 (1990).

For the foregoing reasons, the Defendants request that this entire case be dismissed with prejudice.

**II.     The Entire Complaint Should be Dismissed Pursuant to Rule 12(b)(6) where the Regulations are not Preempted by Federal Law.**

Division 101 of the Illinois Municipal Code contains the general powers granted to a municipality regarding establishment and maintenance of a municipal airport. See 65 ILCS 5/11 101 *et seq.* Additional powers are enumerated in Division 103, which applies to airports located in municipalities with less than 500,000 residents. *65 ILCS 5/11-103-5.* One of these powers is the authority to make reasonable rules and regulations regarding municipal airports. *Id.* This Statute reads in its entirety (emphasis added):

> The corporate authorities of a specified municipality **may make all reasonable rules and regulations for air traffic and airport or landing field conduct,** and for the management and control of the municipality's airport or landing field and other air navigation facilities and property under their control. These rules and regulations shall not be in conflict with the laws of the state, or the ordinances of the municipality, or the laws or regulations of the United States, or the regulations of the Illinois Commerce Commission, or the rules, rulings, regulations, orders or decisions of the Department of Transportation.

The Plaintiffs contend that Morris has no such powers, even when its Regulations do not conflict with federal law because the federal government has exclusive control over all airspace in the country.

The Untied States Supreme Court has previously stated, "Our prior cases on preemption are not precise guidelines in the present controversy, for each case turns on the peculiarities and special features of the Federal Regulatory Scheme in question." *City*

*v. Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 638 (1973). This Court must begin with the presumption that the City Ordinance is not superseded, as a presumption exists favoring local regulation of police power matters. See *City of Chicago,* 691 F.Supp.1148 (N.D. Ill. 1988). Courts have recognized three distinct types of preemption: (1) express preemption, shown by a clear expression of congressional intent to preempt specific State Laws; (2) preemption by implication in the "structure and purpose" of federal law showing a Congressional intent to preempt state law (so-called "implied preemption"); and (3) conflict preemption, shown by a conflict between State and Federal Law. *Fifth Third Bank ex rel. Trust Officer v. CSX Corp.,* 415 F.3d 741, 746 (7ᵗʰ Cir. 2005).

The Plaintiffs appear to address only the first two types of preemption. With respect to explicit preemption, the Plaintiffs rely on the Federal Aviation Act of 1958 and the Airline Deregulation Act of 1978. The preemption clause, which is only partially cited in the Amended Complaint provides in full that a State "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C.A. § 41713(b).[1] This clause will only work to preempt a state regulation where the regulation at issue has "a *significant* impact on carrier rates, routes, or services." *Nationwide Freight Systems, Inc. v. Baudino,* 2013 WL 5346450 at 7 (N.D.IL. September 23, 2013) (emphasis in original). The Plaintiffs, none of whom are even involved with

---

[1]  Reviewing courts have held that the preemption clauses in each Act are essentially identical and can be treated as interchangeable. *See e.g. Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, 370, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008).

commercial air carriers, have not pled any facts establishing such a significant impact by the Morris Regulations.

With regard to implied preemption, the Plaintiffs maintain that the above-referenced Acts and certain portions of the Code of Federal Regulations indicate an intent of the federal government to control all airspace regulation and that, accordingly, any attempt by any state or municipality to pass legislation affecting airspace travel is preempted. The 7th Circuit has not addressed this issue directly. However, when faced with the opportunity to do so, the Northern District of Illinois has repeatedly declined to find such implied preemption. *See, e.g., Hamilton v. United Airlines, Inc.,* 2012 WL 6642489 (N.D.IL. 2012); *Meyer v. United Airlines, Inc.*, 624 F.Supp.2d 923 (N.D.IL. 2008); and *Vivas v. Boeing Co.*, 486 F.Supp.2d 726 (N.D.IL. 2007).

Moreover, when Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation. *Malone v. White Motor Corp.*, 435 U.S. 497, 505, 98 S.Ct. 1185 (1978) and *California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 282, 107 S.Ct. 683 (1987) (opinion of Marshall, J.). Here, Congress spelled out a very specific area of preemption in both Acts cited by the Plaintiff. Accordingly, implied preemption should not be assumed. Although not controlling here, it should be noted that, in *Public Health Trust of Dade County, Fla. v. Lake Aircraft, Inc.*, 992 F.2d 291, 294-295 (11th Cir. 1993), the 11th Circuit applied this same logic in finding that Congress has not implicitly preempted regulation of air safety.

By enacting its Regulations, Morris is merely exercising power to regulate a municipal airport and the airspace above it. This very specific issue has not been previously decided by the Courts and is outside of the area of regulation that Congress intended to occupy. As such, the local ordinance is not subject to preemption and the Complaint must be dismissed pursuant to Rule 12(b)(6).

Lastly, in the alternative, should this Court decline to dispose of this case pursuant to the other arguments raised here, the Defendants advise the Court that the United Stated Supreme Court has recently granted certiorari in *Northwest Airlines, Inc. v. Ginsberg*, No. 12-462, and will address in its decision whether a claim for breach of the implied covenant of good faith and fair dealing is preempted under the ADA. As the Supreme Court will likely discuss implicit preemption of airspace regulation in that decision, a stay pending that decision may be warranted.

## III. The Plaintiffs have not Pled the Deprivation of any Protected Rights, and have Failed to Plead that they are Members of a Protected Class.

Next, the Plaintiffs maintain that they have been deprived of Constitutionally protected rights and have been denied Equal Protection. As explained above, the Aerobatic Practice Area at issue no longer exists. Even if the right of the Plaintiffs to fly in that area was considered a protected right, that right is now prohibited by federal regulations. The Plaintiffs have not alleged that they are being stopped from flying in the new Aerobatic Practice Area, which is in a location agreed to by the IAC and Morris. Furthermore, the Plaintiffs have cited no authority for their proposition that pilots are a Constitutionally protected class. Accordingly, the Complaint must be dismissed pursuant to Rule 12(b)(6).

10

**IV.    The Individual Defendants are Entitled to Qualified Immunity from Plaintiffs'
§1983 Claims.**

Public officials performing discretionary duties are immune from liability and suit

for actions that do not violate clearly established statutory or constitutional rights of

which a reasonable person would have known. *Wilson v. Formigoni*, 42 F.3d 1060, 1063

(7th Cir. 1994); citing *Harlow v. Fitzgerald*, 456 U.S. 800, 818 (1982). To determine

whether a public official is entitled to qualified immunity, a court must determine (1) if

the public official has violated a constitutional right; and (2) if so, whether that right was

clearly established at the time of its alleged deprivation. *Saucier v. Katz*, 552 U.S. 194,

201 (2001); *Akende v. Grounds*, 555 F.3d 586, 589–90 (7th Cir. 2009). The order in

which a court considers these two questions is left to its discretion, but it must resolve

both questions in the plaintiff's favor in order to grant him the requested relief. *Pearson

v. Callahan*, 129 S. Ct. 808 (2009).  Here, as explained above, the individual defendants

were not violating any clearly established constitutional rights.    Accordingly, the

Complaint must be dismissed pursuant to Rule 12(b)(6).

WHEREFORE, Defendants, CITY OF MORRIS, JEFFREY VOGEN, and SID

NELSON, respectfully request that this Court dismiss the Plaintiffs' Complaint with

prejudice.

Respectfully submitted,

PURCELL & WARDROPE, CHTD.

By:     /s/ Mark J Mickiewicz
        Mark J Mickiewicz
        Attorney for Defendants

11

Mark J Mickiewicz, Atty. No. 6280623
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
Tel:  (312) 427-3900
Fax:  (312) 427-3944
E-mail: mjm@pw-law.com
F:\MJM\4659 IAC & Scholtes\Pleadings\MemoinSuppMTD.doc

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL AEROBATICS CLUB
CHAPTER 1 and NICHOLAS SCHOLTES,

Plaintiffs,

v.                                                  Case No.

CITY OF MORRIS, ILLINOIS, JEFFREY
VOGEN, and SID NELSON,

Defendants.

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### AND A CIVIL RIGHTS ACTION (42 U.S.C. § 1983)

The International Aerobatics Club Chapter 1 ("IAC Chapter 1") and Nicholas Scholtes
("Scholtes" and collectively the "Plaintiffs"), by their counsel, complain as follows:

### Nature of the Action

1.  This action seeks declaratory and injunctive relief under federal law against enforcement of
the Morris, Illinois, City Code Chapter 8.75.010 (the "Morris Ordinance") and Chapter 400.1 of
the Rules and Regulations of the Morris Municipal Airport (the "Morris Regulations") (attached
as Exhibit One).

2.  The Morris Ordinance incorporates and adopts by reference all the Morris Regulations,
including Chapter 400.1.

3.  Chapter 400.1 "Aeronautical Activities" states as follows:

> All aeronautical activities at the Airport (including Skydiving), and all flying of
> aircraft departing from or arriving in the airspace above this airport shall be
> conducted in conformance with the statutes, laws, rules of regulations of the FAA
> and these Rules and Regulations, as now enacted or as may be hereafter amended
> or modified or enacted or adopted.

4.  In addition, the Morris Regulations require that flying clubs like IAC Chapter 1 comply with
every airport regulation.  Chapter 600.18 "Flying Clubs" states as follows:

> Each Flying Club desiring to base their aircraft and operate on the Airport shall
> comply with the applicable provisions of these Rules and Regulations.

5.  The City of Morris and its agents have charged Scholtes, a member of IAC Chapter 1, with
violating the Morris Ordinance and Regulations.  Scholtes now is subject to a fine of up to

1



$1,000 dollars. *See City of Morris v. Scholtes*, No. 12 ov 41 (Cir. Ct. Grundy Cnty filed Mar. 28, 2012) (attached as Exhibit Two).

6. The City of Morris and its agents have also threatened to enforce the Ordinance and Regulations against other pilots associated with IAC Chapter 1.

7. Federal law and regulations govern the national airspace. The Federal Aviation Act of 1958 ("FAAct") and the Airline Deregulation Act of 1978 expressly and implicitly preempt Defendants' enforcement of its Ordinance and Regulations against pilots flying in federal airways.

8. The Morris Ordinance and Regulations impermissibly regulate the national airspace, and as such violate the United States Constitution and are unenforceable.

9. Plaintiffs seek to protect and vindicate their right to fly in the national airspace without being subjected to an unconstitutional and preempted barrier established and enforced by a local municipality.

10. Plaintiffs seek a declaratory judgment that the challenged Ordinance and Regulations are invalid, unenforceable, and void. Plaintiffs also seek a permanent injunction prohibiting the enforcement of the challenged Ordinance and Regulations by Defendants and prohibiting the implementation of any similar ordinances. Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988.

11. Defendants have also selectively enforced and threaten to enforce the Morris Ordinance and Regulations against the Plaintiffs out of animus for aerobatic flying, Scholtes, and IAC Chapter 1. Acting under color of state law in depriving Plaintiffs' of their constitutional rights, defendants have violated 42 U.S.C. § 1983.

### Jurisdiction and Venue

12. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and under 28 U.S.C. § 1343, authorizing original jurisdiction of claims brought pursuant to 28 U.S.C. § 1983 to enforce violations of rights guaranteed by the United States Constitution. This action also seeks declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

13. Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391(b) because Plaintiffs and Defendants reside or are located in the District and because a substantial portion of the events giving rise to the Plaintiffs' claims occurred in this judicial district.

### The Parties

14. Plaintiff IAC Chapter 1 is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Morris, Illinois.

15. IAC Chapter 1's purpose includes preserving pilots' right to fly, to perform aerobatic maneuvers, and to provide opportunities to practice and perform in aerobatic competitions.

16. IAC Chapter 1 members fly through the national airspace, depart from and arrive at Morris Airport, and also rent hangar space at the airport to store some of their planes.

17. IAC Chapter 1 hosts several events and an aerobatic contest every year at which it is represented by its members. Members of IAC Chapter 1 are in the top skill level for all pilots.

18. Defendant City of Morris is a municipal entity organized under the Constitution and laws of the State of Illinois.

19. The City of Morris owns and operates the Morris Municipal Airport ("Morris Airport").

20. Defendant Jeff Vogen ("Vogen") is the Morris Airport manager and an employee of the City of Morris. He is sued in both his official and personal capacity.

21. Defendant Sid Nelson ("Nelson") is a Morris Airport consultant and agent of the City of Morris. He is sued in both his official and personal capacity.

22. Plaintiff Nicholas Scholtes is a citizen of the United States and resides in Shorewood, Illinois.

23. Scholtes is a pilot and member of IAC Chapter 1.

## The Facts

### A. Federal Law is Extensive and Preempts Any Local Regulation of the National Airspace

24. The United States Government has exclusive sovereignty of the airspace of the United States.

25. Congress intended the Federal Aviation Administration's ("FAA") powers to be broad because FAAct grants to each "citizen of the United States…a public right of transit through the navigable airspace."

26. Moreover, the FAA has the sole authority to promulgate rules governing the regulation of aircraft flight, including flight patterns, routes, and travel within the navigable airspace.

27. Federal law provides that "[t]he Administrator [of the FAA] is authorized and directed to develop plans for and formulate policy with respect to the use of the navigable airspace."

28. Federal law governs every aspect of flight, beginning with a pilot's obtaining a certificate to fly to determining how high and where that pilot can fly while airborne.

29. No state has the power to issue pilot certificates or regulate a pilot while in flight.

30. The FAA has also created a regulatory scheme for enforcement of FAA violations.

31. For any violation of the Federal Aviation Act, "the Administrator [of the FAA] may conduct investigations, hold hearings, issue subpoenas, [and] require the production of relevant documents."

3

32. Aerobatic flight is a legally recognized form of aircraft operation. Federal law defines aerobatic flight "as an intentional maneuver involving an abrupt change in an aircraft's attitude, an abnormal attitude, or abnormal acceleration, not necessary for normal flight."

33. The FAA promulgated rules and regulations specifically governing aerobatic flight, including 94 C.F.R. 91.303 which dictates the areas in which aerobatic flight may occur.

34. Federal regulations create a presumption in favor of aerobatic flight.

35. Pilots may perform aerobatic flight in any area not specifically excluded by FAA regulations.

36. Federal law prohibits aerobatic flight only in the following areas:

    a. Over any congested area of a city, town, or settlement;

    b. Over an open air assembly of persons;

    c. Within the lateral boundaries of the surface areas of Class B, Class C, Class D, or Class E airspace designated for an airport;

    d. Within 4 nautical miles of the center line of any Federal airway;

    e. Below an altitude of 1,500 feet above the surface; or

    f. When flight visibility is less than 3 statute miles.

37. Even in restricted areas, however, the FAA has created a process that permits a pilot to perform aerobatic flight when granted a "Waiver." A Waiver grants pilots an exemption from FAA regulations listed in the Waiver.

38. The FAA commonly waives, and in this case did waive, FAA regulation 14 C.F.R. 91.117(a) related to aircraft speed and 14 C.F.R. 91.303 (c), (d), and (e) (noted above in paragraph 36) related to aerobatic flight when a pilot is flying within an area designated and approved by the FAA.

39. An "Aerobatic Practice Area" is one such area designated and approved by the FAA for aerobatic flight.

40. To prevent interference with interstate airline routes and to ensure the safety of all pilots and passengers, the FAA specifically authorized IAC Chapter 1 to perform aerobatic maneuvers within the designated Aerobatic Practice Area.

41. The pervasive nature and extent of federal regulation of the national airspace evidences Congress's intent to completely preempt any state or local regulation of the navigable airways.

42. Congress has also expressly preempted state regulation of navigable airspace through the Airline Deregulation Act of 1978.

4

43. The Airline Deregulation Act of 1978 preempts the ability of a state or local authority to "enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."

## B. IAC Chapter 1 Obtains an Aerobatic Practice Area Over the City of Morris's Objection

44. Interstate air carriers typically travel at an altitude significantly higher than the altitude at which pilots perform aerobatics.

45. Directly over Morris Airport, however, there is an arrival and departure corridor for Midway Airport.

46. Interstate air carriers arriving or departing from Midway Airport in this corridor fly at lower altitudes and often fly at the same altitude as pilots performing aerobatics.

47. Regardless of the size of the plane, every aircraft has an equal right to fly in the airspace.

48. An interstate air carrier that flies into Midway Airport notified IAC Chapter 1 of its concerns related to air traffic on the route into Midway Airport.

49. IAC Chapter 1 voiced safety concerns to the City of Morris and Vogen many times in 2010 and 2011, before developing the Aerobatic Practice Area, regarding air traffic and the flight path of interstate air carriers flying over the Morris Airport.

50. Defendants refused to engage in discussions of these safety concerns with IAC Chapter 1.

51. IAC Chapter 1, therefore, contacted the FAA to obtain an Aerobatic Practice Area.

52. An Aerobatic Practice Area is intended to give pilots a safe area in which to practice their aerobatic maneuvers, and the FAA has established procedures to ensure the safety of all pilots flying near an activated Aerobatic Practice Area.

53. The FAA advised IAC Chapter 1 to apply for an Aerobatic Practice Area.

54. The FAA routinely issues Waivers for an Aerobatic Practice Area to resolve safety concerns and flight traffic issues near airports around the country.

55. There is nothing unique about the location of the Morris Airport or the air and ground traffic that would preclude the customary solution to these issues, which is the FAA issuing an Aerobatic Practice Area Waiver.

56. After IAC Chapter 1 filed its application for an Aerobatic Practice Area, the City of Morris began obstructing IAC Chapter 1's efforts to obtain an Aerobatic Practice Area.

57. Acting on behalf of the city as its agent, Nelson made false and misleading statements about IAC Chapter 1 and opposed IAC Chapter 1 receiving an Aerobatic Practice Area in local meetings held by the FAA.

5

58. Defendants also threatened IAC Chapter 1 and warned that there would be consequences to obtaining an Aerobatic Practice Area to intimidate IAC Chapter 1 into withdrawing its request for an Aerobatic Practice Area.

59. After hearing of the safety concerns and flight traffic issues, the FAA granted IAC Chapter 1 an Aerobatic Practice Area. In doing so, the FAA specifically located the Aerobatic Practice Area on and extending below a federal airway near the Morris Airport. *See* Aerobatic Practice Area Waiver or Authorization (attached as Exhibit Three).

**C. The City of Morris Punishes Plaintiffs for Obtaining an Aerobatic Practice Area**

60. After IAC Chapter 1 obtained the Aerobatic Practice Area, Vogen reported to the FAA Regional Office that an IAC Chapter 1 pilot caused a traffic conflict with an interstate air carrier.

61. The IAC Chapter 1 pilot was operating in legally navigable airspace, not the Aerobatic Practice Area, and the FAA investigating inspector found there was no issue with the IAC Chapter 1 member's flight and the FAA closed its investigation.

62. Then, on December 26, 2011, Vogen witnessed Scholtes flying his airplane and allegedly performing aerobatic maneuvers while flying in the navigable airspace.

63. The City of Morris and Vogen know that the City lacks the power to regulate flight or issue a non-traffic complaint based on a pilot's performing aerobatic maneuvers while flying.

64. Because the City has no authority over aerobatic flight, Vogen called the FAA to file a report.

65. Vogen stated on the report to the FAA that he witnessed an "N84PS Pitts S2-B (an IAC member)" violate an FAA regulation related to aerobatic flight, even though he knew that Scholtes—not IAC Chapter 1—was the owner of the plane and that Scholtes was not in violation of any FAA regulation.

66. The FAA investigated the incident, contacted IAC Chapter 1, and found IAC Chapter 1 had not violated any FAA regulation.

67. Vogen then contacted the FAA a second time regarding the same incident.

68. In the second report to the FAA, Vogen stated that it was Scholtes who had violated an FAA regulation.

69. The FAA duly investigated Vogen's allegation of misconduct on the part of Scholtes, found nothing to support the charge, and properly closed their investigation.

70. Displeased with the FAA's response and wanting to make an example of Scholtes to IAC Chapter 1 and other pilots that support IAC Chapter 1, Vogen caused the City of Morris to issue Scholtes a Non-Traffic Complaint for violations of the local Morris Airport Rules and Regulations.

71. At the time Scholtes was allegedly performing aerobatic maneuvers, Scholtes was flying west of the airport, over land neither owned nor regulated by the City of Morris.

72. The City of Morris and Vogen know that the City lacks the power to regulate activity that occurred outside its jurisdictional limits.

73. The City of Morris and Vogen have instigated legal proceedings in Illinois State Court, Circuit Court of Grundy County, against Scholtes to enforce this Non-Traffic Complaint.

74. Scholtes now is subject to a fine up to $500 for each offense.

75. Defendants issued the Non-Traffic Complaint against Scholtes as a pretext to removing the Aerobatic Practice Area.

### D. IAC Chapter 1 Renews its Aerobatic Practice Area and Defendants' Harassment Escalates

76. The City of Morris, the Airport Manager Vogen, and Airport Consultant Nelson have displayed animosity to IAC Chapter 1 and its members for no reason other than out of sheer malice for IAC Chapter 1.

77. Since IAC Chapter 1 received and renewed its Aerobatic Practice Area privileges, Defendants have increased their harassment of IAC Chapter 1, its members, and Scholtes.

78. Without cause, Defendants have yelled at, distracted, and directly interfered with IAC Chapter 1 members on the ground who were actively coaching pilots practicing maneuvers in the Aerobatic Practice Area.

79. Defendants' actions jeopardize the safety of IAC Chapter 1 members in the air and on the ground.

80. Morris Airport agent, Sid Nelson, has driven his vehicle at an IAC Chapter 1 member and slammed on the brakes causing an IAC Chapter 1 member to lose visual contact with a pilot flying in the Aerobatic Practice Area.

81. Sid Nelson has also physically intimidated and threatened IAC Chapter 1 members.

82. Vogen has also intimidated IAC Chapter 1 members, members of other flight organizations such as the Experimental Aircraft Association ("EAA"), and other pilots saying that any pilot who supports IAC Chapter 1 or its Aerobatic Practice Area could lose their ability to fly at Morris Airport or rent hangar space.

83. Vogen has also informed IAC Chapter 1 members that he will throw them out of the Morris Airport and ground their planes if he feels, in his opinion, that they have done any unsafe maneuvers while flying.

84. In contrast, Vogen allows other pilots who are not members of IAC Chapter 1 to perform similar maneuvers in the airport area such as loops, rolls, and non-standard operations while

flying without threats of repercussion and without filing reports or complaints against those pilots.

85. Vogen also allows other pilots who do not support IAC Chapter 1 to fly at low altitudes near the runway without threats of repercussion and without filing reports or complaints against those pilots.

86. As a result of his relationship with the City of Morris as its airport consultant, Nelson acts with impunity and his actions against IAC Chapter 1 and its members go unreprimanded, despite IAC Chapter 1's efforts to stop such behavior.

87. For example, Nelson has violated several FAA regulations, including landing counter to the flow of other airplanes on an active runway and operating at lower than normal altitudes while landing, without Vogen complaining to the FAA or giving Nelson a citation.

88. Similarly, Nelson has discriminated against, physically threatened, and attacked IAC Chapter 1 and its members because they are members of IAC Chapter 1 and conduct aerobatic maneuvers while flying in the local area.

89. Scholtes and IAC Chapter 1 members now fear expensive fines, prosecution, and arrest if they continue to fly.

90. IAC Chapter 1 members, EAA members, and other pilots would fly at IAC Chapter 1 sponsored events but are afraid to do so or to perform aerobatic flight maneuvers near the Morris Airport, even in the Aerobatic Practice Area designated for that very purpose, out of fear of harassment and receiving Non-Traffic Complaints by Defendants for violating the Morris Ordinance and Regulations.

91. As a result of Defendants' actions, IAC Chapter 1 has lost members and participation at its events.

92. As a result of Defendants' actions, Scholtes and IAC Chapter 1 have spent considerable time and money addressing these concerns and attempting to end these capricious actions by the Defendants.

## Count I
### Injunctive Relief: The Morris Ordinance and Regulation Are Unconstitutional and Preempted by Federal Law (Federal Aviation Act and Airline Deregulation Act)

93. Plaintiffs incorporate by reference Paragraphs 1-92.

94. Federal law implicitly and expressly preempts the Morris Ordinance and Regulation.

95. By enacting the Federal Aviation Act of 1958, Congress implicitly expressed its intent that federal law alone should govern federal airways.

96. As further evidence of its intent, Congress granted broad administrative powers to the FAA, and the FAA exercises those administrative powers extensively.

8

97. The FAA creates and enforces regulations related to air travel that are so pervasive, including 14 C.F.R. 91.303 for aerobatic flight, that there is no room for state or local municipalities to supplement the FAA's enforcement power.

98. The Morris Ordinance and Regulations interfere with this federal scheme and impermissibly attempt to regulate flight and routes in the national airspace.

99. By enacting the Airline Deregulation Act of 1978, 49 U.S.C. § 41713, Congress expressly preempted the ability of a state or local authority to "enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier."

100.    Defendants' enforcement and continued threatened enforcement of the Morris Ordinance and Regulations against Scholtes and IAC Chapter 1 have deprived Plaintiffs of their right to due process and equal protection protected by the Fourteenth Amendment, placed an undue burden on interstate commerce, and violated the Supremacy Clause of the United States Constitution.

101.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered irreparable harm without an adequate remedy at law and will continue to suffer harm.

102.    Scholtes and IAC Chapter 1 seek an injunction to end Defendants' unlawful behavior. An injunction is necessary and appropriate to end the current and threatened enforcement of the Morris Ordinance and Regulations.

103.    If not enjoined by this court, Defendants and their agent, representatives, and employees will continue to implement the practices of the challenged Ordinance and Regulations that deny Plaintiffs their constitutional rights without due process and violate their right to equal protection under the law.  Plaintiffs have suffered and will continue to suffer irreparable injury for which they have no adequate remedy at law.

## Count II
## Violation of 42 U.S.C. § 1983

104.    Plaintiffs incorporate by reference Paragraphs 1-103.

105.    At all relevant times, Defendants were acting "under color of law" within the meaning of 42 U.S.C. § 1983.

106.    The City of Morris has given Nelson an office at the Airport and cloaked him with authority to act on its behalf.

107.    Defendants' harassment, threats, enforcement and threatened enforcement of the Morris Ordinance and Regulations against Scholtes, IAC Chapter 1, and IAC Chapter 1's members have placed an undue burden on interstate commerce by creating air traffic congestion on a federal airway used by interstate air carriers and by reducing or precluding the ability of Scholtes, IAC Chapter 1 members, and other pilots to fly.

108.    Defendants' harassment, threats, enforcement and threatened enforcement of the Morris Ordinance and Regulations against Scholtes, IAC Chapter 1, and IAC Chapter 1's members have

deprived Plaintiffs of their right to due process under the Fourteenth Amendment because the Ordinance and Regulations unduly restricted Plaintiffs' freedom of movement, are arbitrary and have no basis in the law, and do not promote the safety of the residents of Morris or pilots flying at or near the Morris Airport.

109.    Defendants' harassment, threats, enforcement and threatened enforcement of the Morris Ordinance and Regulations against Scholtes, IAC Chapter 1, and IAC Chapter 1's members have deprived Plaintiffs of their right to equal protection under the Fourteenth Amendment.

110.    Defendants have selectively enforced the Ordinance and Regulations against Scholtes and threatened enforcement against other IAC Chapter 1 members but not against other similarly situated pilots.

111.    Defendants' discrimination against Scholtes and other IAC Chapter 1 pilots was intentional and animated out of sheer malice for Scholtes and IAC Chapter 1.

112.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered irreparable harm and damages, and will continue to suffer and will continue to suffer harm.

113. Defendants actions violate the Plaintiffs' rights under 42 U.S.C. § 1983.

### Prayer for Relief

WHEREFORE, Plaintiffs request judgment be entered in their favor and against Defendants as follows:

(1) A declaratory judgment declaring that the Morris Ordinance and Regulations related to aerobatic flight are preempted by federal law and are therefore unconstitutional.

(2) An order permanently enjoining Defendants, their officers, agents, servants, employees, and all other persons in active concert or participation with them, from enforcing Morris City Code Chapter 8.75.010 and Chapter 400.1 of the Rules and Regulations of the Morris Municipal Airport.

(3) An order enjoining the current action pending against Nicholas Scholtes in the Thirteenth Judicial Circuit, Grundy County, Case No. 12 ov 41, which seeks to enforce the Morris Ordinance and Regulations and fine Scholtes up to $500 for each offense.

(4) Any other declaratory relief consistent with the injunction, including a declaration that the Morris Ordinance and Regulations relating to any flight in the national airspace are preempted by federal law;

(5) Damages;

(6) Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(7) Any other relief the Court deems just and appropriate.

10

Plaintiffs demand a jury trial.

Respectfully submitted,

Dated:      JUNE 7, 2013                         By:_____/s/ Thomas I. Matyas_____
                                                     Attorney for Plaintiffs

Thomas I. Matyas
Cal R. Burnton
Colin Patrick O'Donovan
Edwards Wildman Palmer LLP
225 West Wacker Dr., Ste. 2800
Chicago, Illinois 60606
312-201-2646

11

Case: 1:13-cv-04272 Document #: 1-1 Filed: 06/07/13 Page 1 of 19 PageID #:12

# EXHIBIT 1

ORDINANCE NO. ___316F___

## AN ORDINANCE ESTABLISHING RULES AND REGULATIONS
## FOR THE MORRIS MUNICIPAL AIRPORT

Whereas, the legislature of the State of Illinois has granted Municipalities the authority to make all reasonable rules and regulations with respect to municipal airports under their jurisdiction 65 ILCS 5/11-103-5;

Whereas, the City Council of the City of Morris has determined that the public health, safety and welfare would be better served by the adoption of Rules and Regulations for the Morris Municipal Airport.

Be it ordained by the City Council of the City of Morris that Chapter 8.75 be added to the Morris Municipal code by adding the following:

8.75.010 Adopted by Reference: In the interest of public health, safety and welfare, the rules and regulations as set forth in the Morris Municipal Airport Rules and Regulations as now existing or hereafter amended are adopted by reference and said Rules and Regulations shall be part of this chapter as though set out herein with the same full force and effect as if fully set out in this section.

8.75.020 Copies on file: The office of the City Clerk shall keep three copies of the aforementioned code on file and accessible to the public during regular business hours.

8.75.030 Enforcement: The airport manager, fire chief, building and zoning officer, and members of the police department are authorized and empowered to enforce this chapter.

That all ordinances and resolutions or parts thereof in conflict with the provisions of this ordinance are to the extent of such conflict expressly repealed.

This ordinance shall be published in pamphlet form and shall be in full force and effect from and after its passage, approval and publication as required by law.

PASSED this 9th day of August, A.D., 1999.

___5___ Ayes

___0___ Nays

___0___ Pass

Approved:

*Robert T Feeney*
ROBERT FEENEY,
Mayor

Attest:

*John R. Enger*
JOHN ENGER,
City Clerk

# RULES
# AND
# REGULATIONS

*Airport*

## 100 - TABLE OF CONTENTS

Part 200                                General Provisions

Part 300                                   Motor Vehicles

Part 400        Aircraft, Skydiving, and Airport Operations

Part 500    Storage, Waste Disposal and Fueling Operations

Part 600                           Public and Tenant Usage

Part 700                               Schedule of Charges

Part 800                                          Penalties

Part 900        Title VI of the Civil Rights Act of 1964

## 200 - GENERAL PROVISIONS

### 200.1       SCOPE:

All persons shall be governed by the Rules and Regulations set forth in this Chapter while on or occupying any area comprising the Morris Municipal Airport. Such person(s) shall comply with the orders and instructions of the Airport Manager, as they are promulgated from time to time, relative to the use and occupancy of Airport property and Airport facilities. These regulations have been adopted by the City Council as ordinances of the City of Morris.

### 200.2       VIOLATION OF RULES - AUTHORITY OF AIRPORT MANAGER

The Airport Manager or the City of Morris may remove or evict from the Airport premises any person who knowingly or willfully violate (or who causes the City to be in noncompliance with) any rule or regulation as set forth in this Chapter; any rule, regulation, directive, or order then in effect by the Federal Aviation Administration ("FAA"), or by the Illinois Department of Transportation, Division of Aeronautics; or any orders or instructions of the Airport Manager or the City of Morris.

### 200.3       LIABILITY:

The City of Morris and the Airport Manager assume no liability for aircraft using the facilities of the Morris Municipal Airport; nor do they assume any liability for injury to persons while on the Airport or while using the facilities of same.

## 300 – MOTOR VEHICLES

**300.1**    **GENERAL RULES:**

    A.    Except for vehicles operated as part of their official duties by employees, agents, or officials of IDOT, the City, or the FAA and for FBO-operated vehicles, no vehicle shall be operated by any person in or upon an Operational Area, Fuel Storage Area, Public Apron Area, or Public Aircraft Parking Area unless:

      1.    The person has obtained prior permission from Airport Manager and

        2.    The driver thereof is duly licensed to operate a motor vehicle on the highways of the State of Illinois; and

        3.    All licenses and registrations required for such vehicle under Federal, State, and Local laws are maintained; and

      4.    Liability insurance is in force regarding the operation of such vehicle.

    B.    No person shall park any motor vehicle in any area where parking is prohibited (See Section 300.3) Permission may be obtained from the Airport Manager for parking in such areas for the loading and unloading of luggage, equipment, or cargo, etc. but no such permission is hereby given or implied.

**300.2**    **RULES OF OPERATION:**

    A.    No person shall operate a motor vehicle at a speed in excess of 20 miles per hour within the ramp, apron, hangar, aircraft parking or motor vehicle parking areas of the Airport. Persons authorized by the Airport Manager to operate vehicles for Airport inspection and persons operating emergency vehicles are exempt from this speed limit during such inspection or emergency situations.

    B.    All persons operating vehicles shall obey the speed limits and directions posted on traffic signs or signals on Airport property.

    C.    All persons operating vehicles on Airport property shall yield the right of way to pedestrians and aircraft at all times.

    D.    All persons operating vehicles shall pass to the rear of aircraft on which the engine(s) is running.

300.3       **PARKING:**

    A.    No person shall park a motor vehicle in any area other than those areas specifically provided and established for parking.

    B.    Except at the direction of a responsible police/fire/security officer or the Airport Manager, no person shall park a motor vehicle at any time in any of the following areas:

        1.    All areas on the Airport designated as controlled access areas for vehicles. Controlled access areas are used for the operation and parking of aircraft, including runways, taxiways, ramps and all areas fenced in for use by aircraft.

        2.  All Airport roadways.

        3.    On a temporary basis, the Airport Manager may designate additional areas where parking is prohibited because of hazard and/or to allow snow removal.

300.4       **EMERGENCY AND FIRE ACCESS LANES AND AREAS:**

    The following areas are designated as emergency and fire access lanes and shall be kept open at all times to ensure unimpeded movement of fire fighting and/or emergency and/or airport maintenance equipment etc. for the safety of persons and property on the Airport. Except at the direction of a responsible police/fire/security officer or the Airport Manager, no person shall park a motor vehicle or aircraft in any of the following Airport areas:

        1.    All entrances or driveways to the airport or access gates or driveways to airport operation areas.

        2.    All ramp areas between or adjacent to hangars designated for aircraft storage and all aisles between rows of aircraft tie-down parking spaces.

        3.    The areas adjacent to hangars and other buildings designated for a Fixed Base Operation (FBO).

**EXHIBIT B**

300.5    **CITY TO IMPOUND AND REMOVE VEHICLES:**

    A.   City of Morris or the Airport Manager is hereby authorized to remove, or cause to be removed, any vehicle from any location on the Airport premises to the nearest storage area or other place of safety, designated by the Airport Manager, under the following circumstances:

        1.   When any vehicle is left unattended in a restricted parking area or emergency or fire access lanes or areas on the Airport;

        2.   When any vehicle parked on the Airport premises is so disabled as to constitute an obstruction to traffic and the person or persons in charge of the vehicle are unable or unwilling to provide for its custody or removal;

        3.   When any vehicle is left illegally parked so as to constitute a hazard or obstruction to the normal movement of traffic;

        4.   When any vehicle is parked in the same location in the Airport parking lot or any other location on the Airport premises for more than 15 days without being moved without permission from the Airport Manager, it may be presumed abandoned and may be removed at the discretion of the Airport Manager.

        5.   If any vehicle is parked in a location on the Airport where its presence impairs the performance of required snow removal or necessary repairs or maintenance.

    B.   The owner of any vehicle removed under this Section shall be required to pay the charges incurred in removal, towing, and storage of the vehicle prior to being entitled to recover such vehicle.

### 400 - AIRCRAFT, SKYDIVING, AND AIRPORT OPERATIONS

400.1    **AERONAUTICAL ACTIVITIES:**

    All aeronautical activities at this Airport (including Skydiving), and all flying of aircraft departing from or arriving in the air space above this Airport shall be conducted in conformance with the statutes, laws, rules or regulations of the FAA and these Rules and Regulations, as now enacted or as may be hereafter amended or modified or enacted or adopted.

400.2    **AIRPORT SERVICE OPERATOR REGISTRATION:**

    Each owner of aircraft which is based on the Airport shall register such aircraft with the Airport Manager. This shall be accomplished by the completion of the "HANGAR/TIE-DOWN LEASE." Any change in ownership shall require a new registration. Anyone authorized to do

business on the Airport and owners of hangar facilities shall register all aircraft based on or in their facilities and all their own aircraft when such aircraft arrives on the Airport.

**400.3     REGISTRATION AND LICENSING:**

No person shall operate any aircraft from the Morris Municipal Airport that is not fully registered and certified by the State of Illinois and the FAA in accordance with all applicable Federal, State and local laws, rules and ordinances.

**400.4     PAYMENT:**

Failure to make payment for use of Airport facilities, or other charges levied by the Morris Municipal Airport or by the City of Morris or by the Airport Manager or operators permitted to collect such fees shall be deemed violations of these Rules and Regulations.

**400.5     REFUSAL OF CLEARANCE:**

On any occasion where the Airport Manager has reasonable grounds for such action, the Airport Manager may delay, restrict, cancel or ground any flight, skydive, aeronautical activity, or other operation at the Airport.

**400.6     CLOSING OF FIELD:**

In the event the Airport Manager believes the conditions of the Airport or any part of the Airport to be unsafe for landing, take-off, skydiving, or any aeronautical activity it shall be within the Airport Manager's authority to issue a NOTAM closing the entire Airport or any part thereof, in accordance with Federal and State statutes, laws, rules and regulations.

**400.7     IMPOUNDMENT AND REMOVAL OF AIRCRAFT:**

The Airport Manager is hereby granted authority to remove immediately without notice to the owner or operator, any disabled or damaged aircraft or parts thereof, at the owner's or operator's expense, without liability for damage which may result in the course of removal or subsequent to such removal if such disabled or damaged aircraft constitutes a hazard to persons or property.

If such disabled or damaged aircraft constitutes a nuisance only, the Airport Manager shall put notice of intention to remove such aircraft or parts thereof in plain view on such aircraft or parts thereof and may remove such aircraft or parts thereof to a location determined by the Airport Manager if such owner or operator fails within 48 hours after such posting to remove such aircraft or parts thereof to a suitable location as may be determined by the Airport Manager.

**400.8    REPAIRING OF AIRCRAFT:**

No person shall repair any aircraft, or any part(s) thereof, in any area of the Airport other than those specifically designated for such purpose by contract or agreement or by written permission of the Airport Manager. However, "preventive maintenance" as described in FAA Regulation Part 43, Appendix A, is allowed, if being accomplished by the owner or pilot of such aircraft. Cleaning of aircraft must be done in the designated area of the airport.

**400.9    PARKING OF AIRCRAFT:**

No person shall park an unattended aircraft in any emergency or fire access lane or any area that restricts access to buildings, hangars, roads and driveways.

**400.10    DEMONSTRATION:**

No experimental or test flights, by non-FAA certified aircraft, or ground demonstration shall be conducted on the Airport by any person without the approval of the Airport Manager.

**400.11    TAXIING RULES:**

A.    No person shall operate any aircraft in a careless or reckless manner. No person shall taxi any aircraft at a speed that is not reasonable and safe.

B.    No person shall start or run any engine in an aircraft unless a licensed pilot or qualified A & P mechanic is in the aircraft attending the engine controls. No person shall start the engine(s) of any aircraft until and unless such aircraft is equipped with adequate brakes or chocks have been placed in front of the wheels of such aircraft.

C.    No person shall run the engine or engines of any aircraft at any location on the Airport in such manner as to cause damage to other aircraft or property or in such manner as to constitute a hazard to persons or property.

**400.12    LANDINGS AND TAKEOFFS:**

A.    All aircraft (ultra-lights, motorized parachutes, hang-gliders, gliders, motorized gliders, helicopters, fixed wing aircraft, etc.) shall land and takeoff on runways 18-36 only.

B.    Takeoffs and landings over populated areas by pilots shall be kept at a minimum in the interest of public safety and convenience.

C.    Pilots shall utilize procedures that will result in minimum noise to surrounding residential areas. This includes, but is not limited to, avoiding low altitude maneuvers. Optimum power settings and maximum altitudes shall be maintained by

pilots when consistent with safety. Flights over populated areas shall be avoided by a pilot to the extent consistent with safety.

D.    Pilots of helicopters shall use extreme caution when operating near any area where light aircraft are parked or operating.

## 400.13    SKYDIVING ACTIVITIES:

A.    Skydiving activities shall comply with all FAA, State, City, Airport and any other regulations governing skydiving activities.

B.    Airport rules regarding skydiving.

1.    There will be no skydiving when wind speeds exceed the maneuvering capabilities and the forward speed of the parachute, or the skill level of the parachutist to allow for a safe landing in the designated landing zone.

2.    Sky divers will avoid all designated traffic patterns.

3.    No skydiver will cross runway 18-36 below 1,000 feet AGL.

4.    No skydiver will land on or near runway 18-36 thresholds.

5.    All skydivers must land at least 500 feet from runway 18-36 and 200 feet from all taxiways, aprons, airport buildings and airplanes.

6.    No skydiving activity will be allowed before sunrise or after sunset.

7.    All people and vehicles shall be confined to their designated area.

8.    Only authorized individuals will be allowed access to airport hangars or airport buildings.

9.    No vehicles will be allowed to drive on airport aprons, taxiways and runways,

10.    An authorized person will monitor unicorn during periods of skydiving activity, giving traffic advisories pertaining to the number and location of skydivers.

11.    All NOTAMS and ADVISORIES pertaining to skydiving activities at Morris Municipal Airport will be issued per FAA, State, City, Airport and any other regulations governing skydiving.

12.    No skydiving activities will be allowed unless the following minimums are met:
3 mile visibility
3,000 feet AGL Cloud Base
 Minimum distance from clouds-500 feet below 1,000 feet above and 2,000 feet horizontal.

12.    No hook turns shall be allowed below 200 feet AGL.

13.    No dangerous or abrupt maneuvers will be permitted that are not required for normal flight or landing.

C.  Lessee shall procure and maintain at all times, at such person's sole expense, an insurance policy or policies appropriate for their operation and in amounts which are approved by the City of Morris. Such person shall provide to the City of Morris, a certificate of Insurance naming the City of Morris and its elected and appointed City officials, officers, employees and agents and the airport manager as additional named insureds. The type and amount of this coverage shall be as established in the commercial operating permit, contract, lease or other written agreement with the City of Morris from an insurer acceptable to the City of Morris - showing proof of aircraft liability insurance covering bodily injury including passengers and property damage in amounts approved by the City of Morris. Further, such person(s) shall have the City of Morris and its elected appointed officials, officers, employees and agents and the Airport Manager named as additional insured on their certificate of Insurance. Such Certificate shall provide that the insurance cannot be cancelled or materially altered without thirty (30) days prior written notification to all named insured. Lessee shall also provide a signed hold harmless and indemnity agreement in favor of the City of Morris and its elected and appointed officials and officers, employees and agents and the Airport Manager.

**400.14**    **PILOT SCHOOL/STUDENT TRAINING:**

No person(s) shall engage in flight instruction at the Morris Municipal Airport unless such person(s) has received prior permission from the Airport Manager.

**400.15**    **OPERATION OF AIRCRAFT AND UNAIRWORTHY AIRCRAFT:**

A.  No person shall park or store any un-airworthy aircraft on any portion of the Morris Municipal Airport at any time whatsoever unless same is parked or stored within a hangar at Morris Municipal Airport, nor allow or permit any of such person's guests, invitees, licensees, agents or employees to do so.

B.  No person shall operate, maintain, park, store, take-off or land any aircraft on or from the Morris Municipal Airport if such aircraft weighs in excess of 24,000 pounds for Single Axle Aircraft and 30,000 pounds for Dual Axle Aircraft - which is the

weight design strength of the City's runway, taxiway, and ramp areas - nor allow or permit any of such person's guests, invitees, licensees, agents or employees to do so.

400.16    CONDUCT OF BUSINESS OR COMMERCIAL ACTIVITY:

A.   It is the intent and duty of the City of Morris to encourage and promote free enterprise and the development of the airport to support the needs of the aviation community. It is the responsibility of the City of Morris to protect its tenants from unreasonable or unfair competition. To this end, when one or more businesses are currently providing essentially the same services, any new petitioners shall be required to provide a suitable market analysis, or other evidence, showing the justification for locating their business on airport property.

B.   Pursuant to FAA and State of Illinois requirements, the City of Morris reserves the right to refuse to issue a lease to any firm or individual if either of the following conditions are present:

1.   It would be unreasonably costly, burdensome or impractical for more than one business or individual to provide such service; or

2.   If allowing more businesses and individuals to provide such services would require the reduction of space leased pursuant to an existing agreement between other tenants and the airport.

C.   No person shall engage in any business or commercial activity of any nature whatsoever on Airport property except with the written approval of the City of Morris.

D.   No person shall solicit fares, for any purpose, on the Airport without written consent of the City of Morris.

E.   The type and scope of business allowed to be conducted and the limitations and conditions of said business shall be as specified in the written consent granted to such applicant. Said consent may be included in a contract, lease or other writing which shall specify the fees and charges to be paid to the City of Morris by such applicant.

F.   All applications for written consent to do business at the Morris Municipal Airport shall be submitted in writing to the Airport Manager who shall submit them to the City Council for review and approval of such applications. All such applications shall be reviewed in light of the Morris Airport Rules and Regulations, City of Morris Ordinances, and any applicable federal and state laws, rules or regulations.

G.   All buildings and structures are subject to the approval of the City of Morris prior to construction. The City of Morris has the right and authority to dictate the height (including door opening height), type of construction, location and appearance of any structure. No structure may be occupied by a tenant or lessee, nor may any business

activity commence in a structure, until all items of construction are completed. No building or structure may be leased or subleased or occupied without written approval from the City of Morris.

H.    The consent of the City of Morris to any person doing business at the Morris Municipal Airport may be revoked by the City of Morris if that person has:

    1.    Violated any one or more of the Rules and Regulations of the Morris Municipal Airport or any other FAA, State, City ordinance regulation or directive.

    2.    Failed or ceased to meet the requirements of the Minimum Requirements for Airport Aeronautic Services as currently in effect; or

    3.    Failed or ceased to comply with any requirement or condition stated in the written agreement by the City of Morris to do business at the Airport; or

    4.    Failed to make timely payment of any charge or fee due to the City of Morris.

## 400.17    INSURANCE:

Any person engaging in any business, commercial activity, including, but not limited to, flight instruction, skydiving, etc., or storing or hangaring aircraft on the Airport shall obtain and maintain, at such person's sole expense, an insurance policy or policies appropriate for their operation and in amounts which are approved by the City of Morris. Further, such person shall provide to the City of Morris, a certificate of Insurance naming the City of Morris and its elected and appointed City officials, officers, employees and agents and the Airport Manager as additional named insureds. The type and amount of this coverage shall be as established in the commercial operating permit, contract, lease or other written agreement with the City of Morris from an insurer acceptable to the City of Morris. Such Certificate shall provide that the insurance cannot be canceled or materially altered without thirty (30) days prior written notification.

## 400.18    HOLD HARMLESS:

Any person engaging in commercial activity on the Airport shall be solely responsible for all the operational and financial responsibilities of its commercial activity and shall defend, indemnify and hold harmless the City of Morris and its elected and appointed officials, officers, agents and employees and Airport Manager from any and all costs, including reasonable attorney fees, and damages, losses, claims, demands, suits at law and/or in equity of any kind, nature or extent whatsoever to such person and/or to any third party relating directly or indirectly to such operations.

10

## 500 - STORAGE, WASTE DISPOSAL AND FUELING OPERATIONS:

### 500.1        STORAGE:

A.     No person shall keep or store any flammable liquids, gases, signal flares or other similar material in the hangars or in any building on the Airport; provided, however, such materials may be kept in an aircraft in the proper receptacles installed in the aircraft for such purpose, or in rooms or areas that meet all applicable codes and is specifically approved for such storage by the Morris Fire Protection District and Airport Manager.

B.     No person shall keep or store containers of lubricating or waste oils in or about the hangars, unless such material is kept in containers specifically designated for oil storage in accordance with all applicable codes, statutes, laws ordinances, rules and regulations.

### 500.2        WASTE DISPOSAL:

No fuels, oils, dopes, paints, solvents, acids or other waste shall be disposed of or dumped by any person in drains, basins, or ditches or elsewhere on Airport property and must be disposed of in accordance with all applicable Federal, State and local environmental statutes, laws, ordinances, rules and regulations.

### 500.3        FUELING OPERATIONS:

A.     The City of Morris will permit no more than one (1) lease for the operating privilege of either storing or dispensing for their own use, or dispensing at retail, aviation fuels at the Morris Municipal Airport, until a total of 200,000 gallons of retail fuel is utilized annually. One additional lease may be granted for each additional 200,000 gallons of fuel utilized annually thereafter.

B.     No person shall conduct fueling and defueling operations unless authorized by The City of Morris, and is in full compliance with all applicable Federal, State and local statutes, laws, ordinances, rules and regulations and directives.   All fueling operations, except as expressly authorized, are hereby prohibited. The following general rules shall further govern the fueling and defueling of aircraft and all persons engaging in such fueling and defueling operations:

1.     No person shall fuel or defuel an aircraft while the engine is being warmed by applications of exterior heat, or while such aircraft is in hangar or enclosed space.

2.     No person shall smoke within 100 feet of an aircraft being fueled or defueled.

3.     No person shall operate any radio transmitter or receiver, or switch electrical appliances on or off in an aircraft during fueling or defueling.

11

**600.2      PRESERVATION OF PROPERTY:**

No person shall destroy, injure, deface, or disturb in any way any building, sign, equipment, marker, or other structure, tree, flower, lawn, or other property on the Airport; nor alter, make additions to, or erect any building or sign or make any excavations on the Airport without written permission from the City of Morris. All exterior signs shall conform to any sign ordinance as may be adopted by the City, County and/or State.

**600.3      USE OF ROADS AND WALKS:**

A.    No person shall travel on the Airport other than on the roads, walks, or places provided for the particular class of traffic.

B.    No person shall occupy the roads or walks in such a manner as to hinder or obstruct their proper use.

C.    Pedestrians shall yield the right of way to all aircraft on Airport property.

**600.4      SOLICITATION OF FUNDS:**

Organizations desirous of soliciting funds on the Airport properly may not do so until the organization has registered to solicit alms or funds with the City of Morris. Such solicitations may be conducted only in those areas of the Airport specifically authorized by the Airport Manager.

**600.5      SMOKING:**

No person shall smoke in any area, place or building on the Airport where smoking is specifically prohibited, including but not limited to, any hangar or shop, service station area, gasoline storage area, or within 100 feet of any refueling or defueling operation.

**600.6      TRASH CONTAINERS AND TRASH HAULING:**

No person shall keep uncovered trash in any area. Only areas specifically designated in writing by the Airport Manager shall be used for trash or garbage containers. Such areas shall be kept clean and sanitary at all times. All lessees are responsible for keeping their areas clean and neat at all times. Trash or garbage containers shall only be used for waste generated on Airport property. No vehicle used for hauling any waste or recyclables shall be operated by any person on the Airport unless such vehicle is constructed to prevent its contents from dropping, sifting, leaking, or otherwise escaping therefrom.

**600.7      EQUIPMENT AND MISCELLANEOUS IN APRON AREA:**

Each tenant's or lessee's ramp equipment shall be parked and kept in a neat and orderly manner. No receptacles, chests, cases or housings shall remain on the apron or ramp area that do

13

not fit in with the general architectural and cleanliness standards of the rest of the installation. Approval on these items rests with the Airport Manager.

## 600.8    MAINTENANCE:

Each tenant or lessee shall maintain his/her/its leased property in a neat and presentable condition as to repair, cleanliness, and general maintenance and in accordance with his/her/its individual lease agreements and shall not permit or allow the leased premises to be or become a nuisance. Each tenant or lessee on the Airport shall keep the hangars, hangar floors, terminal aprons and ramp areas leased by them, or used in their operations, clean and clear of oil, grease and other materials and in good repair.

## 600.9    FIRE EQUIPMENT:

Each tenant or lessee shall utilize fire extinguishers which shall be adequate and readily accessible in accordance with rules approved by the National Board of Fire Underwriters for the particular hazard involved. Such devices shall conform to all applicable Federal, State and local fire codes.

## 600.10    STRUCTURAL AND DECORATIVE CHANGES:

Tenants, lessees, or grantees may not effect structural or decorative changes or additions of any type without prior written permission of the City of Morris. Any changes shall conform to all applicable codes.

## 600.11    DAMAGES:

Tenants, lessees, and grantees shall be fully responsible for and promptly pay for or repair all damages to buildings, equipment, real property, and appurtenances owned or in the custody of the Morris Municipal Airport caused by such tenant, lessee or grantee or their respective employees, agents, invitees, licensees, customers, visitors, suppliers, or persons with whom they may do business.

## 600.12    USE OF DESIGNATED TIE-DOWN AREAS AND HANGARS:

Designated tie-down areas and hangars shall be used only for the storage of aircraft and aircraft related materials and equipment which are directly related to the specific stored therein and which is owned or leased by tenant or lessee; provided, however, no fuel shall be stored in such designated tie-down area and hangars unless such fuel is in such aircraft's regular fuel system; and provided, further, a tenant or lessee may allow one or two motor vehicles to be temporarily parked in such hangars during the time period such stored aircraft left the airport in flight and until such aircraft returns to the Airport. Nothing contained in any lease shall authorize the lessee or tenant to conduct any commercial activity from the aforesaid leased areas or the Airport without a written agreement from the City of Morris

14

### 600.16          SURRENDER OF SPACE BY LESSEE:

Upon the expiration or other termination of any such Hangar/Tie-Down Lease, lessee shall quit and surrender the space to the City of Morris in good order and condition, ordinary wear excepted, and Lessee shall remove all of its property. Lessee's obligations to observe or perform this covenant shall survive the expiration or other termination of the lease. Lessee shall be liable for all expenditures incurred by the City of Morris for breach of this covenant, or any other covenant of the lease, including but not limited to attorneys' fees and other costs.

### 600.17          RIGHT OF ENTRY RESERVED:

The City of Morris reserves the right to enter such leased space for the purpose of making ordinary inspections and undertakings including non-emergency activities at reasonable times. Nothing in this Section shall be construed to limit or diminish the City of Morris' right of entry at anytime in any emergency. The lessee shall furnish to the Airport office a key to any locking device to the leased space. No abatement of any payments by the lessee shall be claimed by or allowed to the lessee by reason of the exercise by the City of Morris of any of the rights set forth in this section or in any provisions of such Hangar/Tie-Down Lease. Nothing herein is intended nor shall be construed to obligate the City of Morris to construct, maintain, repair or improve the leased space or any portion thereof, or to impose upon the City of Morris any liability for any failure to do so.

### 600.18          FLYING CLUBS:

Each Flying Club desiring to base their aircraft and operate on the Airport shall comply with the applicable provisions of these Rules and Regulations.

    A.    Such Flying Club shall be a nonprofit entity (corporation, association or partnership) organized for the express purpose of providing its members with an airplane, or aircraft, for its members personal use and enjoyment only. The ownership of such airplane, or aircraft, must be vested in the name of the Flying Club (or owned ratable by all of its members). The property rights of the members of the Flying Club shall be equal and no part of the net earnings of the Flying Club shall inure to the benefit of any member in any form (salaries, bonuses, etc.). The Flying Club may not derive greater revenue from the use of its aircraft than the amount necessary for the operations, maintenance and replacement of its aircraft.

    B.    A Flying Club shall not offer or conduct charter, air taxi or rental of aircraft operations; and shall not conduct aircraft flight instruction except for its own regular members; and only members of the Flying Club may operate its aircraft.

    C.    The Flying Club, with its lease request, shall furnish the Airport Manager with a copy of its charter, by-laws, articles of association, partnership agreement and other documentation supporting its existence; and a roster, or list of members, including names of officers and directors, which shall be

16

revised by the Flying Club and resubmitted to the Airport Manager on a semi-annual basis. The Flying Club shall procure and maintain at all times, aircraft liability insurance covering bodily injury including passengers and property damage in amounts determined by the nature of operation of the Flying Club and as may be approved by the City of Morris. Further, the Flying Club shall provide a Certificate of Insurance naming the City of Morris and its elected officials, officers, employees and agents and the Airport Manager, as additional named insureds. Notification should be made to the City of Morris and the Airport Manager whenever there is a termination of insurance.

D. A Flying Club shall abide by and comply with all Federal, State and local statutes, laws, ordinances, rules and regulations and with rules and regulations and directives set forth in this Chapter.

### 700 - SCHEDULE OF CHARGES

**709.1**        **PRIVATE AND COMMERCIAL AIRCRAFT:**

No individual or organization shall engage in any private or business or commercial activities of any type at the Morris Municipal Airport unless prior written permission is obtained from the Airport Manager and City of Morris and the proper fees have been paid to the City of Morris. The City of Morris reserves the right at any time to increase or decrease said fees in its sole discretion.

### 800 - PENALTIES

**800.1**        **PENALTIES:**

The violation of, or failure to comply with any provision of any Rule or Regulation of the Morris Municipal Airport shall constitute an offense against the City of Morris. Any person who violates, or aids, or abets in a violation of any Rule or Regulation of the Morris Municipal Airport shall, upon conviction, be subject to a fine, of not less than $50.00 nor more than $500.00 for each such offense. Each calendar day upon which any such violation occurs or continues shall constitute a separate offense.

In addition to said penalties, the City of Morris may revoke, cancel or suspend any existing privilege or franchise as a penalty for a violation of any rule or regulation pertaining to the use, enjoyment or exercise of such privilege or franchise.

The penalties provided in this paragraph shall be deemed to be cumulative and not in substitution of any other specific penalties as may be otherwise provided for in this Chapter or in any other Ordinance Rule or Regulation of the Morris Municipal Airport, City of Morris as now or as may be hereafter enacted or adopted, or amended or modified.

17

## 900 - TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

The City of Morris (hereinafter referred to as the "sponsor") HEREBY AGREES THAT as a condition to receiving any Federal financial assistance from the Department of Transportation, it will comply with Title VI of the Civil Rights Act of 1964, 78 Stat. 252.42 U.S.C. 2000d, 42 U.S.C. 2000d-4 (hereinafter referred to as the "Act") and all requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-Assisted Programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964 (hereinafter referred to as the "Regulations") and other pertinent directives, to the end that in accordance with the Act, Regulations, and other pertinent directives, no person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in , be denied the benefits of, or be otherwise subjected to discrimination under any program or activity for which the sponsor receives Federal financial assistance from the Department of Transportation including the Federal Aviation Administration, and HEREBY GIVES ASSURANCE THAT it will promptly take any measures necessary to effectuate this agreement. This assurance is required by Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-assisted programs of the Department of Transportation, subsection 21.7 (a) (1).

City of Morris does hereby declare that no person on the grounds of race, color or national origin shall be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities, (2) that in the construction of any improvements on, over, or under such land and the furnishings of services thereon, no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination, (3) that the City of Morris shall use the premises in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-assisted program of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

18

Case: 1:13-cv-04272 Document #: 1-2 Filed: 06/07/13 Page 1 of 3 PageID #:31

# EXHIBIT 2

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## GRUNDY COUNTY, ILLINOIS

CITY OF MORRIS,  )
an Illinois Municipal Corporation,  )
  )
      Plaintiff,  )
  )
v.  )    Case No.  12 OV 41
  )
NICHOLAS SCHOLTES,  )
  )
      Defendant,  )

> This Is A True Copy Of An Original
> Filed Herein On 3-28-12
> KAREN E. SLATTERY ...

### NON-TRAFFIC COMPLAINT

#### Count I

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief.

That on or about December 26, 2011, above the Morris Municipal Airport Airspace, Defendant, NICHOLAS SCHOLTES did:

> operate an aircraft in aerobatic flight within the lateral boundaries of the surface areas of Class B, Class C, Class D or Class E airspace designated for an airport

in violation of Chapter 8.75.010 of the Morris City Code and Chapter 400.1 of the Rules and Regulations of the Morris Municipal Airport.

#### Count II

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief.

That on or about December 26, 2011, above the Morris Municipal Airport Airspace, Defendant, NICHOLAS SCHOLTES did:

> operate an aircraft in aerobatic flight within four (4) nautical miles of the center line of any Federal Airway;

Case: 1:13-cv-04272 Document #: 1-2 Filed: 06/07/13 Page 3 of 3 PageID #:33

Under penalties, as provided by law for false certification pursuant to Section 1-109 of the Code of Civil Procedure and perjury pursuant to Section 32-2 of the Criminal Code of 1961, the undersigned certifies that the statements set forth via this instrument are true and correct.

DATED THIS 28TH DAY OF MARCH, 2012.

CITY OF MORRIS,
an Illinois Municipal Corporation, Plaintiff

By: _____

JEFFREY VOGEN, Airport Manager,
Morris Municipal Airport

Bradley Nolden
SCOTT M. BELT & ASSOCIATES, P.C.
105 E. Main Street, Suite 206
Morris, IL 60450
(815) 941-4675
ARDC #: 6306646

# EXHIBIT 3



U.S. Department
of Transportation
Federal Aviation
Administration

DuPage Flight Standards District Office

31W775 North Avenue
DuPage Airport
West Chicago, IL  60185-1056
(630) 443-3100
(630) 443-3155 (FAX)

MAY    4  2011

Mr. Doug Partl
International Aerobatic Club, Chapter 1
6808 West Johnson Court
Monee, IL  60449

Dear Mr. Partl:

Enclosed is your Certificate of Waiver/Authorization for the Morris Airport Aerobatic
Practice Area, effective from sunrise to sunset, May 1, 2011 to March 31, 2012.

Please note that Special Provisions 5 and 6 require a NOTAM to be filed with Lockheed
Martin Flight Service Station, and Special Provision 7 requires telephone notification to
Chicago TRACON at (847) 608-5654 and Chicago Center at (630) 906-8341 prior to
commencing activities.

This office requests you provide a sufficient amount of time for completion of an
Environmental Assessment upon application for renewal of this Aerobatic Practice Area
(60-90 days).

If you have any questions, please contact this office at (630) 443-3100.

Sincerely,

Carolyn B. Remol
Principal Operations Inspector

Enclosures

U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION

# CERTIFICATE OF WAIVER OR AUTHORIZATION

**ISSUED TO**
International Aerobatic Club, Chapter 1
Doug Partl, President

**ADDRESS**
6808 W. Johnson Court
Monee, IL 60449

This certificate is issued for the operations specifically described hereinafter. No person shall conduct any operation pursuant to the authority of this certificate except in accordance with the standard and special provisions contained in this certificate, and such other requirements of the Federal Aviation Regulations not specifically waived by this certificate.

**OPERATIONS AUTHORIZED**
Aerobatic Practice Area within 2.5 nm from the Center of C09, Morris Airport in the depicted IAC Practice Box, located NW of the airport from the surface up to and including 5000 feet MSL.

**LIST OF WAIVED REGULATIONS BY SECTION AND TITLE**
14 CFR 91.117(a); 14 CFR 91.303(c)(d)(e)

---

### STANDARD PROVISIONS

1. A copy of the application made for this certificate shall be attached to and become a part hereof.
2. This certificate shall be presented for inspection upon the request of any authorized representative of the Administrator of the Federal Aviation Administration, or of any State or municipal official charged with the duty of enforcing local laws or regulations.
3. The holder of this certificate shall be responsible for the strict observance of the terms and provisions contained herein.
4. This certificate is nontransferable.

NOTE:—This certificate constitutes a waiver of those Federal rules or regulations specifically referred to above. It does not constitute a waiver of any State law or local ordinance.

---

### SPECIAL PROVISIONS

Special Provisions Nos. 1 to 15 inclusive, are set forth on the reverse side hereof.     "See Attached". ☒

This certificate is effective from _Sunrise to Sunset_ to _May 1, 2011 to March 31, 2012_, inclusive, and is subject to cancellation at any time upon notice by the Administrator or his authorized representative.

BY DIRECTION OF THE ADMINISTRATOR

_Luanne Wills-Merrell_ (Signature)

Great Lakes
(Region)

5/3/11
(Date)

Luanne Wills-Merrell
(Signature)

Manager, DuPage FSDO
(Title)

FAA Form 7711-1 (7-74)     Electronic Forms (PDF)

No certificate may be issued unless a completed application form has been received (14 C.F.R. 91, 101, and 105).



| US Department of Transportation Federal Aviation Administration | Form Approved: O.M.B. No. 2120-0027 |
|---|---|

**APPLICATION FOR CERTIFICATE OF WAIVER OR AUTHORIZATION**

| | |
|---|---|
| APPLICANTS - DO NOT USE THESE SPACES | |
| Region Great Lakes | Date 4/26/2011 |
| Action ☑ Approved ☐ Disapproved - Explain under "Remarks" | |
| Signature of authorized FAA representative | |

## INSTRUCTIONS

Submit this application in triplicate (3) to any FAA Flight Standards district office.

Applicants requesting a Certificate of Waiver or Authorization for an aviation event must complete all applicable items on this form and attach a properly marked 7.5 series Topographic Quadrangle Map(s), published by the U.S. Geological Survey (scale 1:24,000), of the proposed operating area. The map(s) must include scale depictions of the flightlines, showlines, race courses, and the location of the air event control point, Police dispatch, ambulance, and fire

fighting equipment. The applicant may also wish to submit photographs and scale diagrams as supplemental material to assist in the FAA's evaluation of a particular site. Application for a Certificate of Waiver or Authorization must be submit - ted 45 days prior to the requested date of the event.

Applicants requesting a Certificate of Waiver or Authorization for activities other than an aviation event will complete items 1 through 8 only and the certification, item 15, on the reverse.

| 1. Name of Organization | 2. Name of responsible person |
|---|---|
| Ini Aerobatic Club CH-1 | Douglas E. Part |

| 3. Permanent mailing address | House number and street or route number | City | State and ZIP code | Telephone No. |
|---|---|---|---|---|
| | 5808 W. Johnson Court | Monee | IL 60449 | 708-912-9926 |

4. FAR section and number to be waived

14 CFR 91.117(a) 14 CFR 91.303(c)(d)(e)

5. Detailed description of proposed operation *(Attach supplement if needed)*

Aerobatic Practice Area in the vicinity of Morris IL Airport (C09), during the hours of Sunrise to Sunset, Surface to 5000' MSL. Flight in the depicted IAC Practice Box, located NW of the airport, shall be conducted in accordance with the guidelines called out in the most recent revision of the Official Rule Book of the International Aerobatic Club

6. Area of Operation *(Location, altitudes, etc.)*

Within 2.5 miles of the geographical center of the Morris IL Airport (C09)

| 7a. Beginning *(Date and hour)* | b. Ending *(Date and hour)* |
|---|---|
| 4/1/2011 0000UTC | 3/31/2012 2359UTC |

| 8. Aircraft make and model (a) | Pilot's Name (b) | Certificate number and rating (c) | Home address (Street, City, State) (d) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

FAA Form 7711-2 (6-86) Supersedes Previous Edition

Case: 1:13-cv-04272 Document #: 1-3 Filed: 06/07/13 Page 5 of 11 PageID #:38

# SPECIAL PROVISIONS
## AEROBATIC PRACTICE AREA
## INTERNATIONAL AEROBATIC CLUB
## MORRIS, ILLINOIS

*This Certificate of Waiver constitutes a waiver of only those regulations stated, to the degree and for the period of time specified in the certificate. The Certificate of Waiver does not constitute a waiver of any state law or local ordinance. Should the proposed operation conflict with any state law, local ordinance, or required permission of local authorities or property owners, it shall be the applicant's responsibility to resolve the difficulty. The provisions of the waiver shall apply, regardless of the statements contained in the application for Certificate of Waiver. The waiver shall be considered void upon completion of the authorized schedule of events or at the latest time shown on the face of the Certificate of Waiver, whichever occurs earlier. The air show will consist of only those maneuvers or events specified in Item 14 of the application, or in an attachment to the Application for Certificate of Waiver.*

1) Aerobatic flight shall be confined to the area designated on the pictorial chart (satellite photographs may be substituted for topographic charts and are available on Web sites, e.g., Google Earth, maps.googles.com, Map Quest) attached to the Certificate of Waiver and defined in Special Provision 2. A definitive pictorial chart or photograph of the underlying area should be attached to the application and the approved waiver.

2) The aerobatic practice area is further defined as follows: Within 2.5 nm from the center of C09, Morris Airport in the depicted IAC Practice Box, located NW of the airport from the surface up to and including 5000 feet MSL.

3) No aerobatic maneuvers may be performed over or within 500 feet laterally from any open air assembly of persons or congested area of any city, town, or settlement.

4) No person may operate an aircraft in aerobatic flight when the visibility is less than 3 miles or a ceiling less than 1500 feet.

5) Before commencing aerobatic flight operations, the person(s) authorized to activate and deactivate the aerobatic practice area shall be responsible for advising the Lockheed Martin Flight Service Station at (877) 487-6867 or (703) 724-4288 of the activity and requesting that a NOTAM that includes the following information be issued:

   a. The location, dates, and times the aerobatic activity will be in effect.
   b. If appropriate, the runway(s) that will be closed during the aerobatic activities.

6) All certificates of waiver granting relief from appropriate sections of part 91 must also contain guidance stipulating that the person(s) responsible for activation of the aerobatic practice area provide the controlling FSS with a copy of the Certificate of Waiver at least

48 hours before activation of the NOTAM. For certificates of waiver that are issued on a long term basis, additional wording should be included advising the holder to ensure that the FSS keeps the waiver on file for future NOTAM activation.

7) Notification shall be made to Chicago TRACON at (847) 608-5654 at least 30 minutes before the beginning of aerobatic activity in the practice area, or, if a letter of agreement exists, notification shall be made as specified in that document. Chicago TRACON shall also be notified at the termination of aerobatic activities.

8) The person(s) authorized to activate and deactivate the aerobatic practice area described in special provision 2 is Doug Partl or his delegate.

9) The person named in special provision 8 shall also be responsible for the following:

   a. Ensuring that all pilots and aircraft operating within the confines of the waivered aerobatic practice area are properly certificated;
   b. Briefing each pilot to ensure that all users of the practice area comply with the limitations imposed by the Certificate of Waiver and its attendant special provisions; and
   c. Maintaining a log containing the pilot's name, airman certificate number, aircraft registration number, date, and time the aerobatic practice was in use and providing this information to the FAA upon request.

10) When required by ATC, all pilots must monitor Chicago TRACON on 127.075 on a continuous basis while operating within the aerobatic practice area.

11) All pilots operating within the waivered aerobatic practice area shall maintain VFR at all times and shall be responsible for seeing and avoiding all conflicting traffic.

12) Aerobatic flight shall be conducted only between the hours of sunrise and sunset.

13) The holder of this Certificate of Waiver or delegated representative is responsible for halting or canceling activity in the aerobatic practice area if, at any time, the safety of persons or property on the ground or in the air is in jeopardy, or if there is a failure to comply with the terms or conditions of this waiver.

14) The FAA has the authority to cancel the Certificate of Waiver or delay any activities if the safety of persons or property on the ground or in the air is in jeopardy, or if there is a violation of the terms of the waiver or authorization.

15) Airport staff, when available, shall be advised of planned aerobatic activity 30 minutes prior to activation of the aerobatic practice area.

Attachment A
Approved Certificate of Waiver
International Aerobatic Club, Chapter 1
Doug Partl, President

## LIST OF WAIVED REGULATIONS

### 14 CFR 91.117 AIRCRAFT SPEED

(a) Unless otherwise authorized by the Administrator, no person may operate an aircraft below 10,000 feet MSL at an indicated airspeed of more than 250 knots (288 mph).

### 14 CFR 91.303 AEROBATIC FLIGHT

No person may operate an aircraft in aerobatic flight –

(c) Within the lateral boundaries of the surface areas of Class C and Class D airspace designated for an airport.

(d) Within four (4) nautical miles of the centerline of any Federal airway.

(e) Below an altitude of 1,500 feet about the surface.

For the purposes of this section, aerobatic flight means an intentional maneuver involving an abrupt change in an aircraft's attitude, an abnormal attitude, or abnormal acceleration not necessary for normal flight.



▶ **ITEMS 9 THROUGH 14 TO BE FILLED OUT FOR AIR SHOW/AIR RACE WAIVER REQUESTS ONLY.**

9. The air event will be sponsored by:

| 10. Permanent mailing address | House number and street or route number | City | State and ZIP code | Telephone No. |
|---|---|---|---|---|

11. Policing (Describe provisions to be made for policing the event.)

12. Emergency Facilities (Mark all that will be available at the time and place of the air event.)

☐ Physician          ☐ Fire Truck          ☐ Other - Specify _____

☐ Ambulance          ☐ Crash Wagon          _____

13. Air Traffic Control (describe method of controlling traffic, including provision for arrival and departure of scheduled aircraft.)

14. Schedule of Events (include arrival and departure of scheduled aircraft and other periods the airport may be open.)

| Hour (a) | Date (b) | Event (c) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

If sufficient space is not available, the entire schedule of events may be submitted on separate sheets, in the order and manner indicated above.

| Please Read ▷ | The undersigned applicant accepts full responsibility for the strict observance of the terms of the certificate of waiver or Authorization, and understands that the authorization contained in such certificate will be strictly limited to the above described operation. |
|---|---|

15. Certification - I CERTIFY that the foregoing statements are true.

| Date 2/15/2011 | Signature of Applicant |
|---|---|

Remarks

FAA Form 7711-2 (6-86) Supersedes Previous Edition

map of morris illinois - Google Maps Case: 1:13-cv-04272 Document #: 1-3 Filed: 06/07/13 Page 10 of 11 PageID #:43 Page 1 of 1

Google

To see all the details that are visible on the
screen, use the "Print" link next to the map.



Google

To see all the details that are visible on the
screen, use the "Print" link next to the map.



4659/MS042                                                      JES/BSP

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| INTERNATIONAL AEROBATICS CLUB CHAPTER 1 and NICHOLAS SCHOLTES | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 13 cv 4272 |
| CITY OF MORRIS, ILLINOIS, JEFFREY VOGEN and SID NELSON | ) ) ) | Honorable John J. Tharp, Jr. |
| Defendants. | ) | **JURY DEMANDED** |

### AFFIDAVIT OF SCOTT BELT

Scott Belt, being first duly sworn upon his oath, respectfully states as follows:

1.     I was, at all times relevant, and am now, Corporate Counsel for the City of Morris.

2.     Over the past two years, the International Aerobatics Club Chapter 1, the City of Morris, and the Federal Aviation Administration have participated in numerous discussions regarding the facts which gave rise to the instant lawsuit. I was personally involved in those discussions.

3.     In May, 2012, Doug Partl, the President of Plaintiff, International Aerobatics Club Chapter 1, informed me that Bruce Ballew, Midwest Director of the IAC, would be handling those discussions on behalf of the International Aerobatics Club Chapter 1.

4.     In December, 2012, I attended and participated in a meeting with Bruce Ballew and representatives of the Federal Aviation Administration, among others.



5.    As a result of that meeting, the City of Morris and the International Aerobatics Club Chapter 1 reached certain agreements. For example, the International Aerobatics Club Chapter 1 agreed to relocation of the Aerobatic Practice Area referenced in the Complaint, and, in return, the City of Morris agreed to dismiss the charges against Plaintiff, Nicholas Scholtes, which are also referenced in the Complaint. The agreements are summarized in the electronic correspondence which I sent Bruce Ballew on February 1, 2013 in the regular course of business. A true and correct copy of that correspondence is attached hereto as Exhibit A.

6.    On February 12, 2013, Bruce Ballew sent me an electronic correspondence which I received in the regular course of business and which indicated his agreement to and understanding of the agreements summarized in my February 1, 2013 correspondence to him. A true and correct copy of Bruce Ballew's February 12, 2013 electronic correspondence is attached hereto as Exhibit B.

7.    After this lawsuit was filed, on or about August 8, 2013, I received, in the regular course of business, notification from Cindy Limbach, a member of the Plaintiff organization, International Aerobatics Club Chapter 1, indicating that it had obtained a waiver for the new Aerobatic Practice Area, which is in a location agreeable to the City of Morris, the Federal Aviation Administration, and International Aerobatics Club Chapter 1. A true and correct copy of the letter from Cindy Limbach with the certificate of waiver attached thereto is attached hereto as Exhibit C.

8.    On August 14, 2013, I received, in the regular course of business, electronic correspondence from Chet Cybulski of the Federal Aviation Administration confirming that the waiver for the Aerobatic Practice Area referenced in the Complaint

had been cancelled and, accordingly, that Aerobatic Practice Area no longer exists. A true and correct copy of that electronic correspondence is attached hereto as Exhibit D.

      9.     On August 14, 2013, I obtained the attached order from the Circuit Court of the 13th Judicial Circuit, Grundy County, IL, dismissing the charges referenced in the Complaint against Plaintiff, Nicholas Scholtes, with prejudice. Exhibit E.

      10.    The foregoing statements are based on my personal knowledge, and I can competently testify to the same.

      Further affiant sayeth not.

 

                              Scott M. Belt,
                              City of Morris Corporate Counsel

Subscribed and Sworn to before
me this 16th day of August, 2013

NOTARY PUBLIC

```
*OFFICIAL SEAL*
Heather A. Sohan
Notary Public, State of Illinois
My Commission Expires Aug. 30, 2015
```

---- Original Message ----
From: Scott Belt
To: Bruce Ballew
Cc: Julian Houston ; Randy Larson - Work ; Barry Aldrich ; Luanne.Wills-Merrell@faa.gov ; JD
Martin ; George.Wadsworth@faa.gov ; james.e.gardner@faa.gov ; JEFF VOGEN ; Sid Nelson ;
Dale Wills ; Cathy.Elwardt@faa.gov ; Dick Kopczick ; Bradley Nolden ; Cindy Limbach ; Guy
Christensen
Sent: Friday, February 01, 2013 12:20 AM
Subject: 1/31/13 Morris Airport Committee Meeting

Bruce,

As we recently discussed, the Morris airport committee met this evening to receive a
status update associated with the ongoing IAC matter. This was the first meeting of
the Morris airport committee since the holidays.

Following a lengthy meeting, a part of which was conducted in closed session, the
airport committee unanimously approved the proposed resolution of the IAC waiver
matter consistent with J.D. Martin's e-mail of January 10, 2013, specifically
paragraphs 13-15.

I have copied and pasted Mr. Martin's e-mail below.

Having received a copy of the new waiver application this evening (after the
meeting), can you please advise how the DuPage FSDO has been made aware of the
"Agreements" contained in paragraph 13 of Mr. Martin's memo? I didn't see any
reference in the application, so I assume this information was transmitted to the
FSDO separately. Mr. Martin noted in his "Conclusion" that "The City of Morris
advised that given the agreements in item 13 they would not seek elevation of the
CSI." Please advise.

The committee has instructed me to dismiss the Nick Scholtes charges immediately
upon receipt of the new waiver and written confirmation of the termination of the
existing waiver.

I was also asked to comment on my e-mail which was directed to LuAnne Wills-
Merrel on January 25, 2013. This information was communicated based on 3
factors; First, each of the 4 items contained in the e-mail were discussed at the
Regional meeting. Second, J.D. Martin concluded his January 10, 2013 e-mail with
the request to "Please add your comments, if any, and they will be recorded."
Lastly, The comments were submitted for consideration following a telephone
conference between J.D. Martin and Sid Nelson shortly following the meeting at the
Region in which Mr. Martin suggested that additional suggested safety concerns be
submitted. These were not new discussion topics or new conditions, but rather a
good-faith attempt on the City's part to clarify and define the scope of safety items
that had already been discussed and agreed to. For obvious reasons, we have
consistently agreed throughout our discussions that safety is paramount.

The first item requested notification to airport personnel. IAC practice day guidelines
place the responsibility on the practice day manager to "coordinate the practice day
with the appropriate airport management personnel." (IAC Practice Guidelines; Page
2; J.D. Martin memo - paragraph 13 (C)). The City's clarification simply requested a



one hour courtesy notice prior to contacting flight services, and a 5 day notice for a practice day that the IAC may scheduled in advance.

The second item suggested 2 spotters - one to monitor air traffic and one to critique the aerobatic performance. This, too, was a safety suggestion to allow for "an organized and safe structure to practice aerobatic skills while being observed and critiqued by other qualified IAC ground observers." (see IAC Practice Guidelines; page 1 & 2; J.D Martin memo - para 13 (A) & (B)). The second suggestion also requested that the spotters be located independently of any bystanders to avoid distractions.

The third and fourth items related to communications between the spotters and the performing aircraft. The IAC Guidelines require that the practice day manager confirm "radio procedures and frequencies." (IAC Guidelines; Page 3). The City would be remiss to not request adequate and redundant communications between the spotters and the performing aircraft considering the incident in Morris at the play date this past fall. Again, simply a good-faith effort to enhance and protect the safety of the IAC pilots and the general aviation pilots flying in the nearby area.

It is my understanding that the CSI will remain open until February 20, 2013. Hopefully, these matters can be resolved and finalized prior to that date.

I have copied the suggested conditions below that were transmitted to Ms. Willis-Merrell on January 25, 2013 for the benefit of all parties:

**1. Notification to the airport mandatory by phone or in person Per IAC guidlines "** *3. Coordinating the practice day with the appropraite airport management personel.*** Prior to contacting flight service to notam the aerobatic box. Minimum of hour prior.**
**For a scheduled practice day notify the airport directly minimum of 5 days in advance.**

**2.Two spotters located east of the mid point of the box. One to be in contact and watching the aerobatic box, and one to check the surrounding area for incoming traffic. No more bystanders in thespotter area so that the safety spotters are not distracted.**

**3. Communications between spotter and aircraft to be fully operational and checked before flight.**

**4. Alternate means of communication established during the briefing in case of emergency.**

Please confirm the willingness of IAC Chapter 1 to agree to proceed forward based on the above terms.

Thank you for your kind and professional cooperation.

Scott Belt,
Morris City Attorney

----- Original Message -----
**From:** <u>Bruce Ballew</u>
**To:** <u>'Scott Belt'</u>
**Sent:** Tuesday, February 12, 2013 1:06 PM
**Subject:** RE:

Scott,

We are sticking by what we agreed to at the meeting with the City of Morris, the FAA Great Lakes Region and the IAC.

Regards,

Bruce



Date: August 8, 2013

From: Cindy Limbach, IAC Chapter 1 IAC

To:    Jeff Vogen, Manager; Morris Municipal Airport
CC:   Mayor Richard Kopczick
       Carolyn Remol, Principal Operations Inspector, DuPage FSDO

RE:    Certificate of Waiver
       Aerobatic Practice Area Activation

Effective immediately the Attached Waiver is in effect.

Please adhere to provision #16:

"The airport manager will add the following notice to the AWOS on a continual basis:
"Check NOTAMS for possible aerobatic activity east of the airport".

Warmest Regards,

Cindy Limbach

815-252-1031



## U.S. DEPARTMENT OF TRANSPORTATION
### FEDERAL AVIATION ADMINISTRATION

# CERTIFICATE OF WAIVER OR AUTHORIZATION

**ISSUED TO**
INTERNATIONAL AEROBATIC CLUB, CHAPTER 1
CINDY LIMBACH

**ADDRESS**
3220 WEST WAUPECAN ROAD
VERONA, IL 60479

This certificate is issued for the operations specifically described hereinafter. No person shall conduct any operation pursuant to the authority of this certificate except in accordance with the standard and special provisions contained in this certificate, and such other requirements of the Federal Aviation Regulations not specifically waived by this certificate.

**OPERATIONS AUTHORIZED**
Aerobatic Practice Area (APA) within a 2 nm radius of the geographic center of the Morris, Illinois Airport (C09). The APA will be used for aerobatic practice and training and will be operated between the hours of sunrise and sunset from the surface up to and including 5000 feet MSL.

**LIST OF WAIVED REGULATIONS BY SECTION AND TITLE**
91.117(a), 91.119(c), 91.121(a), 91.126(b), 91.127(a)(b) and 91.303(d)(e)

## STANDARD PROVISIONS

1. A copy of the application made for this certificate shall be attached to and become a part hereof.
2. This certificate shall be presented for inspection upon the request of any authorized representative of the Administrator of the Federal Aviation Administration, or of any State or municipal official charged with the duty of enforcing local laws or regulations.
3. The holder of this certificate shall be responsible for the strict observance of the terms and provisions contained herein.
4. This certificate is nontransferable.

NOTE.—This certificate constitutes a waiver of those Federal rules or regulations specifically referred to above. It does not constitute a waiver of any State law or local ordinance.

## SPECIAL PROVISIONS

Special Provisions Nos. 1 _____ to 16 _____ inclusive, are set forth on the reverse side hereof.   "See Attached" ☒

This certificate is effective from ____Sunrise to Sunset____ to __July 1, 2013 to June 30, 2015__, inclusive, and is subject to cancellation at any time upon notice by the Administrator or his authorized representative.

BY DIRECTION OF THE ADMINISTRATOR

| | |
|---|---|
| Great Lakes | Luanne Wills-Merrell |
| (Region) | (Signature) |
| 07/01/2013 | Manager, DuPage FSDO |
| (Date) | (Title) |

FAA Form 7711-1 (7-74)                Electronic Forms (PDF)

# SPECIAL PROVISIONS
## AEROBATIC PRACTICE AREA
## INTERNATIONAL AEROBATIC CLUB
## MORRIS, ILLINOIS

1) Aerobatic flight shall be confined to the area designated on the pictorial chart (satellite photographs may be substituted for topographic charts and are available on Web sites, e.g., Google Earth, maps.googles.com, Map Quest) attached to the Certificate of Waiver and defined in Special Provision 2. A definitive pictorial chart or photograph of the underlying area should be attached to the application and the approved waiver.

2) The aerobatic practice area is further defined as follows: Within 2.0 nm radius from the geographic center of Morris Airport (C09) in the depicted IAC Practice Box, located east of the airport from the surface up to and including 5000 feet MSL.

3) No aerobatic maneuvers may be performed over or within 500 feet laterally from any open air assembly of persons or congested area of any city, town, or settlement.

4) No person may operate an aircraft in aerobatic flight when the visibility is less than 3 miles or a ceiling less than 1500 feet.

5) Before commencing aerobatic flight operations, the person(s) authorized to activate and deactivate the aerobatic practice area shall be responsible for advising Lockheed Martin Flight Service at (877) 487-6867 two (2) hours prior to the activity and requesting that a NOTAM that includes the following information be issued:

   a. The location, dates, and times the aerobatic activity will be in effect.
   b. The intended floor (ex. 500 feet AGL, 1000 feet AGL, or 1500 feet AGL) of the aerobatic practice area that will be in effect.
   c. If appropriate, the runway(s) that will be closed during the aerobatic activities.

6) All certificates of waiver granting relief from appropriate sections of part 91 must also contain guidance stipulating that the person(s) responsible for activation of the aerobatic practice area provide the controlling FSS with a copy of the Certificate of Waiver at least 48 hours before activation of the NOTAM. For certificates of waiver that are issued on a long term basis, additional wording should be included advising the holder to ensure that the FSS keeps the waiver on file for future NOTAM activation.

7) Notification shall be made to Chicago TRACON at (847) 608-5654 and Chicago Center Watch Desk at (630) 906-8341 at least 30 minutes before the beginning of aerobatic activity in the practice area, or, if a letter of agreement exists, notification shall be made as specified in that document. Chicago TRACON shall also be notified at the termination of aerobatic activities.

8) The person authorized to activate and deactivate the aerobatic practice area described in special provision 2 is Cindy Limbach or her delegate, including but not limited to, Bruce Limbach, Randy Michael, Nick Scholtes and Doug Partl.

9) The person named in special provision 8 shall also be responsible for the following:

   a. Ensuring that all pilots and aircraft operating within the confines of the waivered aerobatic practice area are properly certificated;
   b. Briefing each pilot to ensure that all users of the practice area comply with the limitations imposed by the Certificate of Waiver and its attendant special provisions; and
   c. Maintaining a log containing the pilot's name, airman certificate number, aircraft registration number, date, and time the aerobatic practice was in use and providing this information to the FAA upon request.

10) When required by ATC, all pilots must monitor Chicago TRACON on 127.075 on a continuous basis while operating within the aerobatic practice area.

11) All pilots operating within the waivered aerobatic practice area shall maintain VFR at all times and shall be responsible for seeing and avoiding all conflicting traffic.

12) Aerobatic flight shall be conducted only between the hours of sunrise and sunset.

13) The holder of this Certificate of Waiver or delegated representative is responsible for halting or canceling activity in the aerobatic practice area if, at any time, the safety of persons or property on the ground or in the air is in jeopardy, or if there is a failure to comply with the terms or conditions of this waiver.

14) The FAA has the authority to cancel the Certificate of Waiver or delay any activities if the safety of persons or property on the ground or in the air is in jeopardy, or if there is a violation of the terms of the waiver or authorization.

15) The Airport Manager shall be advised of planned aerobatic activity 30 minutes prior to activation of the aerobatic practice area at 815-942-1600. If the airport manager does not answer, a voice mail message will be sufficient.

16) The airport manager will add the following notice to the AWOS on a continual basis: "Check NOTAMS for possible aerobatic activity east of the airport."





----- Original Message -----
From: JEFF VOGEN
To: Mayor Dick Kopczick ; Scott ; bradleynolden@gmail.com ; julian
Sent: Wednesday, August 14, 2013 10:18 AM
Subject: FW: Aerobatic Box

To: jvaztec@msn.com
CC: Carolyn.B.Remol@faa.gov
Subject: RE: Aerobatic Box
From: Chet.Cybulski@faa.gov
Date: Wed, 14 Aug 2013 10:06:34 -0500

Jeff:

Carolyn is currently out of the office, so I am informing you that we received the waiver back from
IAC Chapter 1 for the aerobatic box on the north west side of the runway. This waiver has been
cancelled

The only aerobatic box located at Morris now is the one located on the east side of the runway.

Chet Cybulski
Operations Front Line Manager
DuPage FSDO
630-443-3107

Any comments you may have on services provided are appreciated. To leave Stakeholder
Feedback, please visit the following website:
http://www.faa.gov/about/office_org/headquarters_offices/avs/offices/afs/qms

From:      JEFF VOGEN <jvaztec@msn.com>
           AGL-DPA-FSDO-03, Chicago, IL
To:        Carolyn B Remol/AGL/FAA@FAA,
Cc:        Chet Cybulski/AGL/FAA@FAA
Date:      08/13/2013 06:01 AM
Subject:   RE: Aerobatic Box

Carolyn,

Thanks

I would appreciate the notification when the old waiver is no longer in effect and
returned.

EXHIBIT
D

Thanks again

Jeff


> Subject: Re: Aerobatic Box
> From: Carolyn.B.Remol@faa.gov
> To: jvaztec@msn.com
> CC: Chet.Cybulski@faa.gov
> Date: Mon, 12 Aug 2013 19:56:18 -0500
>
> Jeff,
>
> As I understand it, the former waiver for the Aerobatic Practice Area on the west side
has been mailed back to the FSDO. I am out of town until the 21st. I can confirm receipt
of the superseded waiver at that time if you would like.
>
> Carolyn B. Remol
> Principal Operations Inspector
> DuPage FSDO
> (630) 443-3118
>
>
> -----JEFF VOGEN <jvaztec@msn.com> wrote: -----
>
> ========================
> To: Carolyn B Remol/AGL/FAA@FAA
> From: JEFF VOGEN <jvaztec@msn.com>
> Date: 08/12/2013 06:48AM
> Subject: Aerobatic Box
> ========================
> Carolyn
>
> I received word on Friday from Cindy Limbach that the new box on the east side of
runway 18-36 has been approved. Has the old box on the N.E. corner of the airport been
rescinded
> as per our agreement with Bruce Ballew?
>
> Thanks
>
> Jeff
>

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT

GRUNDY COUNTY, ILLINOIS

NO.

*CITY of MORRIS*

This Is A True Copy Of An Original
Filed Herein On AUG 14 2013
KAREN E. SLATTERY, Circuit Clerk

vs.

*NICHOLAS SCHOLTES*

*120V41*

AGREED
ORDER

This matter having come before the Court on the motion of the City of Morris to dismiss all charges against the Defendant and the Court having been advised;

IT IS HEREBY ORDERED:

The motion of the City of Morris is granted. The complaint filed against the Defendant, Nicholas Scholtes, including all counts set forth therein, are hereby dismissed with prejudice.

DATE 08/17/13

JUDGE

EXHIBIT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| INTERNATIONAL AEROBATIC CLUB CHAPTER 1 and NICHOLAS SCHOLTES, | |
| Plaintiffs, | |
| v. | Case No. 13-CV-4272 |
| CITY OF MORRIS, ILLINOIS, JEFFREY VOGEN, and SID NELSON, | Judge John J. Tharp Jr. |
| | **Jury Demanded** |
| Defendants. | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, DAMAGES, AND A CIVIL RIGHTS ACTION (42 U.S.C. § 1983)**

The International Aerobatic Club Chapter 1 ("IAC Chapter 1") and Nicholas Scholtes ("Scholtes" and collectively the "Plaintiffs"), by their counsel, complain as follows:

**Nature of the Action**

1. At all times relevant and material, a local municipality had no power, and continues to lack the power, to promulgate or to enforce any state, municipal, local, or federal laws and regulations governing aircraft movement once the aircraft is even slightly off the ground and in flight as well during flight.

2. At all times relevant and material, federal law and the Federal Aviation Authority's ("FAA") regulations exclusively governed and continue to govern all airspace, including aircraft movement once the aircraft is even slightly off the ground and in flight as well during flight. Federal law on aviation completely preempts any other related laws or regulations related to aircrafts once the aircraft is in flight.

3. The Illinois Enabling Statute which addresses the authority of a municipality to control aircraft movement limits that authority to movement on the surface of the airport site.

4. The City of Morris enacted a municipal Ordinance, City Code Chapter 8.75.010 (the "Morris Ordinance") and Rules and Regulations of the Morris Municipal Airport (the "Morris Regulations") that regulate aircrafts in flight. *See* Morris Ordinance and Regulations (attached as Exhibit One).

5. Using the Morris Ordinance and Regulations, the City of Morris and its agents have prosecuted and threatened to prosecute members of IAC Chapter 1.

6. The City of Morris and its agents charged Plaintiff Scholtes, a member of IAC Chapter 1, with an ordinance violation for violating FAA regulations related to the operation of his aircraft



while he was flying miles away from the Morris Airport and beyond the city limits of Morris. *See City of Morris v. Scholtes*, No. 12 O.V. 41 (Cir. Ct. Grundy Cnty, Ordinance Violation, filed Mar. 28, 2012) (attached as Exhibit Two).

7. Before commencing the ordinance violation enforcement proceeding, the City of Morris and its agents knew or should have known that they had no authority to bring any enforcement proceedings against Scholtes based on violations of state, municipal, local, or federal law for actions that occurred while he was in flight, and they continued to prosecute the ordinance violation enforcement proceeding even after the FAA told them that Morris had no jurisdiction over aircrafts in flight.

8. The City of Morris and its agents have continued to threaten enforcement of the Morris Ordinance and Regulations against other pilots associated with IAC Chapter 1.

9. The City of Morris and its agents harassed and continue to intimidate IAC Chapter 1 members through the invalid Morris Ordinance and Regulations.

10. IAC Chapter 1 members now fear expensive fines, prosecution, and arrest if they continue to fly. Because of the enforcement action instigated by the City of Morris, IAC Chapter 1 members are refraining from an activity they are free and at liberty to do, flying in our nation's airspace.

11. The Morris Ordinance remains in effect and the City of Morris refuses to withdraw or amend the Morris Ordinance and Regulations despite repeated requests to do so.

12. Through this action, Plaintiffs seek to protect and vindicate their right to fly without being subjected to an unconstitutional and preempted barrier established and enforced by a local municipality.

13. Plaintiffs seek a declaratory judgment that the challenged Ordinance and Regulations are invalid, unenforceable, and void. Plaintiffs also seek a permanent injunction prohibiting the enforcement of the challenged Ordinance and Regulations by Defendants and prohibiting the implementation of any similar ordinances.

14. Defendants have also selectively enforced and threaten to enforce the Morris Ordinance and Regulations against the Plaintiffs out of animus for aerobatic flying, Scholtes, and IAC Chapter 1. Defendants harassed and continue to intimidate the Plaintiffs and IAC Chapter 1 members using the Morris Ordinance and Regulations. Defendants also maliciously initiated and continued to prosecute an ordinance violation enforcement proceeding against Scholtes despite having no authority to do so. Acting under color of state law in depriving Plaintiffs' of their constitutional rights, defendants have violated 42 U.S.C. § 1983 and Plaintiffs seek damages and attorneys' fees for these violations.

## Jurisdiction and Venue

15. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and under 28 U.S.C. § 1343, authorizing original jurisdiction of claims brought pursuant to 28 U.S.C. § 1983 to enforce violations of rights guaranteed by the United States Constitution. This action also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202. This Court has supplemental

AM 23864532.2 2

jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate the state law claim for malicious prosecution.

16. Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391(b) because Plaintiffs and Defendants reside or are located in the District and because a substantial portion of the events giving rise to the Plaintiffs' claims occurred in this judicial district.

## The Parties

17. Plaintiff IAC Chapter 1 is a non-profit membership organization incorporated under the laws of Illinois and operating in Morris, Illinois.

18. IAC Chapter 1's purpose includes preserving pilots' right to fly, to perform aerobatic maneuvers, and to provide opportunities to practice and perform in aerobatic competitions.

19. IAC Chapter 1 members fly through airspace, depart from and arrive at Morris Airport, and also rent hangar space at the airport to store some of their planes.

20. IAC Chapter 1 hosts several events and an aerobatic contest every year at which it is represented by its members. Members of IAC Chapter 1 are in the top skill level for all pilots.

21. Defendant City of Morris is a municipal entity organized under the Constitution and laws of the State of Illinois.

22. The City of Morris owns and operates the Morris Municipal Airport ("Morris Airport").

23. Defendant Sid Nelson ("Nelson") is a Morris Airport consultant and agent of the City of Morris. He is a former member of IAC and the former Morris Airport manager. He is sued in both his official and personal capacity.

24. Defendant Jeff Vogen ("Vogen") succeeded Sid Nelson and is the current Morris Airport manager. He is an employee of the City of Morris. He is sued in both his official and personal capacity.

25. Plaintiff Nicholas Scholtes is a citizen of the United States and resides in Shorewood, Illinois. Scholtes is a pilot and member of IAC Chapter 1.

## The Facts

### A. The FAA has the sole authority to make and enforce laws and regulations related to aircrafts in flight and local municipalities are preempted from enforcing FAA regulations.

26. The United States Government has exclusive sovereignty of the airspace of the United States. Congress has granted the FAA "plenary authority to: (A) allocate airspace and control its use by both civil and military aircraft; (B) make and enforce air traffic rules for both civil and military aircraft."

AM 23864532.2 3

27. The FAA has the sole authority to promulgate and enforce rules governing the regulation of aircraft flight, including flight patterns, routes, and travel within the navigable airspace.

28. Federal law governs every aspect of flight, beginning with a pilot's obtaining a certificate to fly to determining how high and where that pilot can fly while airborne.

29. The FAA has also created a regulatory scheme for enforcement of FAA violations.

30. For any violation of the Federal Aviation Act, "the Administrator [of the FAA] may conduct investigations, hold hearings, issue subpoenas, [and] require the production of relevant documents."

31. The pervasive nature and extent of federal regulation of airspace evidences Congress's intent to completely preempt any state or local regulation of the navigable airways.

32. Congress has also expressly preempted state regulation of navigable airspace through the Airline Deregulation Act of 1978.

33. The Airline Deregulation Act of 1978 preempts the ability of a state or local authority to "enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier."

34. No state or local municipality has any authority to promulgate or enforce rules regulating any aircraft's movement in flight.

## B. FAA regulations alone govern aerobatic flight.

35. Aerobatic flight is a legally recognized form of aircraft operation regulated by the FAA.

36. Federal regulations define aerobatic flight "as an intentional maneuver involving an abrupt change in an aircraft's attitude, an abnormal attitude, or abnormal acceleration, not necessary for normal flight." *See* 14 C.F.R. 91.303.

37. The FAA promulgated rules and regulations specifically governing aerobatic flight.

38. Pilots may perform aerobatic flight in any area not specifically excluded by FAA regulations. FAA Regulation 14 C.F.R. 91.303 prohibits aerobatic flight only in the following areas:

    a. Over any congested area of a city, town, or settlement;

    b. Over an open air assembly of persons;

    c. Within the lateral boundaries of the surface areas of Class B, Class C, Class D, or Class E airspace designated for an airport;

    d. Within 4 nautical miles of the center line of any Federal airway;

    e. Below an altitude of 1,500 feet above the surface; or

      f.   When flight visibility is less than 3 statute miles.

39. Neither Congress nor the FAA has delegated authority to local municipalities to regulate airspace.

40. Moreover, the Illinois Enabling Statute which addresses the authority of a municipality to control aircraft movement limits that authority to movement on the surface of the airport:

> Any agency, municipal corporation...which owns or operates a public airport is authorized to control the movement of aircraft **upon the ground or surface of such public airport**. 620 ILCS 15/2 (West 2012) "Agencies authorized to control aircraft movement; delegation of authority."

41. The Morris Regulations also expressly state in the first substantive paragraph entitled, SCOPE, that the Morris Regulations only govern persons while "on or occupying any area comprising the Morris Municipal Airport."

42. The City of Morris and its agents have no authority to interpret or to enforce the FAA regulations related to aircraft flight generally and aerobatic flight specifically that form the basis of the ordinance violation enforcement proceeding brought against Scholtes.

## C. Against the objection of the City of Morris, the FAA approved an Aerobatic Practice Area to promote the safety of all pilots and passengers.

43. Interstate air carriers typically travel at an altitude significantly higher than the altitude at which pilots perform aerobatics. Near the Morris Airport, however, there is an arrival and departure corridor for Midway Airport. Interstate air carriers arriving at or departing from Midway Airport in this corridor fly at lower altitudes and often fly at the same altitude as pilots performing aerobatics.

44. An interstate air carrier that flies into Midway Airport notified IAC Chapter 1 of its concerns related to air traffic on the route into Midway Airport.

45. In response to discussions concerning air traffic, IAC Chapter 1 voiced safety concerns to the City of Morris and Vogen many times in 2010 and 2011, before developing the Aerobatic Practice Area, regarding air traffic and the flight path of interstate air carriers flying over the Morris Airport.

46. Defendants refused to engage in discussions of these safety concerns with IAC Chapter 1.

47. To prevent interference with interstate airline routes and to ensure the safety of all pilots and passengers, IAC Chapter 1 sought from the FAA an Aerobatic Practice Area.

48. An Aerobatic Practice Area is intended to give pilots a safe area in which to practice their aerobatic maneuvers, and the FAA has established procedures to ensure the safety of all pilots flying near an activated Aerobatic Practice Area, including sending a NOTAM alert, or notice to all airmen.

49. A NOTAM warns other pilots, including the commercial pilots flying into and out of Midway, of activities occurring in the Aerobatic Practice Area so that those pilots may redirect their route to prevent a collision with those pilots flying in the FAA designated Aerobatic Practice Area.

50. While pilots may perform aerobatic flight anywhere except the six restricted areas prohibited under 14 C.F.R. 91.303, even in those restricted areas, the FAA has created a process that permits a pilot to perform aerobatic flight when granted a "Waiver."

51. A Waiver grants pilots an exemption from, or waives, the FAA regulations listed in the Waiver for a specific location, here the Aerobatic Practice Area located northwest of the Morris Airport. The FAA will issue a Waiver for use in an Aerobatic Practice Area to resolve safety concerns and flight traffic issues near airports around the country.

52. IAC Chapter 1, therefore, contacted the FAA, and the FAA authorized IAC Chapter 1's use of an Aerobatic Practice Area northwest of the Morris Airport.

53. After IAC Chapter 1 filed its application for an Aerobatic Practice Area, the City of Morris began obstructing IAC Chapter 1's efforts to obtain an Aerobatic Practice Area.

54. At one time Nelson was a prominent aerobatic pilot in Morris and for years held the only aerobatic waiver near the City of Morris.

55. Nelson was previously a member of IAC Chapter 1, had a falling out with IAC Chapter 1, and is no longer a member of IAC Chapter 1.

56. Acting on behalf of the city as its agent, Nelson made false and misleading statements about IAC Chapter 1 and opposed IAC Chapter 1 receiving an Aerobatic Practice Area in local meetings held by the FAA.

57. Defendants also threatened IAC Chapter 1 and warned that there would be consequences to obtaining an Aerobatic Practice Area to intimidate IAC Chapter 1 into withdrawing its request for an Aerobatic Practice Area.

58. After hearing of the safety concerns and flight traffic issues, the FAA granted IAC Chapter 1 an Aerobatic Practice Area. In doing so, the FAA specifically located the Aerobatic Practice Area on and extending below a federal airway near the Morris Airport. *See* Aerobatic Practice Area Waiver or Authorization (attached as Exhibit Three).

## D. The City of Morris harasses and threatens plaintiffs for obtaining an Aerobatic Practice Area and brings charges against one of IAC Chapter 1's members.

59. After IAC Chapter 1 obtained the Aerobatic Practice Area, Vogen reported to the FAA Regional Office that an IAC Chapter 1 pilot caused a traffic conflict with an interstate air carrier.

60. The IAC Chapter 1 pilot was operating in legally navigable airspace, not the Aerobatic Practice Area, and the FAA investigating inspector found there was no issue with the IAC Chapter 1 member's flight and the FAA closed its investigation.

61. Then, on December 26, 2011, Vogen witnessed Scholtes flying his airplane and allegedly performing aerobatic maneuvers while flying.

62. Scholtes was not flying in one of the six areas restricted by 14 C.F.R. 91.303 and was not in the Aerobatic Practice Area. He was flying over an empty field miles away from the Morris Airport.

63. The City of Morris and Vogen knew or should have known that the City lacks the power to regulate flight or initiate an ordinance violation proceeding based on a pilot's performing aerobatic maneuvers while flying. Because the City has no authority over aircraft in flight, Vogen called the FAA to file a report.

64. Vogen stated on the report to the FAA that he witnessed an "N84PS Pitts S2-B (an IAC member)" violate an FAA regulation related to aerobatic flight, even though he knew or should have known that Scholtes—not IAC Chapter 1—was the owner of the plane and that Scholtes was not in violation of any FAA regulation.

65. The FAA investigated the incident, contacted IAC Chapter 1, and found IAC Chapter 1 had not violated any FAA regulation.

66. Vogen then contacted the FAA a second time regarding the same incident. In the second report to the FAA, Vogen stated that it was Scholtes who had violated an FAA regulation.

67. The FAA duly investigated Vogen's allegation of misconduct on the part of Scholtes, found nothing to support the charge, and properly closed their investigation.

68. It was only after the FAA found nothing to support a violation of its regulation 14 C.F.R. 91.303 that the City of Morris and Vogen initiated its own ordinance violation enforcement proceeding against Scholtes for violations based on the same regulation 14 C.F.R. 91.303 as incorporated by the Morris Ordinance and regulations.

69. Displeased with the FAA's response, the City of Morris and Vogen initiated the ordinance violation enforcement proceeding more than three months after the incident to make an example of Scholtes to other pilots and to prevent aerobatic pilots from flying near Morris out of sheer malice for aerobatic flying, Scholtes, and IAC Chapter 1.

**E. The City of Morris and other Defendants knew or should have known that they had no authority to prosecute Scholtes because the Morris Ordinance and Rules are preempted and in conflict with federal regulations.**

70. The City of Morris had no authority or factual basis for the violations it claims Scholtes committed in Counts I and II of the ordinance violation enforcement proceeding.

71. First, there is no surface area of Class B, Class C, Class D, or Class E airspace where Scholtes was performing aerobatics.

72. Second, there is not a Federal Airway within four nautical miles of where Scholtes was performing aerobatics.

73. There is also no legal basis for the City of Morris to regulate and to enforce aircraft movement in flight.

74. Neither the federal government, the Illinois Constitution, nor the Morris Regulation grant any power to a local municipality to enforce aircraft operations in flight.

75. Defendants also know or should know that the following Morris Regulations are in conflict with and preempted by federal regulations:

    a. Morris Regulation 200.2 grants power to the Airport Manager, Vogen, to remove or evict from the Airport premises any person who has violated any of the Morris Regulations, regardless of whether they are preempted by and in conflict with federal regulations. Pursuant to Morris Regulation 200.2, Vogen may remove or evict any person he believes has violated an FAA regulation, such as Scholtes, despite his having no authority to interpret FAA regulations.

    b. Morris Regulation 400.1 impermissibly attempts to regulate the "flying of aircraft" and incorporates all FAA Regulations, including those related to the operation of aircraft in flight.

    c. Morris Regulation 400.3 prohibits any person from operating an aircraft that is not "certified by the State of Illinois" even though the State of Illinois cannot certify aircraft, only the FAA can conduct the certification process.

    d. Morris Regulation 400.8 impairs the right of a pilot to repair his own aircraft.

    e. Morris Regulation 400.10 restricts test flights without the approval of the Airport Manager, even though the Airport Manager has no authority to control the flight of aircraft.

    f. Morris Regulation 400.13 regulates other airborne activities including skydiving and incorporates FAA guidance as grounds for a substantive violation.

    g. Morris Regulation 400.15 allows the Airport Manager to determine what in his opinion is an un-airworthy aircraft and fine the owner.

    h. Morris Regulation 500.3 restricts pilots' ability to refuel their own planes unless authorized by the City of Morris.

    i. Morris Regulation 800.1 grants the City of Morris and its agents the power to fine any individual $500 for each violation of a Morris Regulation including those based on its interpretation of FAA regulations. The City of Morris may also

revoke, cancel or suspend any existing privilege or franchise for a violation of any of the regulations.

76. These rules apply not only to the person whom the City of Morris determines violated a regulation but also anyone the City of Morris considers to have "aided and abetted" a violation.

77. The City of Morris' agents that are permitted to enforce the Morris Ordinance, which incorporates the Morris Regulations, include people who have no aeronautical experience. Pursuant to the Morris Ordinance, not only the airport manager, but also the fire chief, a building and zoning officer, and any member of the police department is empowered to interpret and to enforce regulations related to aircraft flight, including FAA regulations which are incorporated by reference.

78. Based on the Defendants' actions and the Morris Ordinance and Regulations, the City of Morris and its Airport Manager, Vogen, assert they have the authority to issue citations to any aircraft in flight or to anyone that aids and abets another violating an FAA regulation.

79. Defendants have used these unconstitutionally asserted powers to threaten IAC Chapter 1 members into not flying at or near the Morris Airport.

80. For seventeen months, the City of Morris refused to dismiss the lawsuit against Scholtes.

81. At a meeting on December 20, 2012 between IAC Chapter 1, the FAA, and the City of Morris and its agents, the FAA told the City of Morris it had no authority to prosecute Scholtes for in-flight activities. Defendants agreed to immediately dismiss the charges against Scholtes. The charges were not dropped until August 14, 2013.

82. Defendants agreed not to make any objections regarding a newly applied for Aerobatic Practice Area that is in a location even closer to the Morris Airport than the previous Aerobatic Practice Area. Despite this, they proceeded to make many objections to the new Aerobatic Practice Area, which delayed the process.

83. To the extent the defendants are claiming any kind of a settlement agreement, no settlement agreement has ever been made.

84. On June 7, 2013, Scholtes and IAC Chapter 1 brought a suit in federal court to enjoin the state court proceeding.

85. It was not until two days before a response was due by the City of Morris in federal court that Defendants finally dismissed the charges against Scholtes.

86. The City of Morris failed to provide notice to Scholtes of any dismissal. Despite not conferring with or providing notice to Scholtes or his counsel, the City of Morris presented the order for dismissal to the Court as "Agreed."

**F. Defendants' harassment and malicious activities involving the use of the Morris Regulations continues to harm Scholtes, IAC Chapter 1, and its members.**

87. The City of Morris, the Airport Manager Vogen, and Airport Consultant Nelson have displayed animosity to IAC Chapter 1 and its members for no reason other than out of sheer malice for IAC Chapter 1.

88. In the last ten years, the City of Morris has not charged any pilot with a citation for violating the Morris Ordinance and Regulations other than Scholtes.

89. On information and belief, the City of Morris has never charged any other pilot with a citation for violating the Morris Ordinance and Regulations other than Scholtes.

90. Vogen has reported two members of IAC Chapter 1 to the FAA for aircraft operations occurring while in flight.

91. On information and belief, Vogen has never reported anyone other than an IAC Chapter 1 member to the FAA for aircraft operations occurring while in flight.

92. Since IAC Chapter 1 received and renewed its Aerobatic Practice Area privileges, Defendants increased their harassment of IAC Chapter 1, its members, and Scholtes.

93. Without cause, Defendants have yelled at, distracted, and directly interfered with IAC Chapter 1 members on the ground who were actively coaching pilots practicing maneuvers in the Aerobatic Practice Area.

94. Defendants' actions jeopardize the safety of IAC Chapter 1 members in the air and on the ground as well as other aircraft flying in the vicinity.

95. Morris Airport agent, Sid Nelson, has driven his vehicle at an IAC Chapter 1 member and slammed on the brakes causing an IAC Chapter 1 member to lose visual contact with a pilot flying in the Aerobatic Practice Area.

96. Sid Nelson has also physically intimidated and threatened IAC Chapter 1 members.

97. Vogen has also intimidated IAC Chapter 1 members, members of other flight organizations such as the Experimental Aircraft Association, and other pilots saying that any pilot who supports IAC Chapter 1 or its Aerobatic Practice Area could lose their ability to fly at the Morris Airport or rent hangar space there.

98. Vogen has also informed IAC Chapter 1 members that he will throw them out of the Morris Airport and ground their planes if he feels, in his opinion, that they have done any unsafe maneuvers while flying.

99. Vogen also allows other pilots who do not support IAC Chapter 1 to fly at low altitudes near the runway without threats of repercussion and without filing reports or complaints against those pilots.

AM 23864532.2 10

100.    As a result of his relationship with the City of Morris as its airport consultant, Nelson acts with impunity and his actions against IAC Chapter 1 and its members go unreprimanded, despite IAC Chapter 1's efforts to stop such behavior.

101.    Similarly, Nelson has discriminated against, physically threatened, and attacked IAC Chapter 1 and its members because they are members of IAC Chapter 1 and conduct aerobatic maneuvers while flying in the local area.

102.    Scholtes and IAC Chapter 1 members now fear expensive fines, prosecution, and arrest if they continue to fly.

103.    IAC Chapter 1 members and other pilots would fly at IAC Chapter 1 sponsored events but are afraid to do so or to perform aerobatic flight maneuvers near Morris, even in the Aerobatic Practice Area designated for that very purpose, out of fear of harassment and being the subject of an ordinance violation proceeding initiated by Defendants for violating the Morris Ordinance and Regulations.

104.    Scholtes is a pilot and flight instructor. IAC Chapter 1 members depend on their ability to fly as part of their profession and for their livelihood. The Defendants' knew or should have known that the ordinance violation enforcement proceeding related to aircraft operation in flight would cause special damages and risks to pilots and would act as a strong deterrent in preventing them from flying near Morris. As a result of Defendants' actions, Scholtes may be required to disclose on job applications that he has been cited for an in-flight violation even though he was not convicted.

105.    Scholtes may be required to disclose this in-flight citation on certain insurance applications, which affects his premium payments. Scholtes may be required to disclose this in-flight citation on certain applications for aeronautical ratings, which negatively affects his ratings.

106.    As a result of Defendants' actions, IAC Chapter 1 has and fears it will lose members, membership dues, and participation at its events.

107.    As a result of Defendants' actions, Scholtes and IAC Chapter 1 have spent considerable time and money addressing these concerns and attempting to end these capricious actions by the Defendants.

## Count I
### Injunctive Relief:  The Morris Ordinance and Regulation Are Unconstitutional and Preempted by Federal Law (Federal Aviation Act and Airline Deregulation Act)

108.    Plaintiffs incorporate by reference Paragraphs 1-107.

109.    Federal law implicitly and expressly preempts the Morris Ordinance and Regulation.

110.    By enacting the Federal Aviation Act of 1958, Congress implicitly expressed its intent that federal law alone should govern federal airways.

AM 23864532.2  11

111.    As further evidence of its intent, Congress granted broad administrative powers to the FAA, and the FAA exercises those administrative powers extensively.

112.    The FAA creates and enforces regulations related to air travel that are so pervasive, including 14 C.F.R. 91.303 for aerobatic flight, that there is no room for state or local municipalities to supplement the FAA's enforcement power.

113.    The Morris Ordinance and Regulations interfere with this federal scheme and impermissibly attempt to regulate flight and routes in the national airspace.

114.    By enacting the Airline Deregulation Act of 1978, 49 U.S.C. § 41713, Congress expressly preempted the ability of a state or local authority to "enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier."

115.    The Illinois Enabling Act related to aircraft movement also does not provide Defendants with any authority to regulate aircraft operations in flight.

116.    Defendants' enforcement and continued threatened enforcement of the Morris Ordinance and Regulations against Scholtes and IAC Chapter 1 have deprived Plaintiffs of their right to due process and equal protection protected by the Fourteenth Amendment, placed an undue burden on interstate commerce, and violated the Supremacy Clause of the United States Constitution.

117.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered irreparable harm without an adequate remedy at law and will continue to suffer harm.

118.    Scholtes and IAC Chapter 1 seek an injunction to end Defendants' unlawful behavior. An injunction is necessary and appropriate to end the current and threatened enforcement of the Morris Ordinance and Regulations.

119.    If not enjoined by this court, Defendants and their agent, representatives, and employees will continue to implement the practices of the challenged Ordinance and Regulations that deny Plaintiffs their constitutional rights without due process and violate their right to equal protection under the law. Plaintiffs have suffered and will continue to suffer irreparable injury for which they have no adequate remedy at law.

## Count II
### Violation of 42 U.S.C. § 1983

120.    Plaintiffs incorporate by reference Paragraphs 1-119.

121.    At all times relevant and material, Defendants were acting "under color of law" within the meaning of 42 U.S.C. § 1983.

122.    The City of Morris has given Nelson status at the Airport and cloaked him with authority to act on its behalf.

123.    As the Airport Manager, Vogen is the final policymaker regarding the Morris Regulations and enforcing those regulations.

124.    Defendants' harassment, threats, enforcement and threatened enforcement of the Morris Ordinance and Regulations against Scholtes, IAC Chapter 1, and IAC Chapter 1's members have placed an undue burden on interstate commerce by creating air traffic congestion on a federal airway used by interstate air carriers and by reducing or precluding the ability of Scholtes, IAC Chapter 1 members, and other pilots to fly.

125.    Defendants' harassment, threats, enforcement and threatened enforcement of the Morris Ordinance and Regulations against Scholtes, IAC Chapter 1, and IAC Chapter 1's members have deprived Plaintiffs of their right to due process under the Fourteenth Amendment because the Ordinance and Regulations unduly restricted the Plaintiffs' liberty and freedom of movement, are arbitrary and have no basis in the law, are unconstitutionally vague, and do not promote the safety of the residents of Morris or pilots flying at or near the Morris Airport.

126.    Defendants' harassment, threats, enforcement and threatened enforcement of the Morris Ordinance and Regulations against Scholtes, IAC Chapter 1, and IAC Chapter 1's members have deprived Plaintiffs of their right to equal protection under the Fourteenth Amendment.

127.    Defendants have selectively enforced the Ordinance and Regulations against Scholtes and threatened enforcement against other IAC Chapter 1 members but not against other similarly situated pilots.

128.    Defendants' discrimination against Scholtes and other IAC Chapter 1 pilots was intentional and animated out of sheer malice for Scholtes and IAC Chapter 1.

129.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered irreparable harm and damages, and will continue to suffer and will continue to suffer harm.

130. Defendants actions violate the Plaintiffs' rights under 42 U.S.C. § 1983.

## Count III
## Malicious Prosecution

131.    Plaintiffs incorporate by reference Paragraphs 1-130.

132.    On March 28, 2013, the City of Morris initiated an ordinance violation enforcement proceeding verified by Vogen against Scholtes.

133.    The City of Morris and Vogen knew or should have known they had no basis or probable cause to bring the ordinance violation enforcement proceeding based on its own interpretation of an FAA regulation after the FAA had already closed its investigation of the same incident.

134.    The City of Morris and Vogen knew or should have known after the FAA told them they had no authority to enforce FAA regulations and they agreed to immediately dismiss the charges that they had no basis or probable cause to continue the ordinance violation enforcement proceeding against Scholtes.

135.    The City of Morris and Vogen prosecuted and continued to prosecute the claim out of sheer malice against IAC Chapter 1.

136.    The termination of the proceeding was in favor of Scholtes.

137.    After Scholtes brought suit in federal court and two days before its response to the Plaintiffs' original complaint was due in federal court, the City of Morris voluntarily dismissed the action against Scholtes with prejudice.

138.    Despite not conferring with or providing notice to Scholtes or his counsel, the City of Morris presented the order for dismissal to the judge as an "Agreed Order," when it was not.

139.    Scholtes suffered damages and will continue to suffer damages beyond the mere expense of having to litigate an ordinance violation enforcement proceeding.

## Prayer for Relief

WHEREFORE, Plaintiffs request judgment be entered in their favor and against Defendants as follows:

(1) A declaratory judgment declaring that the Morris Ordinance and Regulations related to aircraft operations in flight are preempted by federal law and are therefore unconstitutional.

(2) An order permanently enjoining Defendants, their officers, agents, servants, employees, and all other persons in active concert or participation with them, from enforcing the Morris Ordinance and the preempted Morris Regulations, including sections 200.2, 400.1, 400.3, 400.8, 400.10, 400.13, 400.15, 500.3, and 800.1.

(3) Any other declaratory relief consistent with the injunction;

(4) Damages;

(5) Punitive Damages for the City of Morris' and Vogen's malicious prosecution;

(6) Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(7) Any other relief the Court deems just and appropriate.

**Plaintiffs demand a jury trial.**

Respectfully submitted,


Dated:    September 12, 2013              By:___/s/ Tom Matyas___
                                              Attorney for Plaintiffs

Thomas I. Matyas


AM 23864532.2  14

Cal R. Burnton
Colin Patrick O'Donovan
Edwards Wildman Palmer LLP
225 West Wacker Dr., Ste. 2800
Chicago, Illinois 60606
312-201-2000