IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INTERNATIONAL AEROBATIC CLUB CHAPTER 1 and NICHOLAS SCHOLTES, | |
| Plaintiffs, | |
| v. | Case No. 13-CV-4272 |
| CITY OF MORRIS, ILLINOIS, JEFFREY VOGEN, and SID NELSON, | Judge John J. Tharp Jr. |
| Defendants. | **Jury Demanded** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS**

The plaintiffs, International Aerobatic Club Chapter 1 ("IAC Chapter 1") and Nicholas Scholtes ("Scholtes" and collectively the "Plaintiffs"), by the undersigned attorneys, respond to the defendants' motion to dismiss and request the Court deny the motion in its entirety.

**I.    Introduction**

This action seeks to end the arbitrary harassment that the City of Morris and its agents have inflicted and continue to inflict on the plaintiffs through the defendants' actual and threatened enforcement of the unconstitutional and preempted Morris Ordinance and Regulations.  This is no one-event situation; rather, the defendants continue to harass, intimidate, and threaten enforcement of the Morris Ordinance and Regulations against the plaintiffs and other pilots associated with IAC Chapter 1 for aerobatic flying.  In doing so, the defendants deprive the plaintiffs of their constitutional rights and violate 42 U.S.C. § 1983 for which the plaintiffs seek damages.

The plaintiffs seek to protect and vindicate their licensed right to fly without being subjected to unconstitutional and preempted barriers established and enforced by a local municipality.  As licensed pilots, the members of IAC Chapter 1 while in the air are subject to

1

and governed only by the dictates, rules, and regulations of the Federal Aviation Administration ("FAA"). Illinois law gives Morris no authority to regulate aerobatic flights. The City of Morris and its agents have no authority to promulgate or enforce any law or regulation governing aircraft movement once off the ground even a little and while in flight because such actions are preempted by federal law. The Supreme Court, Seventh Circuit, and Northern District have made clear that airborne (wheels off the ground) aircraft cannot be regulated except by the administration agency Congress granted such authority to—the FAA. The plaintiffs seek a declaratory judgment that the challenged ordinance and regulations are invalid and a permanent injunction prohibiting the defendants' enforcement or implementation of any similar ordinance as well as monetary damages.

**II.    Background**

In their motion the defendants ignore the allegations in the First Amended Complaint ("FAC") and recast them to misconstrue what this dispute is about. At the time of the original complaint, the City had charges pending against plaintiff Nick Scholtes, which were dropped only after a motion to dismiss was fully briefed in state court and this case was filed. But the Scholtes prosecution is the tip of the iceberg of this dispute, which concerns the wrongful belief by Morris that it has authority to regulate aerobatic flight in national airspace. Because of this dispute, the defendants have threatened, brought charges, and continue to threaten enforcement, all without authority.

The defendants also point to a new Aerobatic Practice Area obtained from the FAA over the defendants' objections as somehow eliminating this dispute. Far from it. First, the change in the location of the Aerobatic Practice Area has no effect on the plaintiffs' claims, especially given that the new Aerobatic Practice Area was again obtained over the City of Morris' objection and the new location is even closer to Morris Airport than the previous one (despite the

defendants' incorrect assertion to the contrary). In fact, as alleged, the entire issue of the Aerobatic Practice Area is a red herring, as this suit is about Morris' ability to regulate flight at all. In any event, the actions giving rise to the complaint did not occur while the plaintiff Nicholas Scholtes was flying in the Aerobatic Practice Area or even over land owned by the City of Morris. (Compl. ¶ 71; First Am. Compl. ¶ 62).[1] The defendants' recasting the plaintiffs' complaint as related to their "honoring" the previous Aerobatic Practice Area (whatever that means) and "exercising power to regulate a municipal airport and the airspace **above** it" distort the issues and are contrary to the allegations in the complaint.

The First Amended Complaint asserts that the City of Morris and its agents have a long history of arbitrarily harassing IAC Chapter 1 and its members. (¶¶ 46, 55-57, 68, 78-80, 90, 92-93, 95-98, 101, 116). The defendants' mistreatment derives, in part, because IAC Chapter 1's former pilot Sid Nelson had a falling out with the organization years ago and has since used his influence as the prior Morris Airport Manager to have the City of Morris and its agents arbitrarily abuse IAC Chapter 1 and its member pilots who fly near Morris. (¶ 54).

The defendants achieved what they wanted through harassing IAC Chapter 1 members and bringing the enforcement proceeding against Scholtes: aerobatic pilots are afraid to fly near the Morris Airport and continue to refrain from doing so today. (¶ 103). As licensed pilots, operating lawfully under FAA guidelines and regulations, and in cooperation with Federal authorities, plaintiffs should not be answerable to the City of Morris or other municipalities.

A local municipality has no authority to issue a citation against a pilot while flying pursuant to and in compliance with federal law. And a local municipality has no authority to threaten aerobatic pilots such that those pilots now refrain from flying, including in the area specifically designated by the federal government for aerobatic flight.

---

[1] All other references in this brief are to the plaintiffs' First Amended Complaint.

3

### III. Standard for dismissal

A court must accept as true all well pleaded facts and draw all reasonable inferences in favor of the non-moving party. *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The federal rules require only notice pleading with the plaintiff required only to allege sufficient facts to inform the defendant of the nature of the claims. *Id.* "A 1983 complaint need not meet a higher pleading standard to survive a motion to dismiss." *O'Donnell v. City of Country Club Hills*, No. 12 C 3523, 2013 WL 5289522 at *5 (N.D. Ill. Sept. 18, 2013).

### IV. There is an active case and controversy.

#### A. The plaintiffs having standing because IAC Chapter 1 has and fears losing members and money, and IAC Chapter 1 members fear and refrain from flying but for the defendants' threats as exemplified by Scholtes' prosecution.

Article III standing requires that a plaintiff show (1) it has suffered a concrete, particularized injury that is actual or imminent; (2) the injury is fairly traceable to the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envir. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (holding association had standing because one of its plaintiffs who had previously fished a now polluted river and intended to do so again but for the defendant's polluting); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013); *see also Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1067 (7th Cir. 1976) ("Because plaintiffs have shown a specific pattern of conduct, akin to an explicit policy, they have demonstrated a reasonable likelihood of future harm."); *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (reversing grant of summary judgment where local official instituted a single baseless legal proceeding against the plaintiff). An association has standing to bring suit if its members would otherwise have standing, their claims do not require their individual participation, and the interests at stake are germane to the organization's purpose. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

4

The defendants have repeatedly harassed and physically threatened many of IAC Chapter 1's members. For example, the defendants have done the following:

- made false and misleading statements to the FAA about IAC Chapter 1 (¶ 56);
- endangered the safety of IAC Chapter 1 pilots by yelling at, distracting, and directly interfering with their visual-aid spotters on the ground (¶ 93);
- driven a car at IAC Chapter 1 members (¶ 95);
- physically intimidated and threatened IAC Chapter 1 members (¶ 96-97);
- threatened to take away flight privileges for supporting IAC Chapter 1 (¶ 98); and
- continue to threaten enforcement of the Morris Ordinance and Regulations against IAC Chapter 1 members (¶ 116).

As a result of the above conduct, IAC Chapter 1 has and fears it will lose members, money, and participation at its competitions. (¶ 106).

The defendants also initiated a baseless enforcement action against Scholtes for performing aerobatic maneuvers while in flight alleging a violation of the Morris Ordinance and Regulations. (¶ 68). The enforcement action was brought and prolonged as yet another act of coercion to all IAC Chapter 1 members to prevent them from flying near Morris. The plaintiffs are still subject to enforcement and fines. Moreover, the Morris Ordinance and Regulations have been enforced only against aerobatic pilots, specifically IAC Chapter 1 pilots, therefore prudential limits on standing do not apply. Given the pattern of threats, members of IAC Chapter 1 fear a similar prosecution and refrain from flying near Morris, but would do so if the challenged ordinance and regulations were struck down.

The defendants' claim that the change in the location of the Aerobatic Practice Area affects the controversy is misplaced. Scholtes was charged with violations that occurred miles away from the airport beyond the jurisdiction of the City of Morris. (¶ 62). Like the previous Aerobatic Practice Area, the current one was obtained from the FAA over the defendants' objection, is even closer to the Morris Airport. (¶ 82). Given the new location there is an even more credible threat of enforcement and a ruling from this Court will resolve the controversy.

      **B.     The case is not moot because the challenged ordinance and regulations are still enforceable and the defendants assert the authority to enforce them.**

A defendant's voluntary cessation of challenged conduct will not render a case moot where the challenged ordinance has not been repealed, the defendant remains "free to return to his old ways," and there is a public interest in having the legality of the dispute settled. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."); *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 999 (7th Cir. 2002) (holding temporary moratorium ceasing enforcement of challenged ordinance does not moot the action). Cessation of illegal conduct by public officials is not given any deference when it is disingenuous or an attempt to evade review. *See Northeastern Florida v. City of Jacksonville, Fl.*, 508 U.S. 656, 662 (1993). The defendant's burden of proving mootness "is a heavy one." *W.T. Grant Co.*, 345 U.S. at 633.

The defendants have not repealed, revised, or even repudiated the challenged ordinance and regulations. To the contrary, the defendants fully briefed a response to a motion to dismiss filed by Scholtes in the state court proceeding and then on the eve of the judge's ruling on the validity of the defendants' actions dismissed the case. (¶¶ 84-86). The nature and timing of that dismissal show that the defendants are attempting to evade judicial review of their actions and strengthen the plaintiffs' already credible concerns of enforcement. [2]

The defendants' motion to dismiss provides even more evidence of a live controversy as they continue to maintain that their actions are authorized under Illinois law and not preempted.

---

[2] The defendants also attach an affidavit of Scott Belt, many of whose statements are contrary to the express allegations in the First Amended Complaint. The plaintiffs dispute the contents of Mr. Belt's affidavit and the Court should not consider it on a motion to dismiss. (¶¶ 80-86, 132-39).

6

The authority of a local municipality to initiate quasi-criminal proceedings against law abiding citizens is an important matter of public interest.

**V.     Federal law preempts the City of Morris' Ordinance and Regulation on airborne activity.**

   **A.     Congress created a comprehensive system of laws and regulations related to aircraft in flight that leaves no room for state or other interference.**

The United States government has exclusive control of the national airspace and Congress granted the FAA sole authority to regulate that airspace. 42 U.S.C § 40103(a)(1) and (b)(2); *Kohr v. Allegheny Airlines, Inc.*, 504 F.2d 400, 404 (7th Cir. 1974) ("Congress has recognized the national responsibility for regulating air commerce. Federal control is intensive and exclusive."). Congress expressed its intent clearly when enacting the Federal Aviation Act of 1958, stating that the FAA had "plenary authority to … make and enforce air traffic rules for both civil and military aircraft." Federal Aviation Act of 1958, Senate Report No. 85-1811, Conf. Rep. 85-2556, 1958 WL 3975.

The United States Supreme Court has already rejected the defendants' "police powers" argument when it struck down as preempted a nighttime take-off and landing regulation. *Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624 (1973); *see also Command Helicopters v. Chicago*, 691 F. Supp. 1148, (N.D. Ill. 1988) ("The Court in *City of Burbank* rejected Burbank's argument that the Act did not pre-empt its inherent police powers in the area of health and safety regulations."). The Supreme Court reasoned that the pervasive nature of the scheme of federal regulation mandated preemption because if other cities enacted similar laws there would be fractionalized control of the airspace leading to a decrease in safety and an increase in air traffic congestion. *Id.* at 639. Significantly, the Solicitor General readily conceded that the ordinance was preempted as it relates to "airspace management" and even Justice Rehnquist in his dissent drew a distinction between regulations that relate to zoning issues on the ground, such as airport

7

expansion, and a regulation that "involves controlling the flight of aircraft." *Id.* at 651.

The Seventh Circuit has also clearly indicated that local municipalities are preempted from regulating the activity of airplanes in flight. *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 697 (7th Cir. 2005). The court held that a zoning regulation related to the siting of an airfield is an issue of local control "so long as it does not interfere with existing traffic patterns." *Id.* The court emphasized that the ordinance was "a land use, or zoning ordinance, *not a flight pattern regulation*." *Id.* (emphasis added). In summarizing the "kinds of regulations which are preempted" the Seventh Circuit cited favorably the 11th Circuit's opinion in *Pirolo* which held that local ordinances "proscribing air traffic patterns were preempted." *Id.* The Seventh Circuit echoed the Supreme Court's concern of "fractionalized control" in *Burbank* , noting that "[i]t would be unmanageable—say nothing of terrifying—to have local control of flight routes." *Id.*

A Northern District Court has held that a local municipal ordinance regulating in-flight operations of aircraft was implicitly preempted. *Command Helicopters,* 691 F. Supp. at 1151. The Court rejected the local municipality's argument that the ordinance was constitutional and not preempted because it "complemented" the existing federal legislation. *Id.*

The FAA has also consistently maintained that Congress vested it with sole authority to regulate aircraft in flight and that any action by a state or local authority is preempted and told the defendants that in this case. (¶ 81); see also FAA Legal Opinion, attached as Exhibit 1 ("The regulation of aircraft in flight is preempted by Federal law, and limitations on aircraft flight may only be imposed by the FAA.").

The FAA has promulgated extensive rules and regulations related to airspace management and aircraft actions while airborne, including § 91.303 governing aerobatic flight, and the FAA is the sole authority to enforce its regulations. The facts of this case are egregious

8

because the Morris Airport manager, Vogen, knew the FAA was the proper authority to regulate in flight aircraft conduct and reported the Scholtes incident not once but twice to the FAA.  It was only after the FAA closed its investigation with no finding of liability against Scholtes that the defendants initiated a local proceeding to prosecute Scholtes for the exact same conduct but allegedly based on a local ordinance that incorporates the FAA rules and regulations.  This Court should follow the clear instruction from the Supreme Court and the Seventh Circuit and deny this motion because the Morris Ordinance and Regulations are preempted.

        **B.**     **The ADA expressly preempts the defendants' Ordinance and Regulation.**

The Airline Deregulation Act of 1978 ("ADA") contains an express preemption clause that mandates a state or local authorities "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C.§ 41713(b).  The ordinary meaning of the phrase "relating to" is broad and expresses a broad preemptive purpose. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *Travel All Over the World Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996) (noting that the ordinary meaning of  "relating to" is broad and means "to have bearing or concern; pertain to…or connection with").  Given this broad preemptive language, even claims not addressing the airline industry are preempted. *Meyer v. United Airlines, Inc.*, 624 F. Supp. 2d 923, 928 (N.D. Ill. 2008) (denying motion to dismiss).

The plaintiffs' claims relate to the routes of air carriers.  Before opening the Aerobatic Practice Area, IAC Chapter 1 must notify the local airport, Flight Service Station, Chicago TRACON, and the Chicago Center of the location, altitude, date and time of use so that those stations can inform *all* pilots, including those flying for major air carriers, to divert their course away from the Aerobatic Practice Area.  See First Am. Compl. Ex. 3 "Certificate of Waiver." Moreover, a representative from a major airline, Southwest, specifically contacted IAC Chapter

9

1 in an attempt to reduce air traffic congestion on its route to Midway Airport and to prevent the possibility of a mid-collision. (¶ 44). Because the ADA's preemption provision is broad and the plaintiffs' claims relate to routes, the Court should deny the defendants' claim.[3]

### C. The Illinois Municipal Code does not authorize an airport to regulate in-flight activities and the defendants' interpretation conflicts with federal law.

The Illinois Municipal Code section cited by the defendants only authorizes a local municipality to regulate activities on the ground as evidenced by the express language throughout the statute limiting local control to airfields and facilities.[4] The defendants fail to cite case law interpreting this statute, presumably because every decision deals with property related issues. *See Amman v. Wabash R. Co.*, 391 Ill. 200 (1945) (tax levy for airport property); *City of Crystal Lake v. LaSalle Nat. Bank*, 121 Ill. App. 3d 346, 348 (2d Dist. 1984) (condemnation). They fail to address 620 ILCS § 15/2, which specifically limits the airport's authority to control movement of aircraft to "upon the ground or surface of such public airport."

The manner in which the Morris Ordinances and Regulations impermissibly impede and conflict with federal law are detailed in paragraphs 70-77 of the FAC. Moreover, under the Morris Ordinances, violations can be determined by individuals with no aeronautical experience whatsoever, including the Fire Chief, building and zoning officers, members of the police department, as well as the airport manager. The Ordnances are written to apply not just to FAA licensed pilots, but to anyone who the City of Morris or its agents deems to have aided and abetted what they perceive to be a violation. (¶ 77). The Morris Ordinance and Regulations clearly can result in conflicting and inconsistent interpretations and determinations of federal

---

[3] There is no reason to delay ruling on this issue based on the defendants' citation to *Northwest, Inc. v. Ginsburg*, as that case addresses airline pricing, not routes, and is therefore unlikely to impact this Court's ruling.
[4] *See, e.g.*, 5/11-103-4 this section limits the statute's purpose to land related issues, stating "All *land and appurtenances*…are acquired…for a public purpose;" *see also* 5/11-103-9 discussing authority to "vacate roads, highways, streets." The defendants' claim that they have the right to regulate in-flight activity is untenable.

aviation law; laws which are within the exclusive jurisdiction of the FAA as authorized by Congress. The potential improper use of these Ordnances and Regulations to harass is painfully apparent as witnessed in the facts alleged in this case.

Local laws such as the Morris Ordinances and Regulations that impede the objective of a federal policy are in conflict with federal law and impliedly preempted. *See Gade v. Nat. Solid Wastes Mgmt. Assoc.*, 505 U.S. 88, 98-99 (1992) (holding state law not approved by the federal regulating agency was preempted). Here, the FAA closed its investigation without a finding of liability to Scholtes. (¶ 68). In spite of (and in fact because of) the FAA's determination, the defendants prosecuted Scholtes for the same activity, based on the same FAA regulations incorporated into the Morris Ordinance and Regulations. An uncoordinated, dual enforcement system would impede the FAA's established enforcement structure, create conflict, and preempts the challenged ordinance and regulations.

**VI.    The defendants' Ordinance and Regulation as well as their arbitrary and malicious actions deprived the plaintiffs of their right to equal protection and due process under the Fourteenth Amendment.**

**A. Equal Protection**

The equal protection clause prohibits state action that intentionally and irrationally discriminates among similarly situated people. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (affirming Seventh Circuit's reversal of trial court's dismissal of class-of-one claim); *see also Oxford Bank & Trust & Fifth Ave. Prop. Mgmt v. Village of La Grange*, 879 F. Supp. 2d 954, 967 (N.D. Ill. 2012). "The equal protection clause [] does not require proof of a deprivation of life, liberty, or property, [only] that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Esmail v. Macrane*, 53 F.3d 176, (7th Cir. 1995) (reversing dismissal where local mayor waged vindictive campaign against 1983 plaintiff); *Del Marcelle v. Brown*

11

*Cty Corp.*, 680 F.3d 887, 889 (7th Cir. 2012) (en banc). "A clear showing of animus, absent a robust comparison to a similarly situated individual, [however] may sustain a class-of-one equal protection." *Swanson*, 719 F.3d at 783.

The defendants have consistently harassed and physically threatened IAC Chapter 1 members but not other pilots (¶ 99) and, like the local mayor in *Swanson*, they instituted a meritless citation proceeding against Scholtes to instill fear among IAC Chapter 1 members. (¶125). The plaintiffs here alleged that the defendants acted arbitrarily and out of malice. (¶¶ 125, 128). There is no need to plead or prove that the plaintiffs are members of a protected class as the defendants' actions fail even the rational basis test. The defendants certainly knew they had no legitimate right to physically threaten citizens and the reports to the FAA show that the defendants also knew they had no authority to prosecute Scholtes based on the FAA regulations incorporated into the Morris Ordinance and Regulations. The fact that Scholtes was eventually vindicated is irrelevant as the plaintiff in *Swanson* also ultimately prevailed in a baseless prosecution. The Court therefore should deny the motion to dismiss as the defendants' actions are arbitrary, preempted, and prohibited under the Fourteenth Amendment.

### B. Substantive Due Process

The due process clause "was intended to prevent government from abusing [its] power, or employing it as an instrument of oppression." *DeShaney v. Winnebago Cnty Dep't of Social Servs.*, 489 U.S. 189, 196 (1989). The elements of a substantive due process claim are: (1) the existence of a constitutional right and (2) state action arbitrarily interfering with that right. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992); *see also Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998).

The plaintiffs also have a liberty interest in their freedom of movement and right to

12

intrastate travel free from arbitrary harassment which prevents them from moving through their locality and associating with others interested in practicing and performing in aerobatic competitions. *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999) ("We have expressly identified this 'right to remove from one place to another according to inclination' as 'an attribute of personal liberty.'"). The Supreme Court and the Seventh Circuit have not addressed this issue,[5] but many other circuits have recognized this right, reasoning that "it is deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *See, e.g.*, *Johnson v. City of Cincinnati*, 310 F.3d 484, 495 (6th Cir. 2002) (holding ordinance violated substantive due process of plaintiff's right to freedom of movement); *see also Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003); *Lutz v. City of York*, 899 F.2d 255, 261 (3d Cir. 1990). The defendants violated the plaintiffs' rights by using their position of authority to harass the plaintiffs and institute an enforcement proceeding to preclude the plaintiffs' flying near Morris.

**VII. The defendants' unlawful Ordinance, Regulations and actions burden interstate commerce.**

Interstate travel and transportation by airplane is pervasive but even local activities displace the movement of goods and people and affect interstate commerce. *Wickard v. Filburn*, 317 U.S. 111 (1942). Under the Commerce Clause, a law that is not discriminatory against out-of-staters violates the Commerce Clause when the law's burdens on commerce are greater than its benefit. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *Baude v. Heath*, 538 F.3d 608, 612 (7th Cir. 2008); *see also Bibb v. Navajo Freight Lines*, 359 U.S. 520, 529-30 (1959). Other courts in this district have recognized the significant detrimental effect there would be on commerce if each local municipality were able to set its own rules regarding in-flight activity.

---

[5] *See Memorial Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 255-56 (1974); *Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 770 (2004) ("[O]ur inquiry can be forwarded most easily by first describing what rights are *not* at issue….[T]he right to travel intrastate, i.e., the right to 'travel locally through public spaces and roadways.'").

*See Command Helicopters*, 691 F. Supp. at 1151 ("[If] each locality in the nation was allowed to set its own different requirements for aircraft operating within its limits, there would be a substantial negative effect on commerce.")

## VIII. No defendant is entitled to qualified immunity because their actions were unlawful, arbitrary, and do not involve discretion.

Individual defendants are not entitled to qualified immunity unless their actions are a legitimate exercise of discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) ("By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct."); *see also Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2013). Qualified immunity is usually an issue to be decided on summary judgment after the facts have been established. *See id*. Here, it is alleged the defendants acted arbitrarily and out of spite in physically threatening and harassing IAC Chapter 1 members and it is well known that such actions are not legally permissible. (¶¶ 125-28). The case law discussed above in Section V also shows that the law is clear and well established that local authorities are preempted from regulating and enforcing aircraft in flight. Significantly for immunity purposes, the defendants knew that they were prohibited from prosecuting Scholtes as evidenced by the multiple reports issued to the FAA and subsequent timing of their own prosecution. The defendants have no discretion to act in a preempted area and never exercised such "discretion" previously.

## IX. Malicious Prosecution

To establish a malicious prosecution claim under Illinois law, the plaintiff must allege facts showing: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liataud*, 169 Ill. 2d 504, 512 (1996). An abandonment of

proceedings that infers the plaintiff's innocence or that a lack of reasonable grounds existed to bring suit is sufficient to be considered a favorable termination. *Id.* at 513.

The plaintiffs sufficiently alleged a cause of action for malicious prosecution under Illinois law. The plaintiffs alleged that the defendants prosecuted Scholtes with an improper motive. (¶¶ 6-7). The defendants knew they had no basis or authority to prosecute the claim. (¶ 81). In a misguided attempt to preclude suit for malicious prosecution, the defendants' attorney in the state court proceeding (and less than credible affiant in this proceeding) purposefully did not provide notice to Scholtes or his counsel and then entered an "Agreed" order of dismissal, even though there was no settlement agreement. (¶ 86). As a result, Scholtes may be required to disclose this in-flight citation on certain insurance applications, which affects his premium payments, and disclose on certain applications for aeronautical ratings, which negatively affects his ratings. The Court should exercise supplemental jurisdiction and deny the defendants' motion as to this count.

## X. Conclusion

WHEREFORE, the plaintiffs, IAC Chapter 1 and Scholtes, respectfully request that this Court deny the defendants' motion to dismiss in its entirety, order the defendants to answer the complaint, and grant any other relief it deems just.

Dated: October 24, 2013

Respectfully submitted,

By: */s/ Cal R. Burnton*
One of the Attorneys for the Plaintiffs

Thomas I. Matyas
Cal R. Burnton
Colin Patrick O'Donovan
Edwards Wildman Palmer LLP
225 West Wacker Dr., Ste. 2800
Chicago, Illinois 60606
312-201-2000

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 24th day of October, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send an electronic notice to all counsel of record in this matter.

                                              */s/ Cal R. Burnton*
                                              One of the Attorneys for the Plaintiffs