4659/MS042

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INTERNATIONAL AEROBATICS CLUB CHAPTER 1 and NICHOLAS SCHOLTES ) ) ) ) Plaintiff, ) ) v. ) ) CITY OF MORRIS, ILLINOIS, ) JEFFREY VOGEN and SID NELSON ) ) Defendants. ) | Case No. 13 cv 4272<br><br>Honorable John J. Tharp, Jr.<br><br>**JURY DEMANDED** |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

NOW COME the Defendants, CITY OF MORRIS, JEFFREY VOGEN, and SID NELSON, by and through their attorney, Mark J. Mickiewicz, of PURCELL & WARDROPE, CHTD., and, as their Reply in Support of their Motion to Dismiss the Plaintiffs' Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), hereby state as follows:

### RESPONSE TO PLAINTIFFS' INTRODUCTION AND BACKGROUND

In their Response, the Plaintiffs, at least through their attorneys, for reasons that continue to elude and bewilder the Defendants, deny the existence of the lengthy and detailed discussions amongst the parties that led to the relocation of the Aerobatic Practice Area ("APA") *pursuant to an agreement between Defendant, the City of Morris ("Morris"), and Plaintiff, International Aerobatics Club Chapter 1 ("IAC"), which was memorialized in writing.* The affidavit of Scott Belt, attached to the Defendants' Motion

as Exhibit 2, expressly establishes this agreement and contains, as exhibits thereto, e-mail correspondence from Morris to IAC and from IAC to Morris describing and confirming the agreement in great detail.[1]

In December of 2012 and again on January 31, 2013, meetings among the IAC, Morris, and the FAA addressing Morris' safety concerns with the location of the then-existing APA took place. On February 1, 2013, in the regular course of business, Scott Belt, Corporate Counsel for Morris, sent a detailed electronic correspondence to Bruce Ballew, the Midwest Director of the IAC, and others (including Defendants Sid Nelson and Jeff Vogen; representatives of the FAA; and other representatives of the IAC, including Cindy Limbach) which memorializes the agreements reached at the December meeting and is attached to the affidavit as Exhibit A. Per that correspondence, Morris "unanimously approved," among other things, the location of the new proposed APA (the one that is in existence today). The February 1, 2013 email also establishes the following:

- As part of the agreement, Morris agreed to "dismiss the Nick Scholtes charges immediately upon receipt of" notification from the FAA that the new, agreed to APA had been established and the previous APA had been revoked

- Morris only objected to the original APA because of "safety concerns" and its belief that "safety is paramount"

---

[1] In their Response, the Plaintiffs state, in a footnote, with no citation to any authority, that this Court "should not consider" the affidavit of Scott Belt (Response at 6). As the Plaintiffs address this "argument" in a footnote, which no doubt indicates their opinion of the strength of the "argument," the Defendants likewise respond in a footnote of their own. A district court is permitted to consider affidavits in ruling on a defendant's 12(b)(1) motion as to subject matter jurisdiction. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) ("The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists").

- As part of the agreement between the IAC and Morris, Morris requested a five day advance notice of any "practice day" scheduled by the IAC and a one hour notification of the time at which the practice session would begin per IAC's own guidelines which compel its "practice manager" to "coordinate the practice day with airport management personnel"

- Consistent with IAC's guidelines compelling "an organized and safe structure" to IAC activities, Morris requested that the IAC use two spotters on practice days – one to monitor air traffic and one to critique the performance and that the spotters be located away from bystanders to avoid distractions and safety concerns that might flow therefrom

- Consistent with IAC guidelines requiring that its practice managers confirm "radio procedures and frequencies," Morris requested that it be allowed to participate in those communications, again, in the interests of safety

- Morris requested that communications between the spotters and the aircrafts be "fully operational and checked before flight"

(Exhibit A to Exhibit 2). Belt concluded the correspondence by thanking Ballew for his "kind and professional cooperation" and requesting that he confirm IAC's agreement to the terms as described in his email. *Id.*

On February 12, 2013, Ballew responded to Belt's email with an email of his own which read "we are sticking by what we agreed to at the meeting with the City of Morris, the FAA Great Lakes Region and the IAC." (Exhibit B to Exhibit 2). Belt received this correspondence in the regular course of business. (Exhibit 2 at ¶6). Per the terms of the agreement as spelled out in the February 1, 2013 email, the catalyst to all of the conditions described therein would be the FAA's approval of the new APA. As the Plaintiffs themselves have established, the FAA restricts the existence of APAs and, accordingly, an official waiver of FAA regulations must be obtained before an APA can be established. At that point, once the agreement confirmed by the IAC's Midwest Director on February 12, 2013 was reached, the matter was out of the City's hands and in the hands of the FAA. While all parties were waiting for the FAA to approve the waiver

3

for the new APA, the Plaintiffs filed the instant lawsuit on June 7, 2013, much to the surprise of the Defendants. Thereafter, on August 8, 2013, Cindy Limbach, a member of IAC, informed Belt that the FAA had finally approved the new APA, with an email wishing Belt "warmest regards." (Exhibit C to Exhibit 2). The following week, on August 14, 2013, a representative of the FAA confirmed to Belt, via email, that the previous (disputed APA) was revoked by the FAA and that the new APA was, in fact, established. (Exhibit D to Exhibit 2). *On that same day*, Belt appeared in the Circuit Court of Grundy County and voluntarily dismissed the charges against Scholtes *as he had previously agreed to do upon receipt of the above-referenced notifications from the FAA.*

Despite the rhetoric and bluster employed by the Plaintiffs' attorneys in their Response, the Defendants urge this court to consider the facts as described in Belt's affidavit and the exhibits thereto. The Plaintiffs' astonishing statement in their Response that the new APA was established "over Defendants' objections" is directly refuted by the IAC's own email which has been made part of the Defendants' Motion and verified by Scott Belt in his affidavit. (See Response at 2). Equally shocking and confusing are the Plaintiffs' attorneys' claims that the IAC will continue to "harass" or "threaten" IAC pilots. Plaintiffs concede that FAA regulations prohibit them from flying anywhere other than the area established by the current FAA waiver which had not even been forwarded to Morris until August of this year. It is absolutely clear from the affidavit of Scott Belt and the exhibits thereto that Morris has agreed to allow flight by IAC members in this area and that, in exchange, the IAC has agreed to take the safety precautions requested by Morris for such flight. Accordingly, the Defendants have established that there is no active case or controversy at issue. In the alternative, if the Plaintiffs are contending that

4

the communications attached to Belt's affidavit have been forged or fabricated, the Defendants propose that they establish the same through the testimony of IAC members Bruce Ballew and Cindy Limbach. If those individuals testify, under oath, that the communications are genuine, the Defendants may seek Rule 11 sanctions for all allegations inconsistent therewith.

Moreover, although the Defendants strongly contend that this issue need not be reached, the Morris Ordinances are not preempted by federal law. This is an issue which neither the 7th Circuit nor the United States Supreme Court has yet decided. There is a split amongst the Circuits which have considered the issue. For the reasons stated in its Motion, the Defendants contend that the decisions of the Circuits declining to find such preemption provide the better-reasoned analyses. Further, this is not an equal protection case. Even if the Plaintiffs could possibly have the requisite knowledge to support their brash and baseless allegation that Morris enforces its Ordinances "only against IAC members," the Ordinances do not discriminate on their face, and the Plaintiffs are not members of a protected class. In addition, there are no recognized due process rights at issue in this case; there is no alleged burden on interstate commerce; the individual defendants are entitled to qualified immunity; and the Plaintiffs have failed to prove the elements of malicious prosecution.

## ARGUMENT

**I.  The Entire Complaint Should be Dismissed Pursuant to Rule 12(b)(1) where, with the Removal of the Aerobatic Practice Area and the Dismissal of the Charges Against Scholtes, there is no Active Case or Controversy.**

The Plaintiffs contend that there is an active case or controversy because the IAC "fears it will lose members, money and participation." (Response at 5). As a basis for the

Plaintiffs' fears, they cite to past attempts by Morris officials to enforce Morris regulations as pled in their Original and Amended Complaints. *Id.* The timeline as outlined above is instructive. When the Original Complaint was filed, Morris had not yet been informed that the new, agreed upon, APA had been established. As that version of the Complaint contains identical allegations of "harassment" and "physical threats," which allegations the Defendants maintain are nothing more than Plaintiffs' Counsels' misleading characterizations of Morris' officials' attempts to abide by the requirements of their positions by enforcing Morris' laws against individuals who outwardly refused to comply with the same, the only logical conclusion is that those events only occurred, if at all, while IAC members attempted to fly in the *prior* disputed APA. The Plaintiffs plead no injuries (e.g. bodily injuries) from the Defendants' alleged attempts to enforce its ordinances as to the now defunct APA, and there cannot possibility be any future injuries involving flight in that APA because it no longer exists. The Plaintiffs are now prohibited from flying in that area by the FAA.

Further, any claims of "fear" described by the Plaintiffs speculative and cannot reasonably characterized as "actual or imminent injures." More significantly, given the facts as established by Belt's affidavit, they are baseless. Morris has explicitly agreed to allow IAC members to fly in the new APA. The IAC has not only accepted that agreement, but agreed to establish updated safety procedures in exchange for the same. This dispute has been resolved. That the resolution was not finalized until after the original Complaint was filed is irrelevant. The delay was caused by the FAA's procedure in affecting the agreement and was out of the Defendants' control. Pursuant to the agreement, the charges against Scholtes were dismissed *on the very day* Morris received confirmation of the relocation of

the APA from the FAA.

*Illinois Migrant Council v. Pilliod*, 540 F.2d 1062 (7th Cir. 1976), on which the Plaintiffs rely, is not analogous. In that case, the 7th Circuit was considering the validity of a temporary injunction "enjoining agents of [the] Immigration and Naturalization Service from stopping and questioning individuals solely on basis of racial characteristics and without reasonable cause to believe that such persons were aliens." *Id.* The court found evidence of a specific policy of such racial discrimination. *Id.* The Plaintiffs here have not alleged a policy of discrimination against a protected class.

Accordingly, as there is no active case or controversy, this entire cause should be dismissed with prejudice pursuant to Rule 12(b)(1).

## II. The Entire Complaint Should be Dismissed Pursuant to Rule 12(b)(6) where the Regulations are not Preempted by Federal Law.

Every substantive allegation in the Plaintiffs' Amended Complaint is based on their contention that the Morris Ordinances are preempted by federal law. Despite the Plaintiffs' misleading citations, neither the 7th Circuit nor the United States Supreme Court has decided whether the federal aviation statutes implicitly preempt any state or local regulation of flight, and there is a clear conflict amongst the Circuits which have reached such a decision.

In *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693 (7th Cir. 2005), the case primarily upon by the Plaintiffs with respect to implied preemption, the 7th Circuit recognized this split and declined to decide the issue as "the situation before [it] involve[d] a local land use issue, which is clearly left to local control." *Id.* at 699. The split (as well as the fact that the 7th Circuit has not yet decided the issue) was also recognized by numerous Northern District Courts. *See, e.g., Hamilton v. United Airlines,*

7

*Inc.*, 2012 WL 6642489 (N.D.IL. 2012); *Meyer v. United Airlines, Inc.*, 624 F.Supp.2d 923 (N.D.IL. 2008); and *Vivas v. Boeing Co.*, 486 F.Supp.2d 726 (N.D.IL. 2007). As explained in thorough detail in their Motion, the Defendants contend that the approach taken by the 11th Circuit in *Public Health Trust of Dade County, Fla. v. Lake Aircraft, Inc.*, 992 F.2d 291, 294-295 (11th Cir. 1993) is the better reasoned approach. For the most part, the Defendants rest on the argument in their Motion with respect to implicit preemption. It should be noted, however, that the Plaintiffs cite an earlier decision of the 11th Circuit for the idea that proscription of air traffic patterns is preempted. (Response at 8 citing *Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir. 1983)). No such proscriptions are at issue here. Here, as detailed above, Morris was only trying to enforce its safety regulations on IAC pilots who wished to fly (in whatever pattern) above its airport. This exact issue was addressed by the 11th Circuit in *Public Health Trust of Dade County*, which found that Congress had not implicitly preempted regulation of in flight air safety.

Further, the Plaintiffs contention that their flight is "related to services of air carriers" so that explicit preemption applies is baseless. In support, the Plaintiffs state only that, by its own regulations and those of the FAA, it must report its new APA to air carriers (i.e. commercial airlines). These regulations have no connection to Morris' right to regulate safety *within* the APA, which rights are no longer at issue in any case as the IAC has agreed to adopt Morris' safety guidelines.

Lastly, the Illinois statute cited by the Defendants does not apply only to movement of airplanes on land. 620 ILCS 15/2, cited by the Plaintiff for this issue, actually provides that local entities can regulate "taking off of aircraft from or landing at

8

public airport[s]" where such "flight will endanger the public safety, health, welfare or common defense."

For these reasons, and those detailed in their Motion, the Defendants request that this Court decline to find that its Ordinances are preempted by federal law.

### III. The Plaintiffs have not Pled the Deprivation of any Protected Rights, and have Failed to Plead that they are Members of a Protected Class.

In their Response, the Plaintiffs almost completely ignore the basis of the Defendants' argument with respect to equal protection. Even if the Plaintiffs for a "class of one" equal protection case involving a fundamental right such as free speech, the "rational basis" test applies where the class member is not a member of a protected class compelling heightened scrutiny. *Thayer v. Chiczewski*, 705 F.3d 237, 254-256 (7th Cir. 2012). The Morris employees were only attempting to enforce their regulations to promote safety above its airport as established in Exhibit 2. This intent is certainly rational. Further, Plaintiffs admit that the "rights" to freedom of movement and intrastate travel, which, here, would only apply to the rights of the pilots to travel within the few blocks made up by the APA, have not been established in the 7th Circuit. Lastly, any "burden on interstate commerce" is speculative at best. Plaintiffs do not operate commercial airlines. Even if the imposition of agreed safety guidelines within the new, agreed to APA somehow restricts commerce in that area, any such effect would be minimal at worst.

### IV. The Individual Defendants are Entitled to Qualified Immunity from Plaintiffs' §1983 Claims.

9

Public officials performing discretionary duties are immune from liability and suit for actions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Formigoni*, 42 F.3d 1060, 1063 (7th Cir. 1994); citing *Harlow v. Fitzgerald*, 456 U.S. 800, 818 (1982). In their Response, the Plaintiffs claim that the preemption of the regulations was "clearly established." As outlined above and in the Defendants' Motion, this is far from the case. The Circuit Courts even disagree on this issue. Expecting Morris employees to determine that implied preemption exists, and Defendants dispute that it does, is far from reasonable.

## V. The Plaintiffs have not pled Malicious Prosecution.

While the Plaintiffs list the elements of this cause of action, they have not even attempted to plead it in their Amended Complaint. They merely reference it in their prayer for relief. In any case, the allegations do not support such a claim. They admit that withdrawal of charges is not a favorable termination unless it implies innocence. The Plaintiffs have never contended that Scholtes did not commit the act for which he was charged. Furthermore, his claim that he "may be required" to disclose something on an imagined insurance application is speculative, and does not qualify as "actual damage." The Plaintiffs have failed to plead malicious prosecution in every sense.

10

WHEREFORE, Defendants, CITY OF MORRIS, JEFFREY VOGEN, and SID NELSON, respectfully request that this Court dismiss the Plaintiffs' Complaint with prejudice.

Respectfully submitted,

PURCELL & WARDROPE, CHTD.

By:    /s/ Mark J Mickiewicz
       Mark J Mickiewicz
       Attorney for Defendants

Mark J Mickiewicz, Atty. No. 6280623
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
Tel: (312) 427-3900
Fax: (312) 427-3944
E-mail: mjm@pw-law.com