**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL AEROBATICS CLUB | ) | |
| CHAPTER 1 and NICHOLAS SCHOLTES, | ) | |
| | ) | |
|        Plaintiffs, | ) | |
| | ) | No. 13 C 04272 |
|     v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| CITY OF MORRIS, JEFFREY VOGEN, and | ) | |
| SID NELSON, | ) | |
| | ) | |
|        Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The plaintiffs, Chapter 1 of the International Aerobatics Club and one of its members, Nicholas Scholtes, claim that the City of Morris is impermissibly regulating flight—which, they contend, only the Federal Aviation Administration can do—and is maliciously and arbitrarily threatening the Club's members with prosecution under a local ordinance and regulations. Scholtes was in fact prosecuted for a violation of the Morris ordinance, although the charge eventually was dropped. The defendants are the City of Morris, where the airport from which the Club operates is located, the airport manager, Jeffrey Vogen, and former airport manager and current "Airport consultant" Sid Nelson, both of whom are alleged to be agents of the City of Morris. They have moved to dismiss the entire complaint. First, they argue that the Court lacks subject matter jurisdiction because there is no live case or controversy and no standing. They further argue that the plaintiffs fail to state a claim for any constitutional violation or for the tort of malicious prosecution, and, finally, that the defendants are entitled to qualified immunity. For the reasons that follow, the defendants' motion is denied, except as to the substantive due process claim, which is dismissed without prejudice.

## I.    Background

The facts as alleged in the Amended Complaint are taken as true for purposes of this motion. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). The documents attached to the plaintiffs' complaint are part of the pleadings and may also be considered. *See* Fed. R. Civ. P. 10(c); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Indeed, to the extent any exhibit contradicts the allegations in the complaint, the exhibit is controlling. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). As for the defendants, the affidavit in support of their motion to dismiss may be considered to the extent it bears on the Court's subject-matter jurisdiction. *Miller v. F.D.I.C.*, 738 F.3d 836, 840 (7th Cir. 2013) ("When subject-matter jurisdiction is disputed, the district court may 'properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"). The defendants cannot use extrinsic evidence to contradict the facts in the complaint for purposes of obtaining a Rule 12(b)(6) dismissal; the Court cannot consider such evidence unless the motion is converted into a summary-judgment motion and the plaintiff is given notice and opportunity to respond. *See* Fed. R. Civ. P. 12(d); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713-14 (7th Cir. 2013).  These principles guide the  recitation of the facts.

The International Aerobatics Club Chapter 1 is a non-profit membership organization that, among other things, provides opportunities for pilots to practice and perform aerobatic maneuvers. The City of Morris owns and operates the Morris Municipal Airport. IAC Chapter 1 members "fly through airspace, depart from and arrive at Morris Airport, and also rent hangar space at the airport." Aerobatic flight is a legally recognized form of aircraft operation regulated by the Federal Aviation Administration (FAA), which has prescribed rules and regulations for

such flight. *See* 14 C.F.R. § 91.303. Under the regulations, no person may operate an aircraft in aerobatic flight: over any congested area of a city, town, or settlement; over an open air assembly of persons; within the lateral boundaries of the surface areas of certain airspace designated for an airport; within 4 nautical miles of the center line of any Federal airway; below an altitude of 1,500 feet above the surface; or when flight visibility is less than 3 statute miles. These regulations are subject to an FAA-issued waiver, for instance to create an Aerobatic Practice Area or an Aerobatic Competition Box, inside which the normal restrictions do not apply. An Aerobatic Practice Area is "established for the purpose of practicing aerobatic skills." FAA Flight Standards Information Management Systems (FSIMS[1]), Vol. 3, Ch. 5, Section 1, ¶ 3-118(a)(3)(a). "Pilots who wish to practice aerobatic maneuvers that do not meet the requirements of § 91.303 must obtain a waiver from the appropriate part(s) of § 91.303 in a designated area referred to as an aerobatic practice area. These areas are not to be considered event or competition sites. The aviation community uses these practice areas to establish and maintain proficiency as well as to enhance competitive skills in aerobatic maneuvers." *Id.* ¶ 3-119.

In 1999 the City of Morris had passed an ordinance adopting by reference the provisions of the Morris Municipal Airport Rules and Regulations and granting enforcement authority to the airport manager, the fire marshal, the building and zoning officer, and the police department. Morris Municipal Code 8.75.010, 8.75.030. The Rules and Regulations, in turn, purport to regulate aeronautical activity, insofar as they require that all such activity "shall be conducted in conformance with the statutes, law, rules, or regulations of the FAA and the Rules and

---

[1] FSIMS, established by FAA Order 8900.1 on September 13, 2007, is a "flight standards directive, which aviation safety inspectors use as the system of record for all Flight Standards policy and guidance."

Regulations." Morris Airport Rules and Regulations § 400.1. The Rules and Regulations do not otherwise impose any substantive restrictions or requirements with respect to aeronautical activity. So far as the Amended Complaint or the parties' briefs reflect, no one was subject to prosecution for any violation of the Morris ordinance until after IAC Chapter 1 requested that the FAA establish an Aerobatic Practice Area near the airport in 2011.

In April 2011 IAC Chapter 1 applied to the FAA for a waiver for a Practice Area northwest of the Morris Airport—a location in which aerobatic flight would otherwise be restricted. The City of Morris opposed the location of the Practice Area, and a disgruntled former IAC Chapter 1 member, defendant Sid Nelson, made false and misleading statements in opposition to the practice area on behalf of the City in making its case. The defendants also threatened IAC Chapter 1 with "consequences" if it obtained the Practice Area. Ultimately, the FAA granted the requested waiver, effective May 1, 2011, to March 31, 2012.

During the effective period of the 2011-2012 Practice Area, at least one member of the Aerobatic Club was issued a ticket under Chapter 400.1 of the Rules and § 8.75.010 of the Morris City Code for "operat[ing] an aircraft in aerobatic flight within the lateral boundaries of the surface areas of Class B, Class C, Class D, or Class E airspace designated for an airport." That citation was issued to plaintiff Nicholas Scholtes by the Airport Manager Jeffrey Vogen on March 28, 2012. According to the complaint, the alleged violation occurred while Scholtes "was flying miles away from the Morris Airport and beyond the city limits of Morris." At the point Scholtes was ticketed, months after the alleged violation, Vogen had already reported the same incident twice to the FAA, which investigated and found nothing to support the charge of improper aerobatic maneuvering. Scholtes and IAC Chapter 1 disputed the ordinance violation

and maintained that the City of Morris had no authority to prosecute a pilot for in-flight activities. The charge against Scholtes was pending for 17 months. The City finally dismissed it after Scholtes and IAC Chapter 1 filed a federal lawsuit to enjoin the state-court prosecution and after IAC Chapter 1 agreed to obtain, and did obtain, a new waiver for a Practice Area in a different location. The City failed to alert Scholtes that it was dismissing the charge, although it represented to the state court that he agreed to the dismissal.

According to the complaint, the City of Morris has threatened to prosecute other members of IAC Chapter 1 for flying offenses outside the Aerobatic Practice Area and has "selectively enforced and threaten[ed] to enforce the Morris Ordinance and Regulations against the Plaintiffs out of animus for aerobatic flying, Scholtes, and IAC Chapter 1." Vogen has personally reported two IAC Chapter 1 members to the FAA for in-flight aircraft operations. Vogen and Nelson have harassed and intimidated IAC Chapter 1 members and deterred members from performing aerobatic flight maneuvers near Morris. The "harassment" has consisted of, for example, yelling at and distracting IAC Chapter 1 members on the ground while they were coaching or instructing pilots in the air, physically threatening and intimidating members, including by driving a car directly toward one before braking suddenly, and threatening members with prosecution for "unsafe maneuvers."

## II.     Procedural History

In their amended complaint of September 12, 2013,[2] Scholtes and IAC Chapter 1 sued the City of Morris, Vogel, and Nelson for an injunction against enforcement of the Morris ordinance and Regulation as they pertain to the in-flight regulation of airplanes, claiming that the FAA has sole enforcement authority in that area. The plaintiffs further claim that the defendants violated the plaintiffs' equal-protection and substantive due process rights by arbitrarily and unjustifiably restricting the plaintiffs' liberty and freedom and movement out of malice. Finally, Scholtes claims malicious prosecution as to the ordinance violation enforcement proceeding.

The defendants move to dismiss all of the claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. First, they contend that there is no subject matter jurisdiction because the case is moot and the plaintiffs lack standing, owing to the creation of a new Aerobatic Practice Area and the dismissal of the case against Scholtes after the original complaint was filed. The defendants further argue that the local ordinance and regulations are not preempted by federal law, and finally, that the plaintiffs do not state any valid constitutional claim and that, even if they did, the individual defendants would be entitled to qualified immunity.

In support of their motion, the defendants submit the affidavit of Scott Belt, Corporate Counsel for the City of Morris. *See* Def. Ex. 2, Dkt. # 30 at 57. The affidavit describes discussions and correspondence among the City, IAC Chapter 1, and the FAA pertaining to the Aerobatic Practice Area. Belt attests that in a December 2012 meeting, the City and IAC Chapter

---

[2] The original complaint (Dkt. # 1) filed on June 7, 2013, contained only the claim for injunctive relief based upon federal preemption and the constitutional claim; the malicious prosecution was not added until the enforcement proceeding against Scholtes was dropped.

1 "reached certain agreements" including the relocation of the original Practice Area in exchange for dismissal of charges against Scholtes. *See id.* ¶¶ 4-5. Belt attaches a February 1, 2013, email he sent to Bruce Ballew, the Midwest Director of the IAC, "summariz[ing]" the purported agreements, as well as a return email from Ballew that states simply: "We are sticking by what we agreed to at the meeting with the City of Morris, the FAA Great Lake Region and the IAC." Belt further attests that on August 8, 2013 (after the original complaint in this case was filed) he was informed by IAC Chapter 1 that it had obtained a waiver for a new Aerobatic Practice Area, "which is in a location agreeable to the City of Morris." *See id.* ¶ 7. After Belt received confirmation from the FAA that the old Practice Area waiver had been canceled, Belt dismissed by "agreed order" the enforcement complaint against Scholtes. *See id.* ¶¶ 8-9.

After the defendants' motion was full briefed, the plaintiffs requested and received leave to file a sur-reply to address certain arguments raised in the reply brief and in the Belt affidavit. Included as an exhibit to that sur-reply brief is the affidavit of Bruce Ballew, who attests that he "did not then, and [does] not now, believe that the 'agreements' in Mr. Belt's February 1, 2013 email accurately reflect the parties' December 20, 2012 discussions." Pl. Surreply Ex. B., Dkt. # 35-2, at ¶ 3. According to Ballew, "[t]he parties agreed that IAC Chapter 1 would apply for a new waiver at a location to the east of the Morris Airport and that upon receipt of the new waiver, the existing waiver would be surrendered. In return, the City of Morris agreed to drop all objections to the presence of the Aerobatic Practice Area near the Morris Airport." *Id.* ¶ 4. Ballew further attests that the IAC continues to maintain, consistent with statements from the FAA, that the City of Morris has no authority to regulate in-flight activity and that no agreement as to that point has ever been reached. *See id.* at ¶¶ 6-8.

## III.     Discussion

### A.     Subject Matter Jurisdiction

The first question must be whether, as the defendants argue, this Court lacks subject matter jurisdiction because of either mootness or lack of standing.

#### 1. Mootness

The defendants first contend that there is no live controversy between the parties because the conflict was settled with the creation of the new Practice Area and the dismissal of the charge against Scholtes. "A case becomes moot, and the federal courts lose subject matter jurisdiction, when a justiciable controversy ceases to exist between the parties." *Aslin v. Financial Industry Regulatory Authority, Inc.*, 704 F.3d 475, 477 (7th Cir. 2013) (*citing Honig v. Doe*, 484 U.S. 305, 317 (1988)); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) ("Federal courts lack subject matter jurisdiction when a case becomes moot."). When the Court cannot give any effective relief to the plaintiffs, it must dismiss the case. *Medlock v. Trs. of Ind. Univ.*, 683 F.3d 880, 882 (7th Cir. 2012).

The primary relief sought by the plaintiffs is an injunction against enforcement of an ordinance and regulations that remain in effect. According to the plaintiffs, the ordinance is preempted by federal law and unenforceable by the defendants. When a challenged law is repealed, a claim for declaratory or injunctive relief is mooted. *See, e.g., Markadonatos v. Village of Woodridge*, 760 F.3d 545, 546 (7th Cir. 2014) (noting that "the ordinance has been repealed and the repeal moots the plaintiff's request for declaratory and injunctive relief"). Here there has been no repeal and there is a live controversy between the parties as to the City's authority to regulate flights in and around the Morris airport.

That the defendants believe they have reached an agreement with the IAC that will forestall future enforcement proceedings is evident, but that belief is not shared by IAC Chapter 1. There is at the very least a factual dispute concerning whether the parties reached an agreement and about what, but even the defendants' evidence does not establish that there was any promise not to prosecute IAC Chapter 1 members for in-flight violations, whether within or beyond the boundaries of the new Aerobatic Practice Area. Moreover, the defendants' voluntary cessation of enforcement efforts cannot moot the plaintiffs' claims unless there is no prospect of the allegedly unlawful conduct repeating itself. *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc*., 528 U.S. 167, 190, (2000) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). There is no such absolute certainty here, whether the Court considers the Belt affidavit or not.

As for the constitutional claims in Count II, the plaintiffs seek damages. There is no plausible argument that any agreement as to prospective treatment of IAC Chapter 1 pilots moots the plaintiffs' claims for damages for the alleged prior infringements of their constitutional rights. *See Markadonatos*, 760 F.3d at 546 (repeal of ordinance did not moot entire case because plaintiff sought return of $30 fine); *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (explaining that "[i]n an action seeking only injunctive relief . . . , once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot . . . . however, [if] a plaintiff also seeks monetary damages, his case is not moot even if the underlying misconduct that caused the injury has ceased"). Furthermore, that the enforcement proceeding against Scholtes now has been dropped does not moot his claim; indeed, he was not entitled to

sue for malicious prosecution until obtaining a favorable disposition.[3] *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) ("The tort of malicious prosecution under Illinois law includes among its elements a demonstration that the assertedly wrongful prosecution terminated in the plaintiff's favor in a manner implying innocence."). A claim for malicious prosecution does not even accrue until the favorable termination. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 100, 820 N.E.2d 455, 459 (Ill. 2004); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Therefore, that disposition cannot itself moot the tort claim. In any event, Scholtes seeks damages for the alleged tort, and therefore his claim is live.[4] Whatever agreements were made between the parties, it remains clear that the plaintiffs have not received everything they request in this lawsuit, and there is no contention that any purported agreement included a release of claims. Therefore, the case is not moot or otherwise barred by what the defendants contend is a settlement agreement.

## 2. Standing

The defendants also challenge the plaintiffs' standing to sue. Standing implicates the Court's subject matter jurisdiction. *See G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 543 (7th Cir. 2012) (affirming dismissal under Rule 12(b)(1) for lack of standing). The defendants' standing argument appears to be based upon both a lack of injury-in-fact and the absence of a particularized rather than generally applicable injury (a component of prudential standing). *See* Mem., Dkt. # 30 at 4-6; Mem., Dkt. # 33 at 5-7.

---

[3] Whether the City's voluntary dismissal of the ordinance violation is a favorable disposition for purposes of a malicious prosecution claim will be addressed in the context of the defendants' Rule 12(b)(6) motion.

[4] The defendants state, incorrectly, that "Plaintiffs very briefly reference 'malicious prosecution' in their prayer for relief (only) but do not appear to be pursuing a state law claim based on that doctrine" Mem., Dkt. #30 at 6. In fact, Count III of the Complaint is devoted to the malicious prosecution claim.

Constitutional standing has three requirements: (1) injury in fact—the invasion of a legally protected interest that is concrete and particularized and actual or imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Prudential standing, which concerns "matters of judicial self-governance," requires that the plaintiff's injury be more than "a generalized grievance shared in substantially equal measure by all or a large class of citizens" and that the plaintiff "assert his own legal rights and interests," rather than those of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see G & S Holdings LLC,* 697 F.3d at 540.

Furthermore, a plaintiff must separately establish standing for each type of relief requested. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010); *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) (Plaintiff "bears the burden of showing that he has standing for each type of relief sought"); *Parvarti v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010); *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010). Here, Count I seeks an injunction against the enforcement of the Morris ordinance and regulations. "To establish their standing to seek [injunctive] relief, the plaintiffs must show that: (1) they are under threat of an actual and imminent injury in fact; (2) there is a causal relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury." *Schirmer*, 621 F.3d at 585 (citing *Summers* 555 U.S. 488; *Lujan*, 504 U.S. at 560-61; and *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918, 925 (7th Cir. 2008)).

The defendants suggest that the plaintiffs lack any actionable injury in fact for largely the same reasons they argued that there was no active case or controversy: the plaintiffs' alleged injuries were caused by a state of affairs that has changed since the filing of the original complaint, namely, the relocation of the Practice Area and the dismissal of the charge against Scholtes. The defendants appear to invoke, but never cite, the line of cases holding that to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a "real and immediate" threat of future violations of his rights. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564. And, "[a]s a general rule, the fact that a person was previously prosecuted for violating a law is insufficient by itself to establish that person's standing to request injunctive relief." *Schirmer*, 621 F.3d at 585-86 (7th Cir. 2010) (citing cases).

Here, the plaintiffs do allege facts sufficient to make plausible, if barely, the threat of imminent prosecutions and ongoing injury as of the time of Amended Complaint, which was filed after the Practice Area was relocated. *See* Am. Compl., Dkt. # 28 ¶¶ 87-107. For example, they assert that Vogen threatened that any pilot who supports Chapter 1 or its practice area "could lose their ability to fly at the Morris airport"; that Vogen threatened to throw Chapter 1 members out of the airport and ground their plans "if he feels, in his opinion, that they have done any unsafe maneuvers while flying"; and that Chapter 1 members do not practice even within the designated practice area out of fear of "being the subject of an ordinance violation proceeding initiated by Defendants for violating the Morris Ordinance and Regulations." *Id.* ¶¶ 97, 98, 103.

The defendants find it self-evident that there is no continuing or imminent threat because they agreed to the location of the new Practice Area and do not intend to make trouble for the plaintiffs in the new one, but that fact has not been established at the pleading stage and contradicts the allegations in the Amended Complaint. The plaintiffs allege that, as of the time the Amended Complaint was filed, they were still being threatened with prosecutions. If the facts of the case later show that there have been no threats since the intervening event of the new Practice Area, then the standing challenge will succeed. *See Friends of the Earth*, 528 U.S. at 198 (explaining, as to the plaintiffs' standing: "General allegations of injury may suffice at the pleading stage, but at summary judgment plaintiffs must set forth "specific facts" to support their claims."). But for now the plaintiffs have plausibly alleged harassment and the threat of municipal enforcement actions.

The defendants also invoke prudential limitations on standing in arguing that the challenged ordinance and regulations "apply equally to every citizen," and that therefore the plaintiffs "are in the same posture as the general citizenry of the City of Morris." Mem., Dkt. # 30 at 6. This argument contradicts the factual allegations in the complaint, as well as common sense. The members of an aerobatic flight club surely are more likely to run up against enforcement of specialized in-flight aircraft regulations than "the general citizenry." Moreover, the complaint specifically alleges that airport and Morris officials selectively enforce the laws against members of IAC Chapter 1 out of hostility. *E.g*., Compl. ¶¶ 87-91, 128. And it is the club members and other pilots, not the public at large, that risk prosecution for not complying with the regulations even if they are, as claimed, unlawful.

The defendants' argument that plaintiff Scholtes also lacks standing is off-base and merits little discussion. The defendants state that Scholtes "can no longer establish any personal injuries" because "[a]ll charges against him have been dismissed with prejudice, and he is no longer subject to any punishment related to the charges." Mem., Dkt. # 30 at 6. But the defendants cite no authority supporting their implication that a malicious prosecution claim can only be pursued when there is an ongoing prosecution; and, as previously noted, the law is precisely the opposite. Scholtes is not suing for prospective injunctive relief, so he needn't establish any imminent injury; he is seeking damages for the past injuries caused by the allegedly illegal prosecution.

Accordingly, the amended complaint alleges, if minimally as to Count I's request for injunctive relief, injuries that are sufficient to satisfy the requirements of constitutional and prudential standing.

**B.      Rule 12(b)(6) Arguments**

The defendants next contend that, even if the Court has subject matter jurisdiction, the case must be dismissed because the plaintiffs fail to state any claims for relief. For purposes of the injunction claim, the defendants contend that the Morris ordinance and regulations are not preempted by federal law and are valid and enforceable as a matter of law. The defendants further argue that the plaintiffs fail to state a claim for any constitutional violation because they are not members of a protected class. Finally, the individual defendants argue that they are entitled to qualified immunity.

*1. Preemption*

Turning first to Count I, which seeks to enjoin enforcement (and, effectively, declare unlawful) the ordinance and regulations to the extent they infringe on the FAA's sole enforcement powers, the defendants move to dismiss on the ground that, as a matter of law, the Morris ordinance and regulations are not preempted. The plaintiffs argue that the comprehensive nature and scope of the Federal Aviation Act results in field preemption, barring state and local authorities from regulating airspace; they also contend that the Airline Deregulation Act of 1978 expressly preempts all regulations "related to a price, route, or service of an air carrier." Resolving the defendants' motion essentially requires the Court to decide the merits of Count I, as preemption is the sole basis for the argument that the ordinance is invalid. The Court is empowered to make the decision at the pleading stage, however, because "[i]ssues of express or field preemption are generally purely legal questions, where the matter can be resolved solely on the basis of the state and federal statutes at issue." *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008).

Without reaching the question of the preemptive effect of the Airline Deregulation Act, the Court readily concludes that the Federal Aviation Act and it regulatory enforcement scheme preempt the City of Morris's ordinance allowing it to enforce FAA rules governing flight operations.

"Because the FAA does not expressly preempt state regulation of air safety . . ., FAA 'preemption, if any, must be implied,'" under the doctrine of conflict preemption or field preemption. *Ventress v. Japan Airlines*, 747 F.3d 716, 720 (9th Cir. 2014). Here, where the ordinance is coextensive with FAA regulations, conflict preemption is not at issue, leaving only

the question whether "federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Hoagland v. Town of Clear Lake, Ind.,* 415 F.3d 693, 696-97 (7th Cir. 2005) (quoting *Cipollone v. Liggett Group*, Inc., 505 U.S. 504, 516, (1992)).

There can be no question that the Federal Aviation Authority has comprehensive, plenary authority to regulate flight in the national airspace. The FAA was enacted to create a "uniform and exclusive system of federal regulation" in the field of air safety. *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 639 (1973); *Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892, 894 (2d Cir. 1960) (explaining that the FAA "was passed by Congress for the purpose of centralizing in a single authority-indeed, in one administrator-the power to frame rules for the safe and efficient use of the nation's airspace."). Accordingly, some courts have held that federal regulation occupies the field of air safety, to the exclusion of state (and local) regulation. *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326, 1327 (10th Cir. 2010) (collecting cases). The Seventh Circuit has not yet decided the issue, although its decision in *Hoagland* takes for granted the preemption of local laws affecting federal airspace. 415 F.3d at 698 (observing that issues relating to "the safe and efficient use of the airspace" around an airport are the sort of issues that the FAA preempts).

In evaluating field preemption under the FAA, the first step is to ask whether the particular area of aviation commerce and safety is governed by pervasive federal regulations; if so, any applicable local standards are preempted. *Gilstrap v United Air Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013). In this case, the regulation pertaining to aerobatic flight—undoubtedly a regulation of air safety—is comprehensive. And, importantly, nothing in the FAA or its

16

regulations empowers municipal officials to enforce the FAA's regulations of aerobatic flight. Yet the Morris ordinance essentially grants the Morris airport director, police and fire chiefs, and even the City's building and zoning administrator the enforcement powers delegated to federal aviation inspectors; there is simply no basis in federal law for this sweeping assumption of authority by local municipal officials. Certainly the defendants have not suggested that the FAA has delegated enforcement authority to them, nor have they cited any authorities that suggest such delegation would be permissible. The enforcement scheme is as much a part of the FAA framework as the substantive restrictions on aerobatic flight. *See generally Americopters, LLC v. United States*, 95 Fed. Cl. 224, 227-228 (2010) (setting forth aviation safety enforcement scheme).

That which cannot be accomplished directly cannot be accomplished by incorporating the FAA regulations by reference into a municipal ordinance. The most obvious peril created by doing so is the uneven enforcement of nationally applicable regulations throughout the national airspace. Another concern is the total lack of aviation training or expertise possessed by those empowered under the Morris ordinance to, in effect, enforce the FAA and its companion regulations; the Morris building inspectors and firefighters, for example, have no business making or interpreting federal aviation policy, which is what occurs when they are permitted to exercise discretion over the enforcement of FAA regulations.

The implicit premise of the City's assertion of authority to enforce the FAA is that it controls the airspace above the city limits. That premise is unfounded. There is no "City of Morris" airspace. *See* 49 U.S.C. § 40103(a) ("The United States Government has exclusive sovereignty of airspace of the United States.") Yet, the City purports to possess the power to

regulate at least some fraction of the national airspace by discretionarily enforcing the FAA. That is wholly inconsistent with the intent of Congress that there should be uniform national policy with respect to air safety.

The defendants contend that there is no preemption because under Illinois law, *see* 65 ILCS 5/11-101 *et seq.*, the City is empowered to establish a municipal airport and make reasonable rules and regulations regarding the airport and "air traffic and airport or landing field conduct." 65 ILCS 5/11/103-5. This argument fails. First, a state statute can be preempted by federal law just as the municipal ordinance can; if the federal scheme is plenary in a particular area, then regulation by either state or local officials is improper.

Second, to the extent that state (or local) regulations govern airport siting and ground operations, they are of a wholly different nature than regulation of flight activity within the national airspace. The Seventh Circuit observed as much in *Hoagland*, where it distinguished between the types of local laws that are and are not preempted by the FAA by recognizing that "the issue of where a local governing body chooses to site an airport is different" from the cases involving "issues which reach far beyond a single local jurisdiction and which cannot sensibly be resolved by a patchwork of local regulations." 415 F.3d at 698. Thus, noise regulation ordinances, flight-pattern controls, restrictions on night operations, air safety regulations, and pilot drug-testing provisions are all impliedly preempted by the FAA. *Hoagland*, 415 F.3d at 697 (collecting cases). Land-use regulations—including the siting of airports and landing strips—are not. *See id*. The Supreme Court itself rejected the argument that a municipality's "police powers" gave it authority to regulate flying times by imposing a curfew because the of the FAA's "pervasive control" to regulate takeoff and landing. *City of Burbank v. Lockheed Air Terminal*

*Inc.*, 411 U.S. 624, 638 (1973). The police powers of a local government must yield to the pervasive air safety regulations enforced by the FAA.

And finally, the Northern District of Illinois authorities that the defendants cite in opposing preemption, *see* Mem., Dkt. # 30 at 9, pertain to the preemption under the Airline Deregulation Act and, further, address claims that relating to employment discrimination and product liability, not air safety measures. They are inapposite.

The regulation of aerobatic flight[5] is plenary under the FAA, and exclusive enforcement is an indispensable component of that plenary authority. Morris concedes that in enacting and enforcing its ordinance it is exercising power to "regulate . . . the airspace above" its municipal airport. To the extent that the Ordinance regulates in-flight activity that falls within the FAA's existing regulations of aerobatic flight, and to the extent it purports to empower municipal officials not employed by the FAA to enforce FAA standards, the Morris Ordinance and regulations are preempted by federal law and are not enforceable. [6]

### 2. Constitutional Claims Under Section 1983

Next, the defendants contend the plaintiffs fail to state any constitutional claim in Count II. They first argue that, to the extent that the protected interest that the defendants allegedly

---

[5] The Court need not determine whether the Ordinance in preempted in its entirety. The plaintiffs' concern is the regulation of in-flight aerobatic activity and the ordinance is plainly preempted as to any such regulation and enforcement.

[6] There is no pending request for judgment in favor of the plaintiffs pursuant to Rule 12(c) or Rule 56(a), and therefore, the Court does not enter judgment at this time. Given that the preemption issue is legal in nature and that there appear to be no material fact disputes that bear on resolution of the issue, however, Count I is a likely candidate for treatment under Fed. R. Civ. P. 56(f)(3) even in the absence of a motion by the plaintiffs. The Court will address this issue with the parties, and provide the required notice and a reasonable time to respond, before taking such action.

infringed was the right to fly within the old Practice Area, that right no longer exists because a new Practice Area has been created and the old one stricken. *See* Mem., Dkt. # 30 at 10. This argument, however, does not go to whether the plaintiffs have plausibly pleaded facts demonstrating their entitlement to relief; it is a rehash of the defendants' mootness and standing arguments. The defendants also make the one-sentence argument that Count II fails because "pilots" are not a constitutionally protected class entitled to invoke the Equal Protection Clause.

In their response to the motion to dismiss, the plaintiffs clarify the theories under which they seek relief in Count II. Citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the plaintiffs invoke the "class of one" theory of equal protection. Under this approach, it is not necessary to establish membership in a protected class; a class-of-one claim arises "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* This is the "traditional equal protection analysis" applicable where (as here) an alleged governmental classification is not based on membership in a constitutionally protected class and does not implicate a fundamental right. *Id.* at 565. To state a class-of-one equal protection claim, a plaintiff "must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (quoting *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008)). The rational basis test precludes any such equal protection claim if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Scherr v. City of Chicago*, 757 F.3d 593, 598 (7th Cir. 2014); *see also Fares Pawn, LLC v. Indiana Dep't of Fin'l Institutions*, 755 F.3d 839, 845 (7th Cir. 2014). Pleading malice or other

subjective ill intent also may, or may not, be required, *see Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (*en banc*), *cert. denied*, ⸺ U.S. ⸺, 133 S. Ct. 654 (2012), but in any event, the plaintiffs here do allege malice and hostility toward them.

The defendants' only reply is that the "Morris employees were only attempting to enforce their regulation to promote safety above its airport," an intent that is "certainly rational." Mem., Dkt. # 33 at 9. But the City's focus on a concern for air safety above its airport mistakes the enactment of the statute for the governmental conduct implicated by the plaintiffs' class-of-one claim. The plaintiffs do not contend that enactment of the statute was itself unconstitutional (though they do believe it invalid for other reasons); rather, they challenge the *enforcement* of the statute against them. The plaintiffs' class-of-one claim amounts to a charge of selective enforcement motivated by no reason other than animus. The Seventh Circuit has expressly endorsed the existence of such a claim, rejecting the argument that "selective enforcement of the law can never violate the equal protection clause under a class-of-one theory because of the discretion inherent in police power." *Hanes v. Zurich*, 578 F.3d 491, 492, 494 (7th Cir. 2009); *see also Geinosky*, 675 F.3d. at 747 ("Although the police are necessarily afforded wide discretion in performing their duties, that discretion does not extend to discriminating against or harassing people."). A law enforcement officer "motivated by malice alone is not exercising discretion and is not weighing the factors relevant to the officer's duty to the public," and therefore a plaintiff can state a claim under a class-of-one theory by alleging that he is targeted for arrest because "the officer hates the arrestee." *Hanes*, 578 F.3d. at 496.

With respect to this selective enforcement claim, it is not enough to say that ticketing Scholtes could have been motivated by a desire to maintain the safety of the airspace over the

airport; a hypothetical desire to promote public safety or welfare could justify virtually any effort to enforce public laws and eliminate the possibility of class-of-one selective prosecution claims of the sort that the Seventh Circuit has recognized. Rather, the proffered rational must speak to the basis of enforcement not against *anyone* but against *this* plaintiff under the circumstances alleged in *this* complaint.[7] Here, then, the relevant inquiry as to rationality is not whether there could be a rational reason for the City to enforce FAA flight regulations against violators generally, but whether there was a rational reason to enforce the City's ordinance against Scholtes when (it is alleged): (1) "the City of Morris has not charged any pilot with a citation for violating the Morris Ordinance and Regulations other than Scholtes"; (2) Vogen has never reported anyone other than an IAC Chapter 1 member to the FAA for aircraft operations during flight" despite reporting at least two members; (3) Vogen "allows other pilots who do not support IAC Chapter 1 to fly at low altitudes near the runway without threats of repercussions and without filing reports or complaints against those pilots"; and (4) Scholtes was ticketed by the City for flight operations that did not even occur over the Morris airport. Am. Compl.,

---

[7] This does not mean that any claim of improper enforcement gives rise to a class-of-one equal protection claim. A plaintiff's allegations, taken as true, must suffice to negate any conceivable possibility that there was a rational basis—that is to say, a "rational relationship to some legitimate governmental purpose" enforcement action was taken for a rational governmental purpose, *Armour v. City of Indianapolis*, ---U.S.---, 132 S. Ct. 2073, 2080 (2012). *See Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (citing standard and affirming its application to the evaluation of a motion to dismiss). That would not be the case where, for example, a police officer randomly selects one speeding car to ticket but fails to ticket others, *see, e.g., Engquist*, 553 U.S. at 553; "random selection is certainly rational." *Geinosky*, 675 F.3d at 749. It bears noting that where, as here, a complaint alleges that a statute has *never* been enforced against anyone else, there is no basis to hypothesize that random selection motivated the alleged enforcement action—unless one supposes that the random enforcement strategy adopted by the City was to ticket a pilot once every fourteen years.

Dkt. # 28 at ¶¶ 88, 91, 99, and 62. The plaintiffs further allege that malice and animus motivated the defendants' actions. *See id.* ¶¶ 14, 69, 87, 128.

Against these allegations, the City's proffered public safety rationale cannot stand up. Concern about the safety of the airport airspace could not (even conceivably) have animated the enforcement effort against the plaintiffs when—again, accepting the plaintiffs' allegations on their face—the defendants had never enforced the statutes against anyone else and when even the ticket that they issued to Scholtes did not involve flight operations in the airspace above the airport. Accordingly, the plaintiffs have plausibly alleged that the defendants intentionally discriminated against them without a rational basis, and their class-of-one claim may go forward.

As a second constitutional claim, the plaintiffs also invoke substantive due process. This is the theory under which the Due Process Clause prevents the use of governmental power for purposes of oppression "by barring certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007) (explaining that substantive due process "protects an individual from the exercise of governmental power without a reasonable justification"). In that sense, the theory of substantive due process is similar to the class-of-one equal protection doctrine, especially where, as here, there is no "fundamental right" at stake, and therefore the government need only demonstrate that the intrusion upon some non-fundamental liberty is rationally related to a legitimate government interest. *See Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576 (7th Cir. 2014); *Wroblewski v. City of Washburn*, 965 F.2d 452, 457–58 (7th Cir. 1992). Despite the similarity between the legal theories, however, the

Court concludes that the plaintiffs have failed to plausibly allege the violation of a substantive due process right.

First of all, the plaintiffs do not plausibly allege interference with a constitutionally protected interest; the complaint refers to the plaintiffs' rights to "liberty" and "freedom of movement" in only a conclusory way. Am. Compl., Dkt. # 28 at ¶ 125. But the factual allegations do not support anything but the most negligible restriction—perhaps a slight chilling of members' participation in Club activities—on the plaintiffs, whether with respect to their "freedom of movement" or their "liberty" (they do not identify the distinction they intend). Considerably more—and more severe— restriction would be necessary to turn the claim into a substantive due process question. Though its parameters remain ill-defined, a substantive due process claim in this context requires allegations of conduct that "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849; *see also id.* at 847 (conduct must violate "the decencies of civilized conduct" or fail to comport with "traditional ideas of fair play and decency"). Harassing aerobatic pilots so that they will obtain an alternative practice area for their maneuvers does not remotely approach that standard. *Cf. Geinosky*, 675 F.3d at 750 (rejecting substantive due process claim despite the complaints "troubling" allegations regarding the issuance of false traffic tickets).

Furthermore, the substantive due process claim differs from the equal-protection claim in that the plaintiffs specifically allege that the violation arises from the existence of the ordinance itself, which the plaintiffs allege is "arbitrary," "unconstitutionally vague," and "do[es] not

promote the safety of the residents of Morris or pilots flying at or near Morris airport." Am. Compl., Dkt. # 28 ¶ 125. Under the highly deferential standard of rational-basis review, the plaintiffs simply cannot establish as a matter of law that the ordinance itself lacks any rational basis, even hypothetical. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013). Here the defendants posit that the ordinance is a safety measure; that is enough. *See* Mem., Dkt. # 33 at 9. ("Morris employees were only attempting to enforce their regulations to promote safety above its airport"). Narrow tailoring is not required; nor is smart legislation; "[t]hose attacking a statute on rational basis grounds have the burden to negate 'every conceivable basis which might support it.'" *Goodpaster*, 736 F.3d at 1071. For purposes of substantive due process, the plaintiffs cannot establish as a matter of law that the ordinance lacks any rational basis.

### 3. Qualified Immunity

The individual defendants also maintain that they are entitled to qualified immunity. Since the Court has concluded that the complaint states a class-of-one equal protection claim, the availability of the defense turns on whether the constitutional right infringed was clearly established. The defendants, however, have offered no argument or pertinent authority on the point; their brief offers only the bald conclusion that "the individual defendants were not violating any clearly established constitutional rights." Mem., Dkt. # 30 at 11. Accordingly, they have forfeited the argument as a ground for dismissing the complaint.[8] *See Batson v. Live Nation Entertainment, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("perfunctory and underdeveloped"

---

[8] This does not mean that the individual defendants have forfeited the defense altogether; they remain free to develop the argument, as warranted, in a summary judgment motion.

argument is forfeited); *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905 (7th Cir. 2005) (argument forfeited where plaintiff "failed to develop it in the district court . . . with citation to relevant authority or meaningful argument").

In any event, in the context of the class-of-one equal protection claim at issue here, it is difficult to understand how a qualified immunity defense could be asserted successfully in a motion to dismiss the claim. Even to state a claim, the plaintiff must, as discussed above, allege facts sufficient to negate any conceivable possibility that the defendants' actions were rationally related to a legitimate governmental purpose. Where (as here) a plaintiff succeeds in this task, the only way to establish the qualified immunity defense would be for the defendants to show that as a matter of law, they nevertheless had reason to believe that they were constitutionally permitted to intentionally discriminate against individual citizens for reasons bearing no conceivable relationship to any legitimate governmental purpose. To state the proposition suffices as reason to reject it, but in any event the right to be free from such arbitrary actions has been clearly established at least since the Supreme Court expressly recognized it in *Olech. See* 528 U.S. at 564-65 ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. . . . [T]he purpose of the equal protection clause . . . is to secure every person . . . against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." (internal quotation marks and citations omitted)).[9]

---

[9] To the extent that the defendants also argue that they have qualified immunity as to Count I (see Mem., Dkt. # 33 at 10), that is not a section 1983 claim, but rather an attempt to

Accordingly, the individual defendants are not entitled to qualified immunity as to the plaintiff's class-of-one equal protection claim.

### 4. Malicious Prosecution

Finally, the defendants argue for the first time in their reply brief that plaintiff Stoltes fails to state a claim for malicious prosecution. The elements of malicious prosecution under Illinois law are: (1) the defendants began or continued the original criminal proceeding; (2) the plaintiff received a favorable termination; (3) probable cause did not exist; (4) malice was present; and (5) the plaintiff suffered damages. *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 96, 887 N.E. 2d 656, 662 (Ill. App. Ct. 2008) (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 215 662 N.E.2d 1238, 1242 (1996)). "If one element is missing, the plaintiff is barred from pursuing the claim." *Id.* The defendants here contend that Scholtes fails to state a claim because (1) "withdrawal of charges is not a favorable termination unless it implies innocence," and Stoltes has never claimed that he did not commit the offense; and (2) Stoltes has not sufficiently pleaded damages. Mem., Dkt. # 33 at 10.

The defendants' first argument misses the point; Scholtes claims to be *legally* innocent of the charge. He is not denying the in-flight conduct for which he was ticketed; he is denying that his conduct constitutes the violation of a valid law. The defendants cite no authority for the proposition that a plaintiff in this posture cannot pursue a malicious prosecution claim, or that such a claim can be brought only when the plaintiff claims to be factually innocent of the

---

enjoin enforcement of an allegedly preempted ordinance, and therefore the defense is inapplicable. And, in any event, it does not appear that Count I is even directed at the individual defendants, except to the extent that they, like any other agents of the City of Morris, would be bound by any injunction prohibiting enforcement.

underlying charge. It is true that the abandonment of the proceedings is not indicative of the innocence of the accused when it is the result of an agreement or compromise or the impossibility or impracticability of bringing the accused to trial. *See Aguirre*, 382 Ill. App. 3d at 96-97, 887 N.E. 2d at 662-63. If the defendants can establish that the dismissal of charges was pursuant to an agreement or compromise with Scholtes, they might well prevail on summary judgment. But that is not evident from the pleadings (and recall that the defendants' extrinsic evidence is not properly considered as to the Rule 12(b)(6) arguments).

As to the damages, the defendants assert, without citing any authority, that Scholtes' allegation that he "might" be required to disclose his charge on an insurance application "is speculative and does not qualify as 'actual damage.'" Mem., Dkt. # 33 at 10. In fact, the complaint alleges that Scholtes, who makes his living as a pilot and flight instructor, may be required to disclose that he has received a citation for an in-flight violation even though he was not convicted on job application, insurance applications (affecting his premiums) and applications for aeronautical ratings; he further claims that he, along with IAC Chapter 1, has spent "considerable time and money" defending himself from the prosecution. *See* Am. Compl., Dkt. # 28, ¶¶ 104-107. At the very least, under Illinois law, the costs of defending a criminal prosecution may be recovered in a malicious-prosecution suit challenging the institution of the criminal proceedings. *See, e.g,. Denton v. Allstate Ins. Co*., 152 Ill.App.3d 578, 588, 504 N.E.2d 756, 763 (Ill. App. Ct. 1986). The defendants do not argue that the law is different with respect to a prosecution for violating a municipal ordinance. Accordingly, Scholtes' malicious prosecution claim does not falter at the pleading stage for failure to plead damages.

«   «   «   «   «

For the foregoing reasons, the defendants' motion to dismiss is denied, except to the extent that the amended complaint purports to set forth a substantive due process claim. Any further amended complaint (one is not required) is due within 21 days of this ruling.

_____
John J. Tharp, Jr.
United States District Judge

ENTERED:  December 22, 2014