IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL AEROBATICS CLUB    )
CHAPTER 1 and NICHOLAS SCHOLTES,    )
)
       Plaintiffs,    )
)      No. 13 C 04272
     v.    )
)      Judge John J. Tharp, Jr.
CITY OF MORRIS, JEFFREY VOGEN, and    )
SID NELSON,    )
)
       Defendants.    )

## ORDER

For the reasons stated below, the plaintiffs' motion for judgment on the pleadings as to Count I [42] is granted insofar as it seeks a declaratory judgment. A separate judgment order shall issue, declaring the challenged ordinance and regulations to be preempted by federal law and unenforceable against the plaintiffs. In addition, on its own motion, the Court certifies pursuant to Fed. R. Civ. P. 54(b) that there is no just cause for delay in issuing a final judgment on Count I.

## STATEMENT

On December 22, 2014, the Court denied in large part the defendants' motion to dismiss, holding, as relevant here, that the City of Morris ordinance and regulations purporting to govern the plaintiffs' in-flight aerobatic activities are preempted by the Federal Aviation Act, which grants the Federal Aviation Administration exclusive power to regulate flight nationwide. Op., Dkt. # 38 at 15-19. Familiarity with that opinion is assumed.

Now the plaintiffs move for judgment on the pleadings and ask the Court to "issue an injunction against Defendants from enforcing the Morris ordinance and regulations at issue." Dkt. # 42 at 2. However, the plaintiffs make no effort to establish that, apart from their victory on the underlying legal issue, they are entitled to the injunction they seek. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The plaintiffs do not recite, let alone attempt to satisfy, this standard. Their request for an injunction is therefore denied.

Nevertheless, the Court's determination as a matter of law that the Morris ordinance is preempted leaves nothing left to adjudicate with respect to that claim. There are no disputed facts to resolve. Rather than enjoin the defendants, therefore, the Court will issue a declaratory judgment—another remedy requested by the plaintiffs in their complaint. Choosing between injunctive and declaratory relief is within the Court's discretion. *See* 28 U.S.C. § 2201 (federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"); *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010).

Here, an injunction would be redundant and unnecessary; there is no need to coerce action or to enter terms regulating the defendants' behavior. It is enough to declare that because it is preempted, the ordinance is unenforceable. "A litigant who tries to evade a federal court's judgment—and a declaratory judgment is a real judgment, not just a bit of friendly advice—will come to regret it." *Badger Catholic, Inc.*, 620 F.3d at 782.

In opposing the entry of judgment despite the resolution of the legal issue presented, the defendants continue to maintain that there is no active controversy here and the plaintiffs lack standing. The defendants want the opportunity to disprove the jurisdictional facts that the Court assumed to be true at the motion-to-dismiss stage. They pin their hopes on the Court's statement that "[i]f the facts of the case later show that there have been no threats since the intervening event of the new Practice Area, then the standing challenge will succeed." Mem. Op., Dkt. # 38 at 13. On the other hand, the plaintiffs argue that they have no further burden with respect to standing because standing is gauged as of the time suit is filed.. Although the premise is inarguable, *Milwaukee Police Ass'n v. Bd. of Fire & Police Com'rs*, 708 F.3d 921, 928 (7th Cir. 2013), they draw the faulty conclusion that because they survived a standing challenge at the motion to dismiss stage, they have met their burden of proving standing. That is not true. At the motion-to-dismiss stage, where neither party sought a hearing to establish any jurisdictional facts, the allegations in the complaint, including those relevant to establishing standing to sue (and to seek injunctive and declaratory relief) were assumed to be true. But those allegations have now been answered, and in large part denied, so their truth is no longer assumed.

Thus, the plaintiffs miss the point when they argue that because they sufficiently *alleged* standing at the outset, and they still must have standing now because "nothing has changed." The defendants are not arguing that facts subsequent to filing destroy their standing; rather, the defendants contend that the plaintiffs lacked standing *as of the time of filing* because at that time, they say, there was no imminent risk of harm. And the defendants are correct that without the benefit of the presumption of truth that adheres at the motion-to-dismiss stage, to the extent there is a factual dispute, the plaintiffs bear the burden to prove that the jurisdictional facts underpinning their standing at the time the amended complaint was filed are indeed true.

But here, there is no factual dispute that, if resolved against the plaintiffs, would destroy their standing. To the extent that the Court's previous opinion stated otherwise, the statement was inaccurate with respect to Count I, the only one at issue in the instant motion. The pleadings, even considering the defendants' denials, suffice to establish the plaintiffs' standing to obtain declaratory relief.

2

The defendants maintain that they have denied all of the allegations that support standing, but not so. They admit that plaintiff Scholtes was subjected to a prosecution on charges of violating the ordinance and that the ordinance remains in effect. And the defendants cannot deny that at the time of the complaint the plaintiffs intended (and still intend) to engage in conduct that the defendants actively regulated and over which the defendants continue to claim authority to regulate. Given the past prosecution of plaintiff Scholtes, the ongoing regulation by the defendants, and the ordinance that has particular application to the plaintiffs as aerobatic aviators who fly out the Morris Airport, the plaintiffs have established a credible threat of prosecution consistent with applicable case law.

As the Seventh Circuit has explained, standing exists "when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." *Bauer v. Shepard*, 620 F.3d 704, 707 (7th Cir. 2010). Here, the "actual or impending injury" is the only component of standing that the defendants contend is lacking.

It is well settled that a plaintiff challenging the validity of a statute or regulation need not violate it and risk enforcement or prosecution in order to have standing. *Korte v. Sebelius*, 735 F.3d 654, 667 (7th Cir. 2013); *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 473 (7th Cir. 2012). Pre-enforcement challenges to statutes affecting the plaintiffs are routinely allowed based upon the existence of a credible threat of prosecution, which satisfies the "impending injury" component of standing. *Korte,*735 F.3d at 667 ("The threat of financial penalty and other enforcement action is easily sufficient to establish standing to challenge the mandate prior to its enforcement."); *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) ("Accordingly, when a plaintiff expresses a credible intention to disobey a statute, a sufficient likelihood of injury exists, and a pre-enforcement challenge is appropriate."); *Bauer*, 620 F.3d at 708 (because "a probability of a future injury counts as 'injury' for purposes of standing," "pre-enforcement challenges are proper.").

In *Bauer v. Shepard*, a pre-enforcement challenge to provisions of the Indiana Code of Judicial Conduct, the plaintiffs were a judicial candidate and a judge who "both say that they refrain from speaking about abortion, and other controversial topics, because they fear the prospect of sanctions under the Code." 620 F.3d 704, 707 (7th Cir. 2010). The Seventh Circuit concluded that these plaintiffs had standing to bring a pre-enforcement challenge to the Code provisions because even though the plaintiffs "ha[d] not been injured yet," "the existence of a statute implies a threat to prosecute." In *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 590-91 (7th Cir. 2012), which challenged the Illinois anti-eavesdropping statute, the Seventh Circuit again held that plaintiffs facing a credible threat of prosecution had standing to bring a pre-enforcement challenge because their injury was established by the mere existence of a statute that criminalized their desired conduct—recording police officers. So, too. in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), a challenge to the City's ordinance that that mandated firing-range training as a prerequisite to lawful gun ownership, yet prohibited all firing ranges in the city. The plaintiffs, individuals who wanted to engage in target practice at a firing range, gun-rights organizations, and a business that supplied firing ranges, all had standing to challenge the law before any prosecutions occurred. *Id*. at 695-96.

3

When this case is viewed as a pre-enforcement challenge, these plaintiffs have standing because their desired conduct subjects them to regulation, and potentially to prosecution, by virtue of the very existence of City of Morris's airport ordinance and regulations. As in the cases discussed above, there is in place an ordinance—still enforceable, the defendants say—that itself constitutes a threat to prosecute. Moreover, because one plaintiff already has been subject to prosecution, the case for standing is arguably stronger here, although the Court recognizes that in other contexts a past injury is not relevant to the likelihood of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."). As the Seventh Circuit has explained, the *Lyons* line of case law address circumstances where the plaintiff seeks relief from the defendant's criminal or unconstitutional behavior, rather than those where a law criminalizes the plaintiff's conduct or desired conduct. *See Bell*, 697 F.3d at 451. In those cases, the risk of injury is too remote and attenuated to support standing. *Id*. Here, on the other hand, by going about their normal activities, the plaintiffs risk prosecution under regulations that, they contend (and the court agrees) the defendants have no authority to enforce. That aligns this case with those in which the plaintiffs' desired conduct itself is criminalized or regulated, rather than those in which the plaintiffs' injury depends on the future—inherently speculative—unlawful acts of the defendants, as in *Lyons*. As such, the fact that the City of Morris already has prosecuted one of the plaintiffs bolsters the credibility of the threat of prosecution, although the case law shows that no such prosecution is required for standing to being a pre-enforcement challenge.

The Club members are uniquely positioned to face prosecution compared to the public at large, even without the particularized threats the plaintiffs allege (and which the Court improvidently suggested they would have to prove in order to secure their standing). And at least one protracted prosecution already has occurred. As long as the City of Morris maintains that it has the authority to regulate their in-flight activities—it is currently forbearing voluntarily—the Club members are under a credible threat of prosecution. They need not wait until another prosecution to bring suit, nor must their injury be certain in order for a pre-enforcement remedy to be available. *ACLU*, 679 F.3d at 593 (injury not "conjectural or hypothetical" just because plaintiff did not "know precisely when it or its employees would face prosecution").

With standing established, the only other requirement for a declaratory judgment is an active controversy between the parties. To determine whether there is a live controversy for purposes of a declaratory action, "the court must look to the state of affairs as of the filing of the complaint." *Int'l Harvester Co. v. Deere & Co*., 623 F.3d 1207, 1210 (7th Cir. 1980). The Court must look at "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007). Those criteria are satisfied here, contrary to the defendants' argument, for the reasons explained in the Court's prior opinion, in the context of the mootness argument. Op., Dkt. # 38 at 8-9. To reiterate, the defendants' voluntary cessation of prosecutions of Club members, whether pursuant to an agreement (the existence of which is disputed) or not,

4

does not affect the justiciability of this case. There is no guarantee that prosecutions won't resume, and in the meantime, the plaintiffs allege that their lawful activities are being chilled. The subject of the dispute is not hypothetical; the City of Morris has an ordinance on the books that it maintains is valid and enforceable. Moreover, the plaintiffs should not have to depend on a settlement or the defendants' goodwill; they are legally entitled to conduct their business free from the unlawful regulatory framework the defendants have constructed and which, they maintain, they are free to wield against the plaintiffs absent action by the court.

Therefore, because preemption has been established as a matter of law, a declaratory judgment will issue. Although it enters judgment on fewer than all claims against the defendants, the Court on its own motion certifies its ruling on Count I as final pursuant to Federal Rule of Civil Procedure 54(b). That rule permits the Court to enter final judgment as to fewer than all of the claims if there is "no just reason for delay" and, further, if the claim to be certified as final is separable from what remains and there is no further action to be taken by this Court as to the claim. Fed. R. Civ. P. 54(b); *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 186 (7th Cir. 2011).

Here, although all counts are premised on the same basic conduct—the City's regulation of flight—Count I is distinct from Counts II and III. "Even if two claims arise from the same event or occurrence, they may be separable for Rule 54(b) purposes if they rely on entirely different legal entitlements yielding separate recoveries, rather than different legal theories aimed at the same recovery." *Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008). The latter two counts are fact-intensive inquiries into whether the City and the individual defendants selectively enforced the ordinance arbitrarily and out of malice, whereas Count I presents the purely legal question whether the local ordinance can be enforced at all given the pervasive federal regulatory scheme. The legal question presented in Count I is also wholly distinct from the related constitutional and tort doctrines that apply to Counts II and III. And the relief sought and granted as to Count I, a declaratory judgment, is distinct from what applies to the remaining counts. Moreover, in terms of substance, Count I clearly is the driving force of the litigation; it is the dog, not the tail. But because discovery has not commenced in a meaningful way, adjudication of the remaining claims will take considerable time. Therefore the Court determines that there is no just reason for delaying entry of final judgment on Count I, so that the parties can conduct themselves according to the Court's final ruling on preemption and the defendants can, if they wish, challenge that ruling without waiting for the remaining claims to be resolved.

The plaintiffs' motion for judgment on the pleadings is granted as to Count I. A separate judgment, which will be certified as final pursuant to Rule 54(b), shall issue declaring the ordinance to be preempted. *See* Fed. R. Civ. P. 58(a); *Specialized Seating, Inc. v. Greenwich Induss., LP*, 616 F.3d 722, 725 (7th Cir. 2010).

Date: June 23, 2015

_____

John J. Tharp, Jr.
United States District Judge

5